# A PROCESS OF ELIMINATION OF BACTERIA IN SHELLFISH, OF SHUCKING SHELLFISH AND AN APPARATUS THEREFOR

## CROSS REFERENCE TO RELATED APPLICATIONS

This application is based on my provisional applications Serial Nos. 60/071,819

5    filed on January 20, 1998, 60/074,582 filed on February 13, 1998, and 60/086,484 filed

on May 26, 1998, the full disclosures of which are incorporated herein.

## BACKGROUND OF THE INVENTION

This application relates to a process of treatment of raw molluscan shellfish, and

more particularly to a process for destroying bacteria in shellfish, such as for example

10    oysters.

In recent years, considerable attention has been paid in the media to tragic results

of consumption of raw oysters where the individuals became infected with life

threatening pathogenic organisms. Such bacteria as Vibrio Vulnificus live in marine

environment, especially in warm waters, usually higher than 25°C.

15    Vibrio Vulnificus has been isolated from estuarine and marine waters of the U.S.

Gulf Coast, east coast, and west coast; it was also reported on other continents. The

bacteria may transfer from water to the shellfish inhabiting the body of water, especially

filter-feeding mollusks, where bacteria can multiply mostly in the gut region.

Vibrio is a genus of motile curved and rod-shaped Gram-negative bacteria. Other

20    well-known vibriones are Vibrio cholerae and Vibrio Parahaemolyticus. Vibrio

Parahaemolyticus is a common cause of gastroenteritis in some cultures, where

consumption of food is particularly high, such as for example Japan.



EXHIBIT

1

Vibrio Vulnificus is a halophilic species, the strains of which are similar to Vibrio Parahaemolyticus and Vibrio alginolyticus. Vibrio Vulnificus thrives in warm waters. Ingesting uncooked or undercooked shellfish that contain vibrios, especially oysters, transmits it. After a brief incubation period, often as short as two hours, Vibrio Vulnificus

5      causes septicemia and cellulitis. Physical symptoms include indigestion, cramps, nausea, vomiting, headache, weakness, fever and chills.

Usually, this food poisoning subsides spontaneously within two days. Occasionally, however, it is more severe. Persons with pre-existing hepatic disease or compromised immune system are especially in danger. Infection may occur not only

10     through digestion of raw seafood but also from wound infection following exposure to seawater.

While fatal outcomes are extremely rare, the unfortunate events have been widely publicized, making the public aware of a potential life threatening exposure to the Vibriones. The fear of the bacteria poisoning is so high that the federal government

15     issued a special warning advising the public of the potential dangers of raw oyster consumption. It has also been suggested that no harvesting of oysters be conducted during warm months in the Gulf of Mexico, so as to minimize the health risk associated with such food poisoning.

Public fear of the potential dangers associated with bacteria poisoning through raw

20     oyster consumption adversely affected an important Louisiana industry - oyster harvesting. Market share of Gulf oysters shrunk, and many fishermen found that even

oysters harvested from safe beds are not in such a great demand as they used to be and that the price has fallen drastically.

Still, consumption of raw molluscan shellfish is so widespread in the South that many restaurants continue to carry raw oysters as part of their menu. Even though many

5     restaurants post a warning sign of the possible danger to a segment of the public with liver or immune system disorders it rarely stops dedicated gourmands.

To prevent poisonous consumption of pathogenic organisms, various methods have been suggested for treating raw shellfish, for example with heat or irradiation, in an effort to eliminate or minimize the public health danger. For example, Patent No. 5,679,392

10     (the '392 patent) issued on October 21, 1997 for "Heat Treatment of Raw Molluscan Shellfish" discloses a method for preparing raw molluscan shellfish in the shell or out of the shell employing a mild heat treatment and cold storage.

According to the '392 patent, the shellfish placed in a polymer or metallized bag is lowered into a circulating bath of water at a temperature of between 120°F - 130°F for

15     30-45 minutes, after which time it is cooled in a cold water bath to a temperature between 28°F - 32°F. The product is then transferred to a cool water bath, where it is retained for 15-20 minutes and becomes ready for storage in a refrigerated state at 32°F - 34°F. The patent disclosure asserts that the mollusk remains in a raw state and in the shell throughout the process, while the number of pathogenic bacteria is reduced to an

20     undetectable level.

While this process may be satisfactory for some products, it is believed that

3

heating of the shellfish will affect the sensory qualities of the product, making it less desirable for consumption as raw shellfish. Heat treatment as a means of controlling microorganisms and bacteria in food products results in diminished taste and reduced nutritional content. Therefore, elevated temperatures are considered unsatisfactory for

5    processing of raw oysters where the purpose of the process is to retain sensory qualities of oysters and sell them on a half-shell.

Ionizing irradiation was tested as one of the methods of destroying harmful bacteria in live shellfish. However, this process is relatively expensive and has not yet obtained approval by the Federal Food and Drug Administration. Other known attempts

10    to purify raw oysters involve depuration, wherein oysters are soaked in a tank of water for days at a time in an attempt to purge and cleanse the mollusk of the bacteria. So far, there have been no reports on the success of this method in destruction of bacteria in raw oysters.

Other suggested methods of destroying Vibrio Vulnificus involve cold, freezing,

15    vacuum packaging, use of GRAS (diacetyl) compounds, suspension relaying into offshore water, and food condiment treatment. While some of these methods are relatively simple to implement, most of them have problems - either too expensive, ineffective, time consuming, or failed to receive FDA approval.

It was also suggested to refrigerate oysters immediately after harvesting at 7.2°C or

20    less in an attempt to control multiplication of bacteria. However, cold treatment greatly reduces but does not eliminate bacteria present in oysters during harvesting for a storage

4

period considered normal for shucked or shell stock oysters.

Heat treatment, for example at 50°C for 10 minutes, kills the bacteria; this method is currently used on a commercial scale for live shell stock oysters. However, this method also kills the oysters. Additional drawback of this method is that it is difficult to control
5      the temperature of commercial size batches when the size and shell thickness of oysters differ from batch to batch.

Vacuum packaging combined with freezing tends to reduce the level of Vibrio Vulnificus. However, this method is relatively expensive, reduces quality, so that the product treated in this manner may not find a wide acceptance with the public.  When
10     diacetyl, an FDA approved preservative was used on raw oysters, at levels of 0.05% or greater, it demonstrated decrease in the level of the bacteria, but did not guarantee complete elimination thereof.

When oysters were relayed into high salinity environment of offshore waters, Vibrio Vulnificus bacteria were reported to decrease to a level found in oysters normally
15     harvested in more cold months, where no reported cases of food poisoning were recorded. However, oyster predators and parasites are a factor with this very expensive method. The use of UV light and micro-filtration treatment of seawater did not depurate the bacteria from oyster tissue.

Some studies examined the effect of Tabasco sauce on freshly shucked oysters. In
20     about ten minutes, the level of Vibrio Vulnificus on the surface of tested oysters was significantly reduced, but the levels of the bacteria within the oyster meat remained

almost unaffected.

In recent years, a new technology has emerged - high pressure processing of foods. The leading manufacturer of high-pressure food processors is ABB Pressure Systems AB of Vasteras, Sweden and its affiliate, ABB Autoclave Systems, Inc. of Columbus, Ohio.

5   According to industry sources, this company makes equipment for processing of juices, fruits, vegetables, fruit-based beverages, jams, sauces, soups and meats. The company's literature claims that most bacteria in food can be killed by pressures in the range of 400 - 800 MPa (58,000 p.s.i. – 116,000 p.s.i.).

A Canadian company, GEC ALSTHOM, developed a cold pasteurizing system,

10   which utilizes high hydrostatic pressure for processing thermal-sensitive packaged food products. According to that company's literature, pressure modifies cell membrane permeability of microorganisms. As a result, bacteria are inactivated or die. It is recommended that the treated products are kept chilled at 4°C in order to reduce bacteriologic risk. The process is said to triple shelf life of the products.

15   Other companies in Europe and the United States continue research in the high-pressure food processing area.

High pressure is said to be preferable to heat treatment because high pressure does not destroy many of the substances found in fresh foods, such as vitamins, chlorophyll and aroma substances. As a result, refrigerated shelf life of fruit and vegetable products,

20   as well as high-acid products can be increased from several weeks to several months. Most importantly for the purposes of the present invention, high pressure treatment is

6

believed to increase food safety by reducing bacteria in the processed products, while

retaining the products' nutritional value, color, flavor and texture.

The principle of cold isostatic (uniformly applied) pressure processing is relatively

simple – food is placed in a container and is surrounded by a pressure medium, usually

5      water. An external pressure intensifier to a pre-determined value pressurizes the vessel.

Pressure is fed into the pressure vessel where food products have been deposited.

Pressure in such a vessel is distributed evenly through all parts of the product, thereby

preventing mechanical damage of delicate food products. The process may be conducted

with no or minimal heat treatment.

10      Another problem that the present invention addresses is mechanical shucking of

oysters. Seafood processing plants employ skillful workers for the preparation of oysters

for packaging in jars and other containers for sale to the customers. Restaurants that serve

raw oysters also employ special personnel for shucking oysters before serving the

delicacy on a half shell.

15      The process of oyster shucking involves cutting of the connective tissue of oyster

adductor muscle that is normally attached to the shell and keeps the shell halves tightly

closed. More experienced workers perform this task relatively well, while novices can

damage the product and cut through the body of the oyster, thereby reducing the quality

and increasing the cost.

20      At present, the applicant is not aware of any commercial utilized method of

mechanical shucking of oysters. It is estimated that about 80% of the cost of a shucked

oyster are due to the labor-intensive hand-shucking process.

The present invention contemplates elimination of drawbacks associated with the prior art and reduction or elimination of harmful bacteria in raw shellfish, as well as shucking of oysters without any substantial affect on the sensory qualities of raw

5    shellfish. Additionally, a new method of fabricating the yoke and chamber of high pressure equipment is disclosed.

## SUMMARY OF THE INVENTION

It is, therefore, an object of the present invention to provide a process for reducing or elimination of pathogenic organisms from raw molluscan shellfish, such as oysters,

10    clams, and mussels.

It is another object of the present invention to provide a method of reducing harmful bacteria in raw shellfish without substantially affecting its sensory qualities.

A further object of the present invention is to provide a method of shucking oysters and other shellfish such as clams and mussels that does not involve manual

15    cutting of the oyster muscle.

Still another object of the present invention is to provide an apparatus for high pressure processing of shellfish, such as oysters, clams and mussels.

These and other objects of the present invention are achieved through a provision of a process that includes high-pressure treatment of raw shellfish, the process comprising

20    the step of exposing the shellfish to relatively high hydrostatic pressure. The process is conducted at ambient temperatures, exposing the molluscan shellfish to the liquid

8

pressure of between 20,000 p.s.i. to 80,000 p.s.i. for 1-15 minutes.

As a result of the high-pressure treatment, pathogenic organisms, such as bacteria Vibrio Vulnificus are destroyed without substantially adversely affecting the sensory qualities of the shellfish. At the same time, the connective tissues of oyster adductor muscle holding the two oyster shell halves is separated from the shells, and the oyster shells open without any manual cutting of the muscle.

## BRIEF DESCRIPTION OF THE DRAWINGS

Reference will now be made to the drawings, wherein like parts are designated by like numerals, and wherein Figure 1 is a schematic side view of high pressure processor for practicing the process of the present invention.

Figure 2 is a top view of the processor shown in Figure 1; and

Figure 3 is detail cross sectional view of the inner liner with top and bottom lids and pressure containing seals.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

The new process for the treatment of raw molluscan shellfish according to the present invention will now be described in more detail. According to this process, raw shellfish, such as oysters, clams and mussels are treated in a high-pressure environment with no application of heat, at substantially ambient temperatures.

The non-thermal method of food preservation, high pressure processing, has been known in use in relation to meat product, fruits, and other products. However, no attempts have been known so far to treat such fragile, easily damaged products as raw

9

shellfish. Traditionally, shellfish, such as crab, crawfish and oyster deteriorate in quality immediately upon death. For this reason, they are usually shipped either live, at considerable expense in refrigerated containers, or fresh frozen.

None of these approaches could be applied to insure bacteria-free raw shellfish
5    that would satisfy public demand for raw oysters eaten on a half shell. Bearing in mind the importance of regaining markets and consumer confidence in Gulf oysters, fishermen are looking for feasible methods of processing shellfish without destroying its nutritional and sensory values.

According to the present invention, molluscan shellfish, for example, shellstock
10   oysters, are individually tied with a flexible band, for example a rubber band, and placed in a pressure vessel that contains a pressure transmitting fluid, for example, water. If desired, the shellfish can be prepackaged in pouches and then loaded into the pressure vessel. The vessel is then closed and pressurized to between about 20,000 p.s.i to 50,000 p.s.i. for 1-15 minutes.

15   During experimental tests, it was observed that the higher the pressure, the less time it takes to destroy bacteria, such as Vibrio Vulnificus in raw oysters. For example, when shellstock oysters were treated at hydrostatic pressure of 50,000 p.s.i. for 5 minutes, seeded bacteria Vibrio Vulnificus was reduced from 24,000 MPN/g to 0 MPN/g (here, MPN stands for Most Probable Number).

20   During processing, the pressurized liquid remained at ambient temperature while the pressure was transmitted uniformly to the product inside the pressure vessel. The

resultant product did not significantly change in volume and no mechanical damage was observed to the delicate food product.

During experimental tests, it was determined that treatment of the product at hydrostatic pressure of 50,000 p.s.i. for 5 minutes achieved the desired result with all of

5    the treated shellfish.  It is envisioned, however, that under certain conditions, the shellfish can be treated at even higher or lower pressures.  The increase in temperature during the treatment was minimal, about 3°C per 14,500 p.s.i.; it did not depend on the size of the processed product.  The temperature decreased as soon as the pressure application was terminated.

10    Some experiments showed that preferred pressures are in the range of 45,000 p.s.i., as pressures lower than 45,000 p.s.i. could lead to reversible denaturing of the treated product, and thereby adversely not achieve the desired results.

It is further envisioned that other types of bacteria, in addition to Vibrio Vulnificus can be eliminated or substantially reduced in raw shellfish with the use of the present

15    invention, therefore increasing the shelf life of a product.

During experiments with raw oysters, an unexpected phenomenon was observed – the oyster adductor muscle connective tissue attachment at the shell denatured to gel formation at pressure as low as 20,000 p.s.i. and treatment time of 15 minutes. First, it was observed that a gap developed between the shell halves. When the shell halves were

20    pried open, the oyster easily slid out of the shell in perfect condition. No mechanical cutting was necessary. The denaturing of muscle proteins, including actin and myosin and

11

connective tissues to a gelatin transition is a result of disruption of non-covalent interactions in tertiary protein structures. The potential commercial utilization of this chemical denaturing for mechanical shucking of live shell stock oysters has not been previously tested or observed.

5          To prevent escape of water or "bleeding" of oysters during the high pressure treatment, oysters need to be mechanically banded, for example with a flexible band, such as a rubber band, before placement in the processing vessel. The band keeps the shell halves tightly closed, thereby helping in preservation of natural condition of raw oysters that can be later served on a half shell. The processed oysters can be shipped to

10        customers with the bands attached, and the consumer will then only need to remove the band to open the oysters. Oysters that will be immediately shucked do not need to be banded.

          Turning now to the drawings in more detail, numeral 10 designates a high-pressure processor used in the present invention. The processor 10 comprises an enclosure 12 made of steel or stainless steel.  The enclosure 12 has a bottom plate 14 and four vertical

15        sidewalls (only two opposing sidewalls 16 and 18 are shown in Figure 1).

          The enclosure 12 can be mounted in a cavity 20 formed below a floor level 22. Concrete walls reinforced with rebars, if necessary can define the cavity 20. The walls and floor defining the cavity 20 may be 12" or more in thickness. At the least a lower

20        portion of the enclosure 12 is housed within the cavity 20.

          A first pressure vessel 30 is secured on the wall 16 of the enclosure 12 by

12

attachment brackets 32. The brackets 32 are vertically spaced from each other and can be three or more in number. The vessel 30 has vertical walls 34a, 34b, 34c, and 34d (see Figure 2), a bottom lid 36 and a top lid 38 with four vertical corner bars 39 (Figure 2).

A continuous cylindrical liner 40 is mounted inside the vessel 30, the liner 40 extending from a level adjacent the bottom lid 36 to the upper edge of the vessel 30. The liner 40 defines a pressure chamber 42 inside the vessel 30. Horizontal slabs 44 surround the vertical liner 40, and a safety plate 46 is secured on the exterior of the vessel 30, extending along the wall 34b, as can be better seen in Figure 2. The slabs 44 can be made of high tensile steel or other high-tensile material to help contain the high pressure created in the chamber 42. The top lid 38 and the bottom lid 36 have central portions, 37 and 35, respectively, that extend into the cylindrical liner 40, as can be better seen in Figure 3. Pressure containing seals 39 are positioned in a circumferential relationship about the portions 35 and 37 between the liner 40 and the central portions 35, 37.

A second pressure vessel 50 is securely attached on the opposite wall 18. The second pressure vessel 50 is similar to the first pressure vessel 30 in all respects, as it comprises a cylindrical inner liner 52 surrounded by a high-tensile "envelope" 54 placed in the vessel 50. The envelope 54, similar to the slabs 44 can be made of a plurality of smaller high tensile steel slabs. A plurality of attachment brackets 56 secures the vessel 50 on the wall 18. A top lid 58 covers the open top of the vessel 50 and a bottom lid 59 covers the bottom of the vessel 50. The top lid 58 and the bottom lid 59 have central portions, similar to portions 35, 37 of the vessel 30, that extend into the liner 52 where

13

the pressure containing seals 39 are located.

Each bottom lid 36 and 59 is provided with inlet/outlet opening to allow pressure medium fluid to move in and out of the pressure chamber 42 and 51. As can be seen in Figure 3, the central portion 35 of the lid 36 has a central fluid channel 80 that extends to

5    about midway of the lid 36.

A second channel 82 fluidly communicates with the first channel 80 to allow egress and ingress of pressure fluid. The second channel 82 is formed at about a right angle to the first channel 80 extending from the center of the lid 36 in a parallel relationship to the general plane of the lid 36 and in a transverse relationship to a vertical

10   axis of the liner 40. The channels 80 and 82 connect the interior of the pressure chamber 42 with an exterior thereof. The lid 59 of the pressure vessel 50 is provided with an identical inlet/outlet port connecting the pressure chamber 51 with an exterior thereof.

Extending between the opposing walls 16 and 18 is a pair of rails 60, 62. A pressure holding and safety yoke 64 slides on the rails between the first pressure vessel

15   30 and the second pressure vessel 50. The yoke 64 is mounted on wheels 66, which are secured at bottom corners of the yoke frame. A bottom plate 68 is secured above a bottom part 67 of the yoke 64, and a top plate 70 is secured below a top part 71 of the yoke 64. The space between the upper plate 70 and the bottom plate 68 is large enough to accommodate the pressure vessel 30 or 50. The purpose of the bottom plate 68 and the

20   top plate 70 is to provide extra strength to the yoke 64.

The yoke 64 further comprises two vertical walls 74 and 76 secured in parallel

14

relationship between the upper part 71 and the bottom part 67 of the yoke 64. As a result, a rectangular frame structure is defined by the yoke walls, bottom and upper parts. In use, the yoke 64 surrounds the pressure vessel 30 or 50 on opposite, unprotected walls 34a and 34c and provides extra protection when high pressure is applied. The primary

5    function of the yoke 64 is to hold the lids 58 and 59 of the vessel 50 and the lids 36, 38 of the vessel 30 in place when high pressure is applied.

The top plate 70 covers the lids 38,58, while the bottom plate 68 extends below the bottom lids 36 and 59 of the vessels 30 and 50, respectively. The yoke walls 74 and 76 and the upper part 71 and the bottom part 67 can be formed from a plurality of high

10    tensile slabs secured together by four bolts. A top safety shield 72 provides extra protection during operation.

In operation, raw shellfish, such as an oyster is individually banded to prevent escape of water from the shell when the oyster is removed from the chamber. The oysters are placed in a basket for handing purposes. Oysters can also be placed in flexible bag

15    filled with water prior to being inserted into the pressure chambers of vessels 30 and 50. The pressure chamber is filled with pressure medium, such as water. The basket is then inserted into the pressure chamber of a vessel 30 or 50, and the lids 38, or 58, respectively, are closed. The yoke 64 is rolled toward the loaded vessel and secured in place by a conventional stop to assure positioning during a high-pressure application.

20    An external pressure source is used for supplying pressure to the pressure chamber of the vessel, where the oysters have been deposited. According to Pascal's Law, this

hydrostatic pressure has a uniform effect on all materials inside the pressure vessel. Equally distributed pressure affects the oyster meat inside the shells and eliminates Vibrio Vulnificus bacteria from the oyster meat without any mechanical damage to raw oysters.

5        Oyster meat has a high water content, which makes high-pressure treatment a particularly advantageous type of processing for raw oysters. At the same time, the adductor muscle detaches from the shell, and shell halves are ready to separate, when necessary, for serving oysters on half shelf, or for easy shucking of oysters.

        While the oysters are processed, the pressure in the chambers 42 or 51 is rapidly

10      elevated to between 20, 000 p.s.i. and 50, 000 p.s.i.  The pressure is retained for about one to fifteen minutes, depending on the selected pressure value.  For lower pressures, the time of treatment is greater, while higher pressure requires less treatment time.  The pathogenic microorganisms are eliminated, while nutritional value and sensory qualities of raw oysters are not affected.

15      Experiments conducted with raw oysters demonstrated that Vibrio Vulnificus bacteria were eliminated at every test run with any size oysters when pressure was in the range of 45,000 p.s.i. and treatment time was about 5 minutes. Shucking of oysters occurs at much lower pressures, about 20,000 p.s.i., when oysters are treated for 15 minutes. Therefore, it is envisioned that for processes not requiring bacteria elimination, but only

20      shucking, the vessels 30 and 50 can be run at lower pressures.

        Once the batch in the loaded vessel has been treated for the pre-determined period

16

of time, the yoke 64 is rolled away from that vessel and engaged with the second vessel.

While the product is processed in the second vessel 50, the treated product from the first

vessel 30 can be unloaded, and a new batch of products deposited therein. The single

yoke 64 serves as a pressure holding and safety device for two separate pressure vessels

5    30 and 50.

      The method in accordance with the present invention does not cause thermal

damage, as the process is conducted at ambient temperatures. At the same time, no

mechanical damage to the delicate oyster meat occurs, as the shell protects the oyster

from any contact with the mechanical parts of the pressure vessels.

10          The method of the present invention has minimal impact on the environment.

Cooling water can be recycled through the use of conventional equipment. Conventional

electromechanical systems can be used to generate high pressure inside the pressure

vessels 30 and 50.

      It is envisioned that various types of molluscan shellfish, such as clams, muscles,

15    abalone, and others can be processed with the method of the present invention without

mechanical damage or deterioration of sensory properties of the product. Once the

bacteria are eliminated, the product can be shipped for consumption in a raw state. It is

believed that the process of the present invention can be implemented for elimination of

other bacteria, in addition to Vibrio Vulnificus.

20          The shellfish can be harvested even in warm months, and the public will be

assured of the product safety. Naturally contaminated Gulf Coast oysters that can contain

thousands of harmful Vibrio Vulnificus bacteria can be successfully processed with the apparatus and method of the present invention.

Other seafood items can be similarly processed with the method and apparatus of the present invention. If desired, oysters and other products to be treated in the system of

5    the present invention can be placed in baskets in a refrigerator/cooler, so as to prevent bacteria multiplication, while the products wait their turn in the pressure vessels. After processing, the shellfish should be placed in a cooler as soon as possible. The processed shellfish should be preferably kept at between 32°F and 36°F until it is sold and consumed by a customer.

10    The external source of pressure can be any conventional pressurizing means, such as hydraulic motor, electrical motor and the like. Other means for building up pressure in the pressure chambers can be successfully employed without affecting the advantages afforded through the practice of the present invention.

Many changes and modifications can be made in the process of this invention

15    without departing from the spirit thereof. I, therefore, pray that my rights to this invention be limited only by the scope of the appended claims.

## 9. APPENDIX

Claims involved in this Appeal:

3. Process of destroying bacteria in raw molluscan shellfish, while shellfish is in the shell, comprising the steps of:

> providing a pressure vessel;

> depositing said shellfish into said pressure vessel;

> loading a pressure transmitting fluid into said pressure vessel;

> pressurizing said pressure vessel to high pressure of between about 20,000 p.s.i. and

80,000 p.s.i., without application of heat, for a period of time of between 1 and 15 minutes, thereby causing elimination of naturally-occurring pathogenic marine bacteria, while retaining sensory characteristics of said shellfish; and then

> retaining said shellfish at a temperature below ambient temperature.

4. The process of Claim 3, wherein said raw shellfish is exposed to isostatic pressure for a time period sufficient to eliminate pathogenic Vibriones bacteria.

6. A process of treating raw oysters in a shell, which comprises:

> exposing raw oysters to hydrostatic pressure of between 20,000 p.s.i. and 80,000 p.s.i. for

1 – 15 minutes at ambient temperature, without causing thermal and mechanical damage to the raw oysters, thereby eliminating pathogenic Vibriones bacteria in said raw oysters , preventing deterioration of said raw oysters, while retaining sensory characteristics of said raw oysters.

7. The process of Claim 6, wherein said oysters are banded and enclosed in liquid-impermeable bags filled with pressurizable liquid prior to exposing said oysters to hydrostatic pressure so as to prevent bleeding of raw oysters during treatment.

27. A process of treating raw molluscan shellfish, comprising the steps of:

depositing the raw mlluscan shellfish into a pressure vessel and pressurizing the pressure vessel to between 20,000 p.s.i. and 80,000 p.s.i. for 1 – 15 minutes without application of heat at ambient temperature, without causing thermal and mechanical damage to the raw molluscan shellfish, while eliminating pathogenic naturally-occurring marine bacteria in said raw molluscan shellfish, and while retaining sensory characteristics of said raw molluscan shellfish.

## ABSTRACT OF THE DISCLOSURE

The invention relates to a process for eliminating pathogenic organisms from raw food products, such as raw shellfish, whereby the molluscan shellfish is exposed to hydrostatic pressure of relatively high value, for example between 20,000 p.s.i. to 50,000 p.s.i. for 1-15 minutes.  The process is conducted at ambient temperatures, leaving the raw shellfish substantially unaffected, in its desired raw state, such that the pathogenic organisms are destroyed, while sensory characteristics of the raw shellfish remain high. The same process can be used for shucking oysters without any mechanical force. A high pressure processor for elimination of bacteria in raw food products is disclosed.



F I G. 1



Figure 3



FIG. 2

# PRODUCTION OF PROCESSED SHELLFISH

Patent Number:      JP4356156
Publication date:   1992-12-09
Inventor(s):        MIURA YASUSHI; others: 01
Applicant(s)::      AOHATA KK
Requested Patent:   ☑ JP4356156
Application Number: JP19910127839 19910530
Priority Number(s):
IPC Classification: A22C29/04
EC Classification:
Equivalents:        JP2989034B2

---

### Abstract

PURPOSE:To produce a processed shellfish having its contents in a substantially raw state by simple operations, by applying a high pressure to a raw shellfish with a shell and subsequently opening the shell. CONSTITUTION:A raw shellfish with a shell such as an oyster, calm or short- necked calm and sea water are sealed with a plastic container and subsequently subjected to a high pressure of 1-44 atmospheres. The shell of the treated shellfish is easily opened to provide the objective processed shellfish.

Data supplied from the **esp@cenet** database - l2

EXHIBIT

2

You looked for the following: *(jp4356156)<PN>*
1 matching documents were found.
To see further result lists select a number from the JumpBar above.

Click on any of the Patent Numbers below to see the details of the patent

| Basket | Patent Number | Title |
|--------|---------------|-------|
| ☑ | JP4356156 | PRODUCTION OF PROCESSED SHELLFISH |

To refine your search, click on the icon in the menu bar
Data supplied from the **esp@cenet** database - l2

2/15/00 10:33 AM

# WEST

Help    Logout

Main Menu | Search Form | Posting Counts | Show S Numbers | Edit S Numbers

## Search Results - Record(s) 1 through 2 of 2 returned.

1. Document ID: JP 04356156 A

    Entry 1 of 2                        File: JPAB                        Dec 9, 1992

PUB-NO: JP404356156A

DOCUMENT-IDENTIFIER: JP 04356156 A

TITLE: PRODUCTION OF PROCESSED SHELLFISH

PUBN-DATE: December 9, 1992

INVENTOR-INFORMATION:
NAME
MIURA, YASUSHI
HATSUKADE, IKUO

ASSIGNEE-INFORMATION:
NAME          COUNTRY
AOHATA KK  N/A

APPL-NO: JP03127839
APPL-DATE: May 30, 1991

INT-CL (IPC): A22C 29/04

ABSTRACT:

PURPOSE: To produce a processed shellfish having its contents in a substantially raw
state by simple operations, by applying a high pressure to a raw shellfish with a
shell and subsequently opening the shell.

CONSTITUTION: A raw shellfish with a shell such as an oyster, calm or short- necked
calm and sea water are sealed with a plastic container and subsequently subjected to
a high pressure of 1-44 atmospheres. The shell of the treated shellfish is easily
opened to provide the objective processed shellfish.

COPYRIGHT: (C)1992,JPO&Japio

Full | Title | Citation | Front | Review | Classification | Date | Reference | Claims | KWIC | Image

2. Document ID: JP 04356156 A

    Entry 2 of 2                        File: DWPI                        Dec 9, 1992

DERWENT-ACC-NO: 1993-030348
DERWENT-WEEK: 199304
COPYRIGHT 2000 DERWENT INFORMATION LTD

TITLE: Processed shellfish prodn. - by applying high pressure to raw shellfish

PATENT-ASSIGNEE: AOHATA KK[AOHAN]

PRIORITY-DATA:
1991JP-0127839          May 30, 1991

PATENT-FAMILY:

| PUB-NO | PUB-DATE | LANGUAGE | PAGES | MAIN-IPC |
|--------|----------|----------|-------|----------|
| JP 04356156 A | December 9, 1992 | N/A | 002 | A22C029/04 |

APPLICATION-DATA:

| PUB-NO | APPL-DESCRIPTOR | APPL-NO | APPL-NO |
|--------|-----------------|---------|---------|
| JP04356156A | May 30, 1991 | 1991JP-0127839 | N/A |

INT-CL (IPC): A22C 29/04

ABSTRACTED-PUB-NO: JP04356156A
BASIC-ABSTRACT:

Prodn. comprises applying a high pressure to raw shellfish.

USE - Used for making shellfish which are easy to open.

TITLE-TERMS: PROCESS SHELLFISH PRODUCE APPLY HIGH PRESSURE RAW SHELLFISH

DERWENT-CLASS: D12

CPI-CODES: D02-A02;

SECONDARY-ACC-NO:
CPI Secondary Accession Numbers: C1993-013540

`Full | Title | Citation | Front | Review | Classification | Date | Reference | Claims | KWIC | Image`

| Terms | Documents |
|-------|-----------|
| jp-04356156-$.did. | 2 |

Display 10 Documents   including document number   2

**Display Format:** FULL   Change Format

`Main Menu | Search Form | Posting Counts | Show S Numbers | Edit S Numbers`

`Help | Logout`

## WEST

| Help | Logout |

| Main Menu | Search Form | Result Set | Show S Numbers | Edit S Numbers |
| First Hit | | Previous Document | | Next Document |
| Full | Title | Citation | Front | Review | Classification | Date | Reference | Claims | KWIC |

Document Number 26

Entry 22 of 43                    File: DWPI                    Dec 9, 1992

DERWENT-ACC-NO: 1993-030348
DERWENT-WEEK: 199304
COPYRIGHT 2000 DERWENT INFORMATION LTD

TITLE: Processed shellfish prodn. - by applying high pressure to raw shellfish

PATENT-ASSIGNEE: AOHATA KK[AOHAN]

PRIORITY-DATA:
APPL-NO
1991JP-0127839                    APPL-DATE
                                  May 30, 1991

PATENT-FAMILY:
PUB-NO          PUB-DATE              LANGUAGE   PAGES   MAIN-IPC
JP 04356156 A   December 9, 1992      N/A        002     A22C029/04

APPLICATION-DATA:
PUB-NO        APPL-DATE       APPL-NO          APPL-DESCRIPTOR
JP04356156A   May 30, 1991    1991JP-0127839   N/A

INT-CL (IPC): A22C 29/04

ABSTRACTED-PUB-NO: JP04356156A
BASIC-ABSTRACT:

Prodn. comprises applying a high pressure to raw shellfish.

USE - Used for making shellfish which are easy to open.

ABSTRACTED-PUB-NO: JP04356156A
EQUIVALENT-ABSTRACTS:

DERWENT-CLASS: D12
CPI-CODES: D02-A02;

| Main Menu | Search Form | Result Set | Show S Numbers | Edit S Numbers |
| First Hit | | Previous Document | | Next Document |
| Full | Title | Citation | Front | Review | Classification | Date | Reference | Claims | KWIC |

(19)日本国特許庁（ＪＰ）　　　(12) 公 開 特 許 公 報 （A）　　　(11)特許出願公開番号

特開平4−356156

(43)公開日　平成 4 年(1992)12月 9 日

| (51)Int.Cl.⁵ | 識別記号 | 庁内整理番号 | F I | 技術表示箇所 |
|---|---|---|---|---|
| A２２Ｃ　29/04 | | 2114−4Ｂ | | |

審査請求　未請求　請求項の数 1(全 2 頁)

(21)出願番号　　特願平3−127839

(22)出願日　　　平成 3 年(1991) 5 月30日

(71)出願人　591116036
　　　アヲハタ株式会社
　　　広島県竹原市忠海町4395番地
(72)発明者　三 浦 靖 史
　　　広島県竹原市忠海町4395番地　アヲハタ株
　　　式会社内
(72)発明者　廿日出 郁 夫
　　　広島県竹原市忠海町4395番地　アヲハタ株
　　　式会社内
(74)代理人　弁理士　佐藤 一雄　　(外 2 名)

(54)【発明の名称】　加工貝の製造法

(57)【要約】
【目的】　生の貝の殻が人の手で容易に開けられるよう
な加工貝の製造法を提供する。
【構成】　本発明の加工貝の製造法は、殻付の生の貝に
高圧をかけることを構成とする。

1
(2)
特開平4-356156

【特許請求の範囲】
【請求項1】殻付の生の貝に高圧をかけることを特徴とする加工貝の製造法。
【発明の詳細な説明】
【0001】
【産業上の利用分野】本発明は、新規な加工貝の製造法に関する。
【0002】
【従来の技術】殻付の生の貝、例えばカキなどは、殻を開けるのにかなり困難を伴うことは従来からよく知られている。
【0003】
【発明が解決しようとする課題】すなわち、殻付の生の貝の殻を開くにはかなりの力が要るだけでなく、熟練した人でないと殻を壊してしまうなど、通常作業上かなりの技巧を必要とする。それ故、生の貝の殻を容易に、より具体的には単に人の手で開けることができるならば作業上益することは多大である。よって、本発明は、生の貝の殻が人の手で容易に開けられるような加工貝を製造する方法を提供することを目的とする。
【0004】
【課題を解決するための手段】本発明者らは鋭意研究の結果、上記の目的は、高圧処理手段を利用することにより達成されることを見出し、本発明を完成するに至った。本発明は、殻付の生の貝に高圧をかけることを特徴とする加工貝の製造法を提供するものである。
【0005】以下、本発明を詳しく説明する。本発明において殻付の生の貝とは、殻の付いたままの未だ生きている貝をいう。貝の種類によって限定されるものではないが、代表的にはカキ、ハマグリ、アサリなどを挙げることができる。
【0006】本発明の方法によれば、このような殻付の生の貝に高圧をかける。ここにおいて「高圧」とは、一般的に大気圧の1千倍以上の圧力をいう。実用的には1〜4千圧（1気圧は約1Kg／cm²）程度でよい。また、「高圧をかける」とは、殻付の生の貝をこのような圧力下に一定時間保存することをいう。具体的には2千気圧の場合は3〜10分間、3千気圧の場合は0.5〜5分間、4千気圧の場合は0.5〜3分間程度を目安とすればよい。保持時間があまり短いと本発明の所期の目的は達成し難く、また、保持時間があまり長くても、上記の保存時間程度で殻は既に人の手で容易に開けられることから不経済であるだけでなく、貝の蛋白質成分が変質し悪くなる傾向が生じる。
【0007】高圧のかけ方は、特に限定されるものではないが、実際には、例えばプラスチック製の容器に殻付の生の貝を海水と共に収容、密封後、これを高圧加工装

置（例えば、三菱重工業（株）製のMCT-150型）に配置して所定の高圧をかければよい。
【0008】上記したような本発明の方法により製造された加工貝は、人の手で容易にその殻を開けることができ、よって従来の殻開けに比べて作業性の極めて高いものである。
【0009】
【作用】殻付の生の貝に高圧をかけると、おそらく、貝柱の部分の筋肉が何らかの影響を受け、殻を閉じる作用が弱くなり、よって人の手によりその殻を容易に開けることができるようになるのではないか、と考えられる。
【0010】
【実施例】以下、本発明を実施例および試験例でもって更に詳しく説明する。

実施例1
殻付の生のカキ2個をプラスチック製の袋にほぼ同容量の海水と共に収容、密封後、三菱重工業（株）製の高圧加工装置MCT-150型内に配置して3千気圧で3分間高圧をかけて、本発明の加工カキを製造した。
【0011】実施例2
殻付の生のハマグリ4個をプラスチック製の袋にほぼ同容量の海水と共に収容、密封後、上記実施例1で用いた高圧加工装置内に配置して4千気圧で2分間高圧をかけて、本発明の加工ハマグリを製造した。
【0012】試験例
上記実施例1で得られた本発明の加工カキと、対照として高圧処理をしてない殻付の生のカキに対して、人の手による殻の開き具合を比較試験したところ、結果は以下の通りであった。

| 試験項目 | 本発明の加工カキ | 対照の高圧無処理カキ |
|---|---|---|
| 人の手による殻の開き具合 | ○ | × |

註1：○は人の手で貝の殻が容易に開けることを意味し、
×は人の手では貝の殻が簡単には開けられないことを意味する。
2：本発明の加工カキは殻を開けてみたところ、実質上生のカキと何ら変らない状態であった。
【0013】
【発明の効果】本発明の方法により、貝の殻の極めて開け易い、しかも身は実質上生の状態のままである加工貝が提供される。

PTO: 2000-1667

Japanese Published Unexamined (Kokai) Patent Application No. H4-356156, published December 9, 1992; Application No. H3-127839, filed May 30, 1991; Int. Cl.[5]: A22C 29/04; Inventor(s): Yasushi Miura et al.; Assignee: Aohata Corporation; Japanese Title: Kakougai no Seizouhouhou (Method for Manufacture of Processed Shellfish)

---

[Title of Invention]

Method for Manufacture of Processed Shellfish

[Summary]

[Purpose]

To offer a method for manufacture of processed shellfish so that the shell of raw shellfish can be easily opened with fingers.

[Structure]

A method for manufacture of processed shellfish of the present invention is formed such that a high pressure is applied onto raw shellfish with a shell.

[Claim]

[Claim 1]

A method for manufacture of processed shellfish, characterized in that a high pressure is applied onto raw shellfish with a shell.

[Detailed Description of the Invention]

[0001]

[Field of Industrial Application]

This invention pertains to new manufacturing methods for processed shellfish.

[0002]

[Prior Art]

It is conventionally known that it is extremely difficult to open shells of raw shellfish such as oysters.

[0003]

[Problem of Prior Art to Be Addressed]

More specifically, an extremely strong force is required to open shells of raw shellfish, and extremely high techniques are usually required for the work because shells are easily broken unless trained workers handle them. For said reasons, if shells of raw shellfish are easily opened, more specifically, merely with fingers, there is a great benefit on the work. Accordingly, the purpose of the present invention is to offer a method for manufacture of processed shellfish so that the shell of raw shellfish is easily opened with fingers.

[0004]

[Measures to Solve the Problem]

After the inventors had eagerly researched, they have found that said purpose can be attained by using a high pressure treatment means; consequently, the present invention is

2

attained. The present invention offers a method for manufacture of processed shellfish which is characterized in that a high pressure is applied onto raw shellfish with a shell.

[0005]

The present invention is described hereinbelow in detail. Raw shellfish with a shell of the present invention refers to living shellfish with a shell. Said living shellfish is not limited by types of shellfish; however, the following types can be typically given: an oyster; a clam; a short-necked clam.

[0006]

When a method of the present invention is used, a high pressure is applied to such raw shellfish with a shell. In this case, "a high pressure" generally refers to a 1000 or more time higher pressure than atmospheric pressure. Practically, atmospheric pressure at about 1000 to 4000 normal atmosphere (1 normal atmosphere is equivalent to about 1 Kg/cm$^2$) is used. Additionally, "applying a high pressure" means that raw shellfish with a shell is maintained at said atmospheric pressure for a predetermined period of time. More specifically, when the atmospheric pressure is at 2000 normal atmosphere, shellfish should be maintained under said pressure for about 3 to 10 minutes; when the atmospheric pressure is at 3000 normal atmosphere, shellfish should be maintained under said pressure for about 0.5 to 5 minutes, when the atmospheric pressure is at 4000 normal atmosphere, shellfish should be maintained under said pressure for about 0.5 to 3 minutes. If said maintaining period is too short, an initial purpose of the present invention is not easily attained; on the other hand, if said

3

maintaining period is too long, it is a waste of money because the shell can be already opened with fingers since maintaining time periods as described above have passed, and protein of the shellfish tends to be easily modified.

[0007]

A means to apply a high pressure is not particularly limited to a specific means; however, in the actual situation, a pressure is applied such that, after raw shellfish with a shell and sea water have been accommodated into a plastic container and after said plastic container with said raw shellfish and said sea water has been sealed, said sealed plastic container is placed into a high pressure processing device (for example, an MCT-150 model produced by Mitsubishi Heavy Industries Corporation) so as to apply a predetermined high pressure.

[0008]

The shell of processed shellfish manufactured by using a method of the present invention as described above can be easily opened with fingers; for said reason, an extremely improved workability can be obtained in comparison with that for prior art shell opening work.

[0009]

[Effect]

It is assumed that, when a high pressure is applied onto raw shellfish with a shell, a

4

muscle of the eye of said raw shellfish is somehow affected; as a result, the shell is not easily closed; that, because of this, the shell can be easily opened by fingers.

[0010]

[Embodiment]

The present invention is described hereinbelow in detail with reference to the embodiments and the testing example.

Embodiment 1

Two oysters with shells and sea water at an amount equivalent to that of said oysters are accommodated into a plastic bag; after said plastic bag with oysters and sea water accommodated has been sealed, said sealed plastic bag is placed into a high pressure processing device, the MCT-150 model produced by Mitsubishi Heavy Industries Corporation; a high pressure at 3000 normal atmosphere is applied for 3 minutes so as to manufacture processed oysters of the present invention.

[0011]

Embodiment 2

Four clams with shells and sea water at an amount equivalent to that of said clams are accommodated into a plastic bag; after said plastic bag with clams and sea water accommodated has been sealed, said sealed plastic bag is placed into a high pressure processing device used as in Embodiment 1; a high pressure at 4000 normal atmosphere is

applied for 2 minutes so as to manufacture processed clams of the present invention.

[0012]

Testing example

As for processed oysters of the present invention obtained as in Embodiment 1 as described above and comparative raw oysters with shells that are not treated at a high pressure, when the degree of opening of the shells by fingers is tested by a comparison means, the following results are obtained:

| Testing items | Processed oysters of the present invention | comparative oysters without treating at a high pressure |
|---|---|---|
| Degree of opening of shells with fingers | ○ | × |

Note 1: symbol ○ stands for a state at which the shells of shellfish can be easily opened with fingers; symbol × stands for a state at which the shells of shellfish cannot be easily opened with fingers.

Note 2: when the shells of processed oysters of the present invention are opened, the condition does not substantially differ from that of raw oysters.

[0013]

[Advantageous Result of the Invention]

According to a method of the present invention, processed shellfish wherein the shell of said shellfish is extremely easily opened and wherein the meat is substantially at a raw condition is offered.

6

Translations Branch
U.S. Patent and Trademark Office
2/24/00
Chisato Morohashi

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant: Ernest A. Voisin

Serial No.     09/121,725                    Group Art Unit: 1761

Filed:   July 24, 1998                       Examiner: D. Becker

For: "A Process of Elimination of Bacteria    Date: May 19, 2004
        In Shellfish…"

### DECLARATION UNDER 37 C.F.R. SECTION 132

I, Ernest A. Voisin, applicant of the above-identified application, declare and say:

That I am a citizen of the United States and I reside at 203 Tina Street, Houma, LA 70363;

That I am the inventor of the above-identified application;

That I have been in the seafood processing business for over thirty years and am intimately familiar with all aspects of harvesting, farming and processing raw seafood, in particular raw molluscan shellfish;

That I am President of Motivatit Seafoods, Inc., a Louisiana corporation engaged in the business of processing raw seafood;

That I am familiar with Japanese patent application No. 4-356156 cited by the U.S. Patent Office in the Office Action of March 10, 2000;

That I conducted an exhaustive series of tests at the facilities of Motivatit Seafoods, Inc. in Houma, Louisiana following the steps outlined in Japanese application No. 4-356156 and described in detail hereinafter, to verify the teachings of the cited reference and compare them with the method of the instant invention;

That the tests started with oysters (the subject of the Japanese reference) being taken from a cooler where they were kept at 38 degrees Fahrenheit and then allowed to rest to come to the ambient temperature of about 50 degrees Fahrenheit;

That in accordance with the teachings of the cited reference, oysters in shells were placed in a pressure chamber with water;



EXHIBIT

3

1

That the pressure chamber was then pressurized to 1000 ATM at ambient temperature of about 50 degrees Fahrenheit; at that pressure level no shucking of oysters took place;

During the next test, the temperature was elevated to 90 degrees Fahrenheit at 1000 ATM, and it took 15 minutes for the shells to release;

That during the next test, while maintaining pressure at 1000 ATM, the temperature was elevated to 110 degrees Fahrenheit, and it took 10 minutes of pressure application for the shells to release;

That during the next test, the chamber was pressurized to 2000 ATM; however, continued application of pressure at ambient temperature for 3-10 minutes did not release the shells, but when the temperature was elevated to 75 degrees Fahrenheit - the shells released after 10 minutes;

During the next series of tests, the pressure was maintained at 2000 ATM, while the temperature was increased; it took 5 minutes at 95 degrees to release the shells and 3 minutes at 115 degrees to release the shells;

That the next series of tests were conducted under the test pressure of 3000 ATM; application of 3000 ATM pressure for 0.5 to 5 minutes, as claimed in the Japanese reference, did not result in a complete shucking of all oysters in the batch, only about 80 percent were shucked, which makes the method of JP 4-356156 commercially uncertain;

However, when the temperature was elevated to 68 degrees Fahrenheit (at 3000 ATM), the shells released after 5 minutes; when the temperature was elevated to 95 degrees Fahrenheit the shells released in 3 minutes, and when the temperature was raised to 120 degrees F. - it took only 1 minute to release the shells;

The last series of tests were conducted using 4000 ATM; the results showed that pressurization alone for 0.5 - 5 minutes does not completely shuck all the oysters in the batch; at 3 minutes the heat of 74 degrees was needed, at 1 minute - 102 degrees Fahrenheit to release the oyster shells;

That the results of the tests are summarized in the attached graph;

That the above tests clearly demonstrate superiority of the method of the instant application and criticality of adding the temperature factor to the shellfish shucking process, as claimed in the above-identified application;

That in my opinion the aforementioned superiority with respect to achieving a uniform result critical to commercial seafood processing of the claimed invention is unobvious to one of ordinary skilled in the art;

That the undersigned declares further that all statements made herein of his own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patents issuing thereon;

Further declarant saith not.

Date: _5- 20 -04_

Ernest A. Voisin

## EXHIBIT B

## FORM OF ASSIGNMENT TO MOTIVATIT

## ASSIGNMENT OF PATENTS

WHEREAS, Innovatit Seafood Systems, L.L.C., a Louisiana limited liability company, with an address of 116 East Ellendale Estates Drive, Houma, Louisiana 70360 (hereinafter referred to as "ASSIGNOR"), is the owner of United States and other patents and patent applications set forth in Schedule A attached hereto and made a part hereof (the listed patents and patent applications collectively referred to herein as the "PATENTS");

WHEREAS, Motivatit Seafoods, L.L.C., a Louisiana limited liability company, with an address of 412 Palm Ave., Houma, Louisiana 70364 (hereinafter referred to as "ASSIGNEE"), is desirous of acquiring all right, title and interest in the PATENTS, all Letters Patent that may be granted for the PATENTS in the United States and foreign countries, and all inventions described in the PATENTS owned by ASSIGNOR;

NOW THEREFORE, in consideration of One Dollar ($1.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, ASSIGNOR hereby sells, assigns and transfers to ASSIGNEE, the entire right, title and interest in and to the PATENTS, all Letters Patent that may be granted for the PATENTS in the United States and foreign countries, all inventions described in the PATENTS owned by ASSIGNOR, and any and all foreigns, divisions, reissues, continuations and extensions thereof, and all rights of ASSIGNOR associated therewith, including the right to sue for and collect damages by reason of past infringements of the PATENTS. ASSIGNOR further assigns to ASSIGNEE the right to claim priority or other rights deriving from any patent applications by virtue of internatio[...] convention, treaty or otherwise. The PATENTS, and all other patents, patent application[...]

EXHIBIT
4

registrations and inventions assigned hereby, to be held and enjoyed by ASSIGNEE for its use

and benefit and by its successors and assigns for their use and benefit as fully and entirely as the

same would have been held and enjoyed by ASSIGNOR had this assignment, transfer and sale

not been made.

Executed at _Houma_ , _Louisiana_ , this 28 TH day of _September_ , 2007.

ASSIGNOR
**Innovatit Seafood Systems, L.L.C.**

By _____
Name: Steven A. Voisin
Title: Manager

Executed at _Houma_ , _Louisiana_ , this 28th day of _September_ , 2007.

ASSIGNEE
**Motivatit Seafoods, L.L.C.**

By _____
Name: Michael C. Voisin
Title: Vice President

State of Louisiana    )
                ) ss.
Parish of _TERREBONNE_

     I certify that I know or have satisfactory evidence that Steven A. Voisin is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute this instrument, and acknowledged it as the Manager of **Innovatit Seafood Systems, L.L.C.**, to be the free and voluntary act of said company for the uses and purposes mentioned in the instrument.

Dated _SEPT 28, 2007_
Signature of
Notary Public _Robert B Butler_
Printed Name _ROBERT B BUTLER III_
My Appointment Expires _at death_

State of Louisiana    )
                ) ss.
Parish of _TERREBOUVINE_

     I certify that I know or have satisfactory evidence that Michael C. Voisin is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute this instrument, and acknowledged it as the Vice President of **Motivatit Seafoods, L.L.C.**, to be the free and voluntary act of said corporation for the uses and purposes mentioned in the instrument.

Dated _SEPT 28, 2007_
Signature of
Notary Public _Robert B Butler_
Printed Name _ROBERT B BUTLER III_
My Appointment Expires _at death_

# SCHEDULE A

## PATENTS

| Country | Title | Application Number Filing Date | Patent or Publication Number Issue Date | Status |
|---------|-------|-------------------------------|------------------------------------------|--------|
| United States | Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | 09/457,835 | 6,217,435 | Granted |
| | | 12/9/1999 | 4/17/2001 | |
| United States | Apparatus For Pressure Treating Shellfish | 09/524,442 | 6,393,977 | Granted |
| | | 03/14/2000 | 05/28/2002 | |
| United States | Process of Elimination of Bacteria in Shellfish and of Shucking Shellfish | 09/736,708 | 6,426,103 | Granted |
| | | 12/15/2000 | 07/30/2002 | |
| United States | Process of Elimination of Bacteria in Shellfish and of Shucking Shellfish | 09/723,363 | 6,537,601 | Granted |
| | | 11/27/2000 | 03/25/2003 | |
| United States | Bottom Discharge Container | 10/141,656 | 6,824,019 | Granted |
| | | 05/08/2002 | 11/30/2004 | |
| United States | High Pressure Process to Eliminate Vibrios And Other Bacteria In Oysters Clams and Other Shellfish | 60/071,819 | | Expired Provisional Application |
| | | 01/20/1998 | | |
| United States | High Pressure Process to Shuck Oysters Clams and Other Shellfish | 60/074,582 | | Expired Provisional Application |
| | | 02/13/1998 | | |
| United States | Method of Processing Crustaceans | 11/500,557 | | Pending |
| | | 8/8/2006 | | |
| United States | Another Method of Fabricating the Yoke and Chamber of High Pressure Processing Equipment | 60/086,484 | | Expired Provisional Application |
| | | 05/26/1998 | | |

| Country | Title | Application Number Filing Date | Patent or Publication Number Issue Date | Status |
|---|---|---|---|---|
| United States | Process of Elimination of Bacteria in Shellfish of Shucking Shellfish and an Apparatus Therefor | 09/121,725 07/24/1998 | | Court Appeal Pending |
| United States | Quick Removable Bottom Lid to Facilitate Dumping Water and Product From High Pressure Processing Basket | 60/289,581 05/09/2001 | | Expired Provisional Application |
| United States | Process of Elimination of Bacteria in Shellfish of Shucking Shellfish and an Apparatus Therefor | 09/949,704 09/10/2001 | | Court Appeal Pending |
| United States | Process of Elimination of Bacteria in Shellfish and of Shucking Shellfish | 09/302,116 04/29/1999 | | Abandoned |
| United States | Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | 09/524,444 03/14/2000 | | Abandoned |
| Europe | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | EP1990937429 07/23/1999 | EP 1 100 340 B1 09/29/2004 | Granted |
| Canada | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | 2,338,499 01/24/2001 | | Pending |
| PCT | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | US99/16759 07/23/1999 | WO2000/04785 02/03/2000 | Published |
| PCT | A Process of Elimination of Bacteria in Shellfish and of Shucking Shellfish | US00/11127 04/26/2000 | WO2000/65923 11/09/2000 | Published |
| Germany | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A 07/23/1999 | DE69920715D 09/29/2004 | Granted |

| Country | Title | Application Number / Filing Date | Patent or Publication Number / Issue Date | Status |
|---|---|---|---|---|
| Spain | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A | Spanish National Part of EP 1 100 340 B1 | Granted |
| | | 07/23/1999 | 09/29/2004 | |
| France | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A | French National Part of EP 1 100 340 B1 | Granted |
| | | 07/23/1999 | 09/29/2004 | |
| Great Britain | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A | Great Britain National Part of EP 1 100 340 B1 | Granted |
| | | 07/23/1999 | 09/29/2004 | |
| Ireland | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A | Irish National Part of EP 1 100 340 B1 | Granted |
| | | 07/23/1999 | 09/29/2004 | |
| Italy | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A | Irish National Part of EP 1 100 340 B1 | Granted |
| | | 07/23/1999 | 09/29/2004 | |
| The Netherlands | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A | Netherlands National Part of EP 1 100 340 B1 | Granted |
| | | 07/23/1999 | 09/29/2004 | |

EXHIBIT C

FORM OF ASSIGNMENT TO AVURE

ASSIGNMENT OF PATENTS


WHEREAS, Motivatit Seafoods, Inc., a Louisiana limited liability company, with an

address of 412 Palm Ave., Houma, Louisiana 70364 (hereinafter referred to as "ASSIGNOR"),

is the owner of United States and other patents and patent applications set forth in Schedule A

attached hereto and made a part hereof (the listed patents and patent applications collectively

referred to herein as the "PATENTS"), such ownership being obtained by assignment from

Innovatit Seafood Systems, L.L.C., a Louisiana limited liability company;

WHEREAS, Avure Technologies Incorporated, a Delaware corporation, with an address

of 22408 – 66th Avenue South, Kent, Washington 98032 (hereinafter referred to as

"ASSIGNEE"), is desirous of acquiring all right, title and interest in the PATENTS, all Letters

Patent that may be granted for the PATENTS in the United States and foreign countries, and all

inventions described in the PATENTS owned by ASSIGNOR;

NOW THEREFORE, in consideration of One Dollar ($1.00) and other good and valuable

consideration, the receipt and sufficiency of which are hereby acknowledged, ASSIGNOR

hereby sells, assigns and transfers to ASSIGNEE, the entire right, title and interest in and to the

PATENTS, all Letters Patent that may be granted for the PATENTS in the United States and

foreign countries, all inventions described in the PATENTS owned by ASSIGNOR, and any and

all foreigns, divisions, reissues, continuations and extensions thereof, and all rights of

ASSIGNOR associated therewith, including the right to sue for and collect damages by reason of

past infringements of the PATENTS.  ASSIGNOR further assigns to ASSIGNEE the right to

claim priority or other rights deriving from any patent applications by virtue of international

convention, treaty or otherwise.  The PATENTS, and all other patents, patent applications,

registrations and inventions assigned hereby, to be held and enjoyed by ASSIGNEE for its use

and benefit and by its successors and assigns for their use and benefit as fully and entirely as the

same would have been held and enjoyed by ASSIGNOR had this assignment, transfer and sale

not been made.


Executed at *HoumA , Louisiana* , this 28th day of *September* , 2007.

ASSIGNOR
Motivatit Seafoods, L.L.C.

By _____

Name: Michael C. Voisin
Title: Vice President


Executed at *Houma , Louisiana* , this 28th day of *September* , 2007.

ASSIGNEE
Avure Technologies Incorporated

By _____

Name: Don P. Adams Jr.
Title: President & CEO ,

State of Louisiana    )
                    ) ss.

Parish of _TERREBONNE_

     I certify that I know or have satisfactory evidence that Michael C. Voisin is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute this instrument, and acknowledged it as the Vice President of Motivatit Seafoods, L.L.C., to be the free and voluntary act of said corporation for the uses and purposes mentioned in the instrument.

Dated _SEPT 28, 2007_
Signature of
Notary Public _Robt B Butler_
Printed Name _ROBERT B BUTLER III_
My Appointment Expires _at death_

State of Louisiana    )
                    ) ss.

Parish of _TERREBONNE_

     I certify that I know or have satisfactory evidence that Don P. Adams Jr. is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute this instrument, and acknowledged it as the President & CEO of Avure Technologies Incorporated, to be the free and voluntary act of said corporation for the uses and purposes mentioned in the instrument.

Dated _SEPT 28, 2007_
Signature of
Notary Public _Robt B Butler_
Printed Name _ROBERT B BUTLER III_
My Appointment Expires _at death_

# SCHEDULE A

## PATENTS

| Country | Title | Application Number Filing Date | Patent or Publication Number Issue Date | Status |
|---------|-------|-------------------------------|------------------------------------------|--------|
| United States | Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | 09/457,835 <br> 12/9/1999 | 6,217,435 <br> 4/17/2001 | Granted |
| United States | Apparatus For Pressure Treating Shellfish | 09/524,442 <br> 03/14/2000 | 6,393,977 <br> 05/28/2002 | Granted |
| United States | Process of Elimination of Bacteria in Shellfish and of Shucking Shellfish | 09/736,708 <br> 12/15/2000 | 6,426,103 <br> 07/30/2002 | Granted |
| United States | Process of Elimination of Bacteria in Shellfish and of Shucking Shellfish | 09/723,363 <br> 11/27/2000 | 6,537,601 <br> 03/25/2003 | Granted |
| United States | Bottom Discharge Container | 10/141,656 <br> 05/08/2002 | 6,824,019 <br> 11/30/2004 | Granted |
| United States | High Pressure Process to Eliminate Vibrios And Other Bacteria In Oysters Clams and Other Shellfish | 60/071,819 <br> 01/20/1998 | | Expired Provisional Application |
| United States | High Pressure Process to Shuck Oysters Clams and Other Shellfish | 60/074,582 <br> 02/13/1998 | | Expired Provisional Application |
| United States | Method of Processing Crustaceans | 11/500,557 <br> 8/8/2006 | | Pending |
| United States | Another Method of Fabricating the Yoke and Chamber of High Pressure Processing Equipment | 60/086,484 <br> 05/26/1998 | | Expired Provisional Application |

| Country | Title | Application Number Filing Date | Patent or Publication Number Issue Date | Status |
|---|---|---|---|---|
| United States | Process of Elimination of Bacteria in Shellfish of Shucking Shellfish and an Apparatus Therefor | 09/121,725 07/24/1998 | | Court Appeal Pending |
| United States | Quick Removable Bottom Lid to Facilitate Dumping Water and Product From High Pressure Processing Basket | 60/289,581 05/09/2001 | | Expired Provisional Application |
| United States | Process of Elimination of Bacteria in Shellfish of Shucking Shellfish and an Apparatus Therefor | 09/949,704 09/10/2001 | | Court Appeal Pending |
| United States | Process of Elimination of Bacteria in Shellfish and of Shucking Shellfish | 09/302,116 04/29/1999 | | Abandoned |
| United States | Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | 09/524,444 03/14/2000 | | Abandoned |
| Europe | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | EP1990937429 07/23/1999 | EP 1 100 340 B1 09/29/2004 | Granted |
| Canada | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | 2,338,499 01/24/2001 | | Pending |
| PCT | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | US99/16759 07/23/1999 | WO2000/04785 02/03/2000 | Published |
| PCT | A Process of Elimination of Bacteria in Shellfish and of Shucking Shellfish | US00/11127 04/26/2000 | WO2000/65923 11/09/2000 | Published |
| Germany | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A 07/23/1999 | DE69920715D 09/29/2004 | Granted |

| Country | Title | Application Number | Patent or Publication Number | Status |
|---------|-------|--------------------|------------------------------|--------|
| | | Filing Date | Issue Date | |
| Spain | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A | Spanish National Part of EP 1 100 340 B1 | Granted |
| | | 07/23/1999 | 09/29/2004 | |
| France | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A | French National Part of EP 1 100 340 B1 | Granted |
| | | 07/23/1999 | 09/29/2004 | |
| Great Britain | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A | Great Britain National Part of EP 1 100 340 B1 | Granted |
| | | 07/23/1999 | 09/29/2004 | |
| Ireland | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A | Irish National Part of EP 1 100 340 B1 | Granted |
| | | 07/23/1999 | 09/29/2004 | |
| Italy | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A | Irish National Part of EP 1 100 340 B1 | Granted |
| | | 07/23/1999 | 09/29/2004 | |
| The Netherlands | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A | Netherlands National Part of EP 1 100 340 B1 | Granted |
| | | 07/23/1999 | 09/29/2004 | |

The opinion in support of the decision being entered today was **not** written for publication and is **not** binding precedent of the Board.

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

————————

Ex parte ERNEST A. VOISIN

Appeal No. 2005-1101
Application No. 09/121,725

————————

HEARD: JANUARY 26, 2006

————————

Before OWENS, WALTZ, and FRANKLIN, Administrative Patent Judges.
WALTZ, Administrative Patent Judge.

**DECISION ON APPEAL**

This is a decision on an appeal from the primary examiner's final rejection of claims 3, 4, 6, 7 and 27, which are the only claims pending in this application.  We have jurisdiction pursuant to 35 U.S.C. § 134.

According to appellant, the invention is directed to a method of treating raw molluscan shellfish (e.g., oysters) to eliminate naturally-occurring pathogenic organisms, such as *Vibrio Vulnificus*, by exposing the raw molluscan shellfish to high isostatic pressures of between 20,00 and 80,000 psi, without

Appeal No. 2005-1101
Application No. 09/121,725

application of heat, for a period of time between 1 and 15
minutes, thereby causing elimination of the naturally-occurring
pathogenic organisms while retaining sensory characteristics of
the raw shellfish (Brief, page 2).[1]  To the extent appellant
provides separate arguments for patentability (Brief, pages 3-5),
we consider the claims separately.  See 37 CFR § 1.192(c)(7)
(2003); now 37 CFR § 41.37(c)(1)(vii)(2004).  A copy of
representative independent claims 3 and 6 is reproduced below:

        3. Process of destroying bacteria in raw molluscan
    shellfish, while shellfish is in the shell, comprising the steps
    of:

        providing a pressure vessel;

        depositing said shellfish into said pressure vessel;

        loading a pressure transmitting fluid into said pressure
    vessel;

        pressurizing said pressure vessel to high pressure of
    between about 20,000 p.s.i. and 80,000 p.s.i., without
    application of heat, for a period of time of between 1 and 15
    minutes, thereby causing elimination of naturally-occurring
    pathogenic marine bacteria, while retaining sensory
    characteristics of said shellfish; and then

        retaining said shellfish at a temperature below ambient
    temperature.

        6. A process of treating raw oysters in a shell, which
    comprises:

---

[1]We refer to and cite from the Amended Appeal Brief dated September 3, 2004.

2

Appeal No. 2005-1101
Application No. 09/121,725

exposing raw oysters to hydrostatic pressure of between 20,000 p.s.i. and 80,000 p.s.i. for 1-15 minutes at ambient temperature, without causing thermal and mechanical damage to the raw oysters, thereby eliminating pathogenic Vibriones bacteria in said raw oysters, preventing deterioration of said raw oysters, while retaining sensory characteristics of said raw oysters.

The examiner has relied upon the following references as evidence of unpatentability:

Tesvich et al. (Tesvich)    5,773,064    Jun. 30, 1998

Yasushi et al. (JP '156)    H4-356156    Dec. 09, 1992
(published Japanese Unexamined Patent Application)[2]

Cheftel, "Effects of high hydrostatic pressure on food constituents: an overview," *High Pressure and Biotechnology,* Colloque INSERM/John Libbey Eurotext Ltd. © 1992, Vol. 224, pp. 195-209.

Claims 6 and 27 stand rejected under 35 U.S.C. § 102(b) as anticipated by JP '156 (Answer, page 3).  Claims 3, 4 and 7 stand rejected under 35 U.S.C. § 103(a) as unpatentable over JP '156 in view of Tesvich (Answer, page 4).  Based on the totality of the record, we *affirm* all rejections on appeal essentially for the reasons stated in the Answer, the reasons stated in the decision in parent application no. 09/121,725 dated Mar. 10, 2003 (Appeal No. 2002-0206, Paper No. 24), and for the reasons set forth below.

_____

[2]We rely upon and cite from a full English translation of this document, previously made of record.

3

Appeal No. 2005-1101
Application No. 09/121,725


                              OPINION

    A.  *Background*

    This application is a continued prosecution application of

application number 09/121,725, in which a merits panel of this

Board affirmed the rejections of claims 6-7 under section 102(b)

as anticipated by JP '156 and claims 3-4 under section 103(a) as

unpatentable over JP '156 (see the decision mailed Mar. 10, 2003,

Paper No. 24 as Appeal No. 2002-0206; Brief, pages 1-2).

Although some claims in this application are nearly identical to

those presented in the parent application, this appeal involves

new claim 27 as well as consideration of the evidence submitted

as Exhibits 1-9 (Brief, page 2).

    B.  *The Rejection under § 102(b)*

    Claims 6 and 27 stand rejected under section 102(b) as

anticipated by JP '156, as evidenced by Cheftel (Answer, pages 3-

4).

    The examiner finds that JP '156 discloses a method of

treating shellfish comprising exposing raw oysters in their shell

contained in plastic bags filled with sea water to hydrostatic

pressures of 14,223 to 56,892 psi for a duration of 0.5 to 10

minutes at ambient temperatures without application of heat

                                 4

Appeal No. 2005-1101
Application No. 09/121,725

(Answer, pages 3-4).[3] The examiner recognizes that the reference
is silent about any effect of the pressure application on the
pathogenic bacteria content of the oysters (Answer, page 4).
However, the examiner reasons that, since the claimed method
steps are the same as taught by JP '156, the claimed
characteristic of eliminating pathogenic *Vibriones* bacteria is an
inherent property and result of the reference method, absent any
clear and convincing evidence to the contrary (Answer, page 4).
The examiner has also found that high pressure treatment of
seafood destroys pathogenic organisms such as *Vibriones*,
illustrating this finding with Cheftel's disclosure (*id.*).

Appellant argues that the cited reference is silent on the
possibility or desirability of the process being conducted at
20,000 psi or at pressures above 56,892 psi, as well as being
silent as to possible effects that different pressure ranges
would have on raw oysters (Brief, page 5). Appellant also argues
that the reference is silent on the issue of pathogenic bacteria
elimination (*id.*).

Appellant's argument concerning the issue of elimination of
pathogenic bacteria is correct, as admitted by the examiner

---

[3]We also adopt all of the factual findings set forth on pages 5-7 of our previous decision
dated Mar. 10, 2003, in Appeal No. 2002-0206 (Paper No. 24).

Appeal No. 2005-1101
Application No. 09/121,725

(Answer, page 4).  However, for reasons discussed in the Answer
and set forth below, we agree with the examiner that a reasonable
basis has been established that the elimination of pathogenic
bacteria would have been inherent to the method of JP '156.
Appellant's other arguments are not well taken.  Contrary to his
own argument, appellant admits that JP '156 teaches pressure
ranges overlapping the claimed pressure range (Brief, page 5),
with teachings that higher pressures could be employed, and
examples to specific pressures within the scope of the claimed
pressures (see JP '156, ¶[0006], and Embodiment 1).  Disclosure
in the prior art of any value within the claimed range is
anticipation of the claimed range.  *See In re May,* 574 F.2d 1082,
1089, 197 USPQ 601, 607 (CCPA 1978); *In re Wertheim,* 541 F.2d
257, 267, 191 USPQ 90, 100 (CCPA 1976).

Appellant argues that the cited reference is "at least
partially non-enabling" (Brief, page 7).  Appellant argues that,
after numerous tests, it has been demonstrated that the lower
pressures stated in JP '156 do not open the oysters (Brief, page
7; Exhibits 1 and 2).  Appellant asserts that there is no
inherent disclosure of the invention where experiments have
revealed that the prior art did not consistently yield the
claimed invention (Reply Brief, page 2).  Appellant challenges

6

Appeal No. 2005-1101
Application No. 09/121,725

the operability of JP '156 by the citation of later-published
Japanese 2000-157157A (JP '157; Exhibit 3) and the accompanying
Table (Exhibit 4) and graph (Exhibit 5)(Brief, pages 9-10; Reply
Brief, page 4). Appellant argues that he had to perform numerous
experiments, well beyond the "undue experimentation" standard, in
an effort to reproduce the results of oyster shucking in JP '156
(Brief, page 11; Reply Brief, page 3).

   Appellant's arguments and evidence are not persuasive.
Appellant is correct that, to be prior art under section 102(b),
a reference must be enabling. *See In re Donohue,* 766 F.2d 531,
533, 226 USPQ 619, 621 (Fed. Cir. 1985). That is, the reference
must put the claimed invention in the hands of one skilled in the
art. *See In re Donohue,* 766 F.2d at 533, 226 USPQ at 621. The
"claimed invention" in this appeal is a process of treating raw
oysters in a shell by use of high pressure for a specific time
and temperature (see claim 6 on appeal). Accordingly,
appellant's Exhibits fail to provide evidence that JP '156 does
not put this process in the hands of one of ordinary skill in
this art, but instead the Exhibits are directed to the "partially
non-enabling" disclosure of shucking in JP '156. This evidence
is not persuasive of non-enablement or inoperability of the
process of JP '156.

7

Appeal No. 2005-1101
Application No. 09/121,725

Even assuming the relevance of the Exhibits, we note the following deficiencies in the evidence presented. In Exhibit 1 (the Voisin Declaration), the tests are done at an "ambient temperature" of 50°F. but there is no evidence that this is the same ambient temperature employed by JP '156. Furthermore, the test at 1000 atm. fails to reveal the duration (time) of the test (Exhibit 1, page 1). Finally, we note that the Declaration (Exhibit 1, page 2) admits that 80% of the oysters were shucked at the temperature, pressure and duration exemplified in Embodiment 1 in ¶[0010] of JP '156. We also note that Exhibit 2 is merely a duplicate of Exhibit 1.

In Exhibit 3, JP '157 merely is an improvement over JP '156, using lower pressures (and correspondingly higher temperatures) to avoid the expense of employing costly high pressure treatment (JP '157, ¶[0004, 0006, and 0053]). As shown by Exhibits 4 and 5, shucking of the oysters occurred within the pressures and times taught by JP '156 (assuming that ambient temperature is 50°F.). We note that the times for low pressure treatment exemplified in Table 1 (Exhibit 4) were less than the times taught by JP '156 (see ¶[0006]).

Regarding Exhibits 5-9 (the Chauvin, Michael Voisin, Nelson and Sunseri Declarations, respectively), we adopt the examiner's

8

Appeal No. 2005-1101
Application No. 09/121,725

comments from the final Office action dated Oct. 30, 2003 (page 5) and the Answer (page 8), noting that all of these Declarations merely conclude that the method steps disclosed by JP '156 do not inherently eliminate bacteria in shellfish but fail to present any evidence to support this conclusion.

We agree with the examiner that Embodiment 1 of JP '156 anticipates claims 6 and 27 for the reasons discussed in the Answer and above.  We conclude, as did the examiner, that the process steps disclosed in JP '156 are identical to those of claims 6 and 27 (see our prior decision, paragraph bridging pages 7-8).  A result that is inherent, i.e., that inevitably and necessarily occurs, as in this case, need not be recognized in a prior reference that teaches a process encompassed by the claimed process.  *See MEHL/Biophile Int'l Corp. v. Milgraum,* 192 F.3d 1362, 1365, 52 USPQ2d 1303, 1305 (Fed. Cir. 1999).

In the present instance, the examiner has put forth credible and substantial evidence in the record that the pressure treatment of seafood destroys pathogenic microorganisms such as *Vibriones* (claim 6) in oysters (Answer, page 4, citing Cheftel).  The examiner has also established with credible and substantial evidence that the claimed process steps are identical to those disclosed in JP '156, which utilizes the same pressures and times

9

Appeal No. 2005-1101
Application No. 09/121,725

as claimed by appellant (Answer, pages 3-4).  Accordingly, the
burden has shifted to appellant to show that the prior art
process does not act to reduce or eliminate the pathogenic
bacteria in oysters.  *See In re Best,* 562 F.2d 1252, 1255, 195
USPQ 430, 433-34 (CCPA 1977).  The appellant has not carried this
burden, and consequently the prima facie case of anticipation of
claims 6 and 27 must be affirmed.

   C.  *The Rejection under § 103(a)*

   The examiner applies JP '156 for the reasons discussed above
and in the (Answer, pages 3-4), with the examiner further finding
that JP '156 is silent regarding the use of refrigerated
temperatures and the use of bands around the oyster shells Answer
(page 4).  The examiner applies Tesvich to show these well known
features (Answer, page 5).  Appellant does not contest or dispute
the examiner's findings regarding Tesvich (Brief, pages 14-17)
but repeats the arguments discussed above.  Therefore we adopt
our comments from above, as well as the findings and conclusion
of law set forth by the examiner, and affirm the examiner's
rejection based on section 103(a).

   D.  *Summary*

   The rejection of claims 6 and 27 under 35 U.S.C. § 102(b)
over JP '156 is affirmed.

Appeal No. 2005-1101
Application No. 09/121,725


The rejection of claims 3, 4 and 7 under 35 U.S.C. § 103(a)

over JP '156 in view of Tesvich is also affirmed.

The decision of the examiner is affirmed.

In the event of further or continuing prosecution of this

application, we note that the examiner and appellant should

consider Voisin, U.S. Patent No. 6,217,435 B1, issued Apr. 17,

2001.

No time period for taking any subsequent action in

connection with this appeal may be extended under 37 CFR

§ 1.136(a)(1)(iv)(2004).

**AFFIRMED**


TERRY J. OWENS            )
Administrative Patent Judge  )
                          )
                          )
                          )
                          )
THOMAS A. WALTZ           ) BOARD OF PATENT
Administrative Patent Judge  )     APPEALS
                          )      AND
                          )  INTERFERENCES
                          )
                          )
BEVERLY A. FRANKLIN       )
Administrative Patent Judge  )


TW/rwk

11

Appeal No. 2005-1101
Application No. 09/121,725


KEATY PROFESSIONAL LAW CORPORATION
2 CANAL STREET
2140 WORLD TRADE CENTER
NEW ORLEANS, LA 70130



UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
WASHINGTON, D.C. 20231
www.uspto.gov

# BEFORE THE BOARD OF PATENT APPEALS
# AND INTERFERENCES

MAILED

MAY

GROUP 1700

Paper No. 17

Application Number:  09/121,725
Filing Date: July 24, 1998
Appellant(s): VOISIN, ERNEST A.

---

Thomas S. Keaty
For Appellant

## EXAMINER'S ANSWER

This is in response to appellant's brief on appeal filed April 13, 2001.

**(1)    *Real Party in Interest***

A statement identifying the real party in interest is contained in the brief.

EXHIBIT
6

Application/Control Number: 09/121,725                                    Page 2
Art Unit: 1761

**(2)    *Related Appeals and Interferences***

A statement identifying the related appeals and interferences which will directly affect or be directly affected by or have a bearing on the decision in the pending appeal is contained in the brief.

**(3)    *Status of Claims***

The statement of the status of the claims contained in the brief is correct.

**(4)    *Status of Amendments After Final***

The appellant's statement of the status of amendments after final rejection contained in the brief is correct.

**(5)    *Summary of Invention***

The summary of invention contained in the brief is correct.

**(6)    *Issues***

The appellant's statement of the issues in the brief is correct.

**(7)    *Grouping of Claims***

The rejection of claims 3-4 and 6-7 stand or fall together because appellant's brief does not include a statement that this grouping of claims does not stand or fall

Application/Control Number: 09/121,725                                    Page 3
Art Unit: 1761

together and reasons in support thereof, other than a mere recitation of the claims

themselves.  See 37 CFR 1.192(c)(7).


**(8)    *Claims Appealed***

A substantially correct copy of appealed claim 3 appears on page 15 of the

Appendix to the appellant's brief.  The minor errors are as follows: line 1 should read

"while **said** shellfish is".

A substantially correct copy of appealed claim 6 appears on page 15 of the

Appendix to the appellant's brief.  The minor errors are as follows: line 2 should read

"exposing **said** raw oysters".

These additions were made by the Examiner's Amendment, paper no. 5.


**(9)    *Prior Art of Record***

JP 4356156A                      Miura et al                      12-1992

Cheftel, J.C. "Effects of high hydrostatic pressure on food constituents: an overview"

High Pressure and Biotechnology, Vol. 224, 1992, pp. 195-209


**(10)    *Grounds of Rejection***

The following ground(s) of rejection are applicable to the appealed claims:


Claims 6-7 are rejected under 35 U.S.C. 102(b) as being anticipated by

JP 4356156A.

Application/Control Number: 09/121,725                                    Page 4
Art Unit: 1761

JP 4356156A teach a method of treating shellfish comprising exposing raw oysters
(paragraph 0005) contained in plastic bags filled with sea-water (paragraph 0010) to
hydrostatic pressures of 14,615-44,087 psi for 0.5-10 minutes at ambient temperatures
(paragraph 0006). Although JP 4356156A do not recite any effect upon pathogenic
Vibriones bacteria, the method steps utilized in the reference are the same as those
instantly claimed, and thus one of ordinary skill in the art would have expected the same
results. The claimed characteristic of eliminating pathogenic Vibriones bacteria is
considered an inherent property and result of the referenced method, and not unique to
the instant invention, absent any clear and convincing evidence or arguments to the
contrary. Further, it was known that high pressure treatment of seafood destroyed
pathogenic organisms such Vibrio, as evidenced by Cheftel [Effects of high hydrostatic
pressure on food constituents: an overview] (page 204, heading 1.2).


        Claims 3-4 are rejected under 35 U.S.C. 103(a) as being unpatentable over
JP 4356156A.

JP 4356156A teach a method of treating shellfish by providing a pressure vessel
(paragraph 0010) and exposing raw oysters (paragraph 0005) contained in plastic bags
filled with sea-water (paragraph 0010) to hydrostatic pressures of 14,615-44,087 psi for
0.5-10 minutes at ambient temperatures (paragraph 0006).  Although JP 4356156A do
not recite any effect upon pathogenic Vibriones bacteria, the method steps utilized in
the reference are the same as those instantly claimed, and thus the same results would
also have been expected. The claimed characteristic of eliminating pathogenic
Vibriones bacteria is considered an inherent property and result of the referenced

method, and not unique to the instant invention, absent any clear and convincing evidence or arguments to the contrary. Although not specifically recited, it would have been obvious to one of ordinary skill in the art to refrigerate the pressure treated oysters of JP 4356156A since cooling to refrigeration temperatures was a commonly used method of preserving raw food products.


**(11)    Response to Argument**

Appellant incorrectly cites the treatment time of JP 4356156A as 0.5-5 minutes. Appellant's attention is drawn to paragraph 0006 of the translated reference which includes a treatment time of up to 10 minutes.

Appellants argue that since the European Patent Office listed the JP 4356156A reference as an "A" reference, it did not defeat the novelty of the appellant's method. It is noted that the European Patent Office is not the same entity as the USPTO and does not operate under the same rules and laws. Regardless, this "A" listing was probably due to the fact that the translated abstract for JP 4356156A incorrectly listed the pressure range as "1-44 atmospheres" (646 psi) and that the true pressure range was not apparent until the Examiner had the reference fully translated.

Regarding the three declarations obtained by the appellant, none of the three mention or discuss the JP 4356156A reference but merely state that the respective declarants were not personally aware of this process. This would not be sufficient to overcome the rejection, as the reference was publicly available, and therefore properly applicable as prior art against the claims.

Application/Control Number: 09/121,725                                    Page 6
Art Unit: 1761

Appellant argues against the inherent microbiological effects of the method of

JP 4356156A. Although JP 4356156A does not recite any effect upon pathogenic

Vibriones bacteria, the method steps utilized in the reference are the same as those

instantly claimed, and thus the same results would also have been expected. The

claimed characteristic of eliminating pathogenic Vibriones bacteria is considered an

inherent property and result of the referenced method, and not unique to the instant

invention, absent any clear and convincing evidence or arguments to the contrary on

the record. Further, it was known that high pressure treatment of seafood destroyed

pathogenic microorganisms such as Vibrio, as evidenced by Cheftel (page 204, heading

1.2).

Regarding inherency, paragraph 2112 of the MPEP states:

"The claiming of a new use, new function or unknown property which is inherently present in the

prior art does not necessarily make the claim patentable. In re Best, 562 F.2d 1252, 1254, 195

USPQ 430, 433 (CCPA 1977). See also MPEP § 2112.01 with regard to inherency and product-

by-process claims and MPEP § 2141.02 with regard to inherency and rejections under 35

U.S.C. 103."

Appellant argues that since this application was subject to a restriction

requirement prior to initial examination, that the two methods are unrelated. While the

two methods in question (shucking of shellfish using high pressure and pasteurization of

shellfish using high pressure), were not examined in the same application, this does not

constitute a judgement on patentability between the instant claims and JP 4356156A.

The restriction in question was based on the methods having different effects in addition

to different pressure ranges and the use of a flexible band. Regardless, the restriction was based solely on the appellant's claims and is not relevant to the present rejection over JP 4356156A. As mentioned above, the method steps utilized in JP 4356156A are the same as those instantly claimed, and thus the same results would have been expected, particularly in view of the pasteurization teachings of Cheftel showing the general knowledge in the art at the time the invention was made.

Appellant states that Cheftel "was not cited in the rejection of the claims and reference to this book in addition to the Japanese reference is improper in establishing anticipation under Section 102". Attention is drawn to paragraph 2 of the Final Rejection (paper no. 13) which cites Cheftel as an evidentiary reference regarding the pressure treatment of seafood to eliminate Vibrio (page 204, heading 1.2). This reference was cited in response to appellant's arguments, and thus is properly included herein. It does not add to the teachings of JP 4356156A, such as in a 103 rejection, but rather merely provides evidence of the teaching of the JP 4356156A patent.

Attention is drawn to paragraph 2131.01 which states:

"To serve as an anticipation when the reference is silent about the asserted inherent characteristic, such gap in the reference may be filled with recourse to extrinsic evidence. Such evidence must make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill." Continental Can Co. USA v. Monsanto Co., 948 F.2d 1264, 1268, 20 USPQ2d 1746, 1749 (Fed. Cir. 1991) "

With regard to the rejection under 35 USC 103(a), in response to appellant's argument that the examiner's conclusion of obviousness is based upon improper

Application/Control Number: 09/121,725                                     Page 8
Art Unit: 1761

hindsight reasoning, it must be recognized that any judgment on obviousness is in a

sense necessarily a reconstruction based upon hindsight reasoning. But so long as it

takes into account only knowledge which was within the level of ordinary skill at the time

the claimed invention was made, and does not include knowledge gleaned only from the

applicant's disclosure, such a reconstruction is proper. See *In re McLaughlin*, 443 F.2d

1392, 170 USPQ 209 (CCPA 1971). In this case the same process steps were taught

by JP 4356156A which would have inherently produced the same effects as appellant's

method. Regardless, it was known that high pressure treatment of seafood destroyed

pathogenic microorganisms such as Vibrio, as evidenced by Cheftel (page 204, heading

1.2).

   Appellant argues on pages 10-11 against the "obviousness" of eliminating

pathogenic bacteria in the method of JP 4356156A. Attention is drawn to 103(a)

rejections of paper no. 13 which state that eliminating pathogenic bacteria was an

inherent property and result, and that the "obviousness" of the rejection was directed to

the refrigeration of the raw oysters of JP 4356156A after pressure treatment since this

was a commonly used method of preserving raw food products.

   Appellant argues that the method steps of claims 3-4 have been ignored. These

claims were not ignored, and the limitations therein were taught by the reference as

discussed in the 103 rejection of paper no. 13. Attention is again drawn to paragraph

0010 of JP 4356156A which taught a pressure vessel, placing oysters in the pressure

vessel, a pressure transmitting liquid in the form of sea water, and treating with a

pressure of 3000 atmospheres (~44,087 psi) for a time period of 3 minutes.

Application/Control Number: 09/121,725                                      Page 9

Art Unit: 1761

For the above reasons, it is believed that the rejections should be sustained.

Respectfully submitted,

Drew Becker

May 2, 2001

KEITH HENDRICKS
PRIMARY EXAMINER

KEATY PROFESSIONAL LAW CORPORATION
2 CANAL STREET
2140 WORLD TRADE CENTER
NEW ORLEANS, LA 70130

GREGORY MILLS
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 1700