

# Nicholls State University

October 7, 1999

To Whom It May Concern:

I would like to discuss the background, goals and objectives, and results of my research studies at Nicholls State University, which were done at the request of Ernest A. Voisin of Houma, Louisiana, to evaluate the emerging technology of hydrostatic high pressure processing (HPP) for pasteurization of live shellstock oysters. Mr. Voisin requested this work because he felt that application of high water pressure might eliminate, or reduce to non-detectable levels, a potentially pathogenic naturally-occurring marine organism, *Vibrio vulnificus*. It has long been a priority of the oyster industry, government agencies and academic researchers nationally and internationally to develop or evaluate new post harvest technologies to eliminate *V. vulnificus* from live shellstock and raw shucked oysters.

Sincerely,

Marilyn B. Kilgen, Ph.D.
Distinguished Service Professor and Head
Department of Biological Sciences
Nicholls State University
Thibodaux, LA 70310

**Definitions:**

**Pasteurization is the application of some intervention method or treatment to eliminate or reduce to non-detectable levels target organisms or groups of organisms** - generally pathogens or spoilage microorganisms. The product, if perishable, must still be refrigerated, and is not shelf-stable at ambient temperatures because not all of the microorganisms present are eliminated.
e.g. pasteurization of milk

**Sterilization is the application of an intervention method or treatment sufficient to kill or inactivate all living organisms or microorganisms, and to render the product shelf stable at ambient temperatures.**
e.g. sterilization of canned food products

This study produced data on the effects of HPP on *V. vulnificus* in live shellstock oysters that has never been previously obtained.

EXHIBIT A

Department of Biological Sciences • P.O. Box 2021 • Thibodaux, LA 70310 • (504) 448-4700/4701

## Background

*Vibrio vulnificus* is a naturally occurring halophilic, Gram negative, rod shaped bacterium, that ferments lactose and is found in estuarine and marine waters (13,23,29). *V. vulnificus* is considered a major component of the normal micro flora of warm (>25°C) estuarine waters and thus, filter-feeding molluscan shellfish. It has been isolated from estuarine and marine waters of the U.S. gulf coast, east coast, and west coast, and on various continents (10,12,24,25,36). It has also been isolated from many seafood samples including filter-feeding molluscs, where these bacteria can adhere and multiply in the gut region, and in fish (7,8,23,28). It can be transferred from this natural environment to man directly through wound infections in estuarine waters, or by the consumption of raw or undercooked oysters by immunocompromised or "at risk" individuals (2,3,5,13,23,29). However, this naturally occurring warm water estuarine organism is the only bacteria that has been associated with any mortality in recent years, as a result of primary septicemia in "at risk" individuals through consumption of raw oysters. These deaths are very rare, and occur only in at risk individuals who are immunocompromised or have preexisting liver disease (2,3,13,23,29). These at risk individuals have only about a 1 in 25,000 chance of contracting this serious disease if they consume raw oysters contaminated with *V. vulnificus* (3); and 99% of at risk raw oyster consumers with underlying medical conditions do not acquire this disease (15). Although individuals who are considered normal healthy patients have never been reported to have contracted this disease, it has resulted in enormous negative media coverage and negative economic impact on the gulf oyster industry for the last 10 years (13, 15). Elimination of *V. vulnificus*, or decrease to non-detectable levels of this naturally occurring marine microorganism through a pasteurization process that would not impact the raw product has long been sought after because the increase in consumer confidence and marketability would result in a global economic impact on the oyster industry.

Several different techniques or strategies proposed to pasteurize or reduce the numbers of *Vibrio vulnificus* in live and processed oysters have been evaluated in the past, but each has had problems. They have included time and temperature for reduction of numbers (5), cold, freezing and heat treatments (4,5,6,15), vacuum packaging (26), use of Generally Recognized as Safe (GRAS) compounds (31), suspension relaying into offshore waters (21), ionizing irradiation (15), UV light (33), and food condiments treatment (32). Some of these strategies are somewhat effective, but may pose such problems as being too costly, too time consuming, not having FDA approval, or too inconvenient for the consumer and/or entrepreneur.

Hydrostatic high pressure processing (HPP) of foods is a novel, non-thermal means of pasteurizing food products with no or minimal heat treatments. Foods can be pre-packaged and processed under elevated water pressure up to 130,000 psi, depending on the required application. Food is placed inside a pressure vessel which contains the pressure transmitting fluid. During the process, according to Pascal's Law, the pressure has a uniform effect on everything inside the pressure vessel. Foods inside the pressure vessel in a fluid-filled container compensate for the external pressure because it is distributed in all directions equally. Therefore, HPP does not lead to large changes in volume and consequent mechanical damage to delicate food products. The two main targets for microbial inactivation include mechanical damage to the cell membrane and denaturization of one or more key enzymes.

## Goal and Objectives

The goal of studies requested by Ernest A. Voisin and conducted at Nicholls State University was to **pasteurize** oysters to eliminate or reduce to non-detectable levels (<3 most probable number (MPN)/gram) *Vibrio vulnificus* from raw gulf coast oysters, using for the first time on live oysters, the emerging technology of cold high hydrostatic pressure processing (HPP) to avoid impacting the sensory qualities of raw oysters, and also to regain national consumer confidence in this economically important product (16, 17, 18, 19).

The effects of high pressure processing (HPP) of foods, which is a non-thermal means of preserving food products with no or minimal heat treatments, has actually been known for over 90 years (9,11,27,30). However, it has just recently re-emerged as a practical technology for cold pasteurization of foods. Foods can be pre-packaged and processed under elevated water pressure up to 130,000 psi, depending on the required application. Food is placed inside a pressure vessel which contains the pressure transmitting fluid. During the process, according to Pascal's Law, the pressure has a uniform effect on everything inside the pressure vessel. Foods inside the pressure vessel in a fluid-filled container compensate for the external pressure because it is distributed in all directions equally. Therefore, HPP does not lead to large changes in volume and consequent mechanical damage to delicate food products (9,27). Oysters lend themselves very well to this processing technology because of the delicate tissue and high water content of the organism. The two main targets for microbial inactivation include mechanical damage to the cell membrane and denaturization of one or more key enzymes (9,11,27).

This technology of hydrostatic high pressure processing (HPP) will be economically important to the oyster industry because: 1) it results in exacting quality control because of instantaneous and uniform transmission of the pressure throughout the entire product, regardless of oyster volumes or sizes (9). This is not possible with either heat or ionizing irradiation; 2) it does not significantly alter sensory qualities or nutritional value due to lack of thermal processing (30); 3) it enables high productivity since the processing time does not depend on the dimensions of the product processed (isostatic); 4) it does not involve thermal damage since thermal increase is minimal ($3°C/14,500$ psi; 5) it does not cause mechanical damage to delicate raw oysters; 6) it has minimal impact on the environment, requiring only electric energy with no waste products generated; 7) it has no negative impact on consumer acceptability (27); and finally, 8) consumer confidence in oysters could be restored for greatly increased market value (18, 19)

## Results

The first preliminary or pilot tests were run at the Illinois Institute for Technology's (IIT) Center for Food Safety and Technology (CFST) in collaboration with Ernest A. Voisin. Tests on a larger scale were later run at Oregon State University (17). Most recent tests were run at Motivatit Seafoods, Inc. in Houma, LA in their commercial level hydrostatic high pressure processor, developed in conjunction by them and Flow International, Inc. (16). These studies on live shellstock oysters using standard FDA approved methods (1, 20, 22, 30), on approximately 60 oysters per sample run showed that hydrostatic high pressures in **the commercial machine reduced the naturally occurring or ambient levels of *Vibrio vulnificus* in the live shellstock oysters to "non-detectable levels"\* at a pressure of 25,000 psi for 15 minutes.**

Analysis of the samples were done at days 0, 7, 14 and 21 post high pressure processing to confirm that *V. vulnificus* does not repair from the HPP damage during 3 weeks cold storage at approximately 35-40°F in commercial cold storage. The control or untreated oysters had ambient or naturally occurring levels of 460,000 most probable number (MPN) *Vibrio vulnificus*/gram (16).

*Note: The United States Food and Drug Administration (USFDA) in conjunction with the Interstate Shellfish Sanitation Conference (ISSC) have defined "non-detectable levels" of *V. vulnificus* to be <3 Most Probable Number (MPN)/gram. (Model Ordinance, 1997, Chap. XI, J (i) (i), p. 89. (See attached pages from ISSC/FDA Model Ordinance.)

In addition, it was observed by Kilgen et al., 1999 (17) during the pilot tests requested by Ernest A. Voisin at the Illinois Institute for Technology's (IIT's) Center for Food Safety and Technology (CFST), that the oyster adductor muscle connective tissue attachment at the shell denatured to gel formation at pressures as low as 20,000 psi for 15 minutes. The denaturation of other types of muscle proteins, including actin and myosin, and connective tissues to a gelatin transition have been documented in the past (9, 27), and are a result of disruption of non-covalent interactions in tertiary protein structures. **The potential commercial utilization of this chemical denaturation for mechanical shucking of live shellstock oysters has not been previously tested or observed.** This has great commercial and economic implications since approximately 80% of the cost of a shucked oyster is in the labor intensive hand shucking process, and oyster damage due to shucking causes water loss or "bleeding" (35).

Overall, the novel use of hydrostatic high pressure processing for the pasteurization of live shellstock oysters to eliminate or reduce to non-detectable levels, the naturally-occurring marine organism *Vibrio vulnificus*, and other vibrio species, and for mechanical shucking of shellstock oysters, will result in significant benefit to the global economy of the oyster and other molluscan shellfish industries (16, 17, 35).

Literature Cited:
1. American Public Health Assoc. 1985. Recommended procedures for the examination of seawater and shellfish. 5th Ed. A.E.Greenberg, D.A. Hunt, Eds.APHA, Wash, D.C. p.144.
2. CDC. 1996. *Vibrio vulnificus* Infections Associated with Eating Raw Oysters. MMWR 45(29):621-624.
3. CDC. 1993. *Vibrio vulnificus* Infections Associated with Raw Oyster Consumption - Florida, 1981-1992. MMWR 42:405-407.
4. Cook, D.W. and A.E. Ruple. 1992. Cold Storage and mild Heat Treatment as Processing Aids to Reduce the Numbers of *Vibrio vulnificus* in Raw Oysters. J Food Prot. 55(12) 985-989.
5. Cook, D.W. 1994. Effect of Time and Temperature on Multiplication of *Vibrio vulnificus* in Postharvest Gulf Coast Shell stock oysters. Appl Environ Microbiol. 60(9) 3483-3484.
6. Cook, D.W. 1997. Refrigeration of Oyster Shell stock: Conditions Which Minimize the Outgrowth of *Vibrio vulnificus*. J. Food Prot. 60(4) 349-352.
7. DePaola, Angelo, G.M. Capers and D. Alexander. 1994. Densities of *Vibrio vulnificus* in the Intestines of Fish from the U.S. Gulf Coast. Appl Environ Micro 60(3):984-988.

8. Groubert, T.N. and J.D. Oliver. 1994. Interaction of *Vibrio vulnificus* and the Eastern Oyster, *Crassostrea virginica*. Journal of Food Protection. 57(3).224-228.
9. Farr, D. High pressure technology in the food industry, a review. Trends in Food Science and Technology, July 1990, pp14-16.
10. Hoi, L., J.L. Larsen, I. Dalsgaard, and A. Dalsgaard. 1998. Occurrence of *Vibrio vulnificus* biotypes in Danish Marine Environments. Appl. Environ. Microbiol. 64:7-13.
11. Hoover, D.G., C. Metrick, A. Papineau, D. Farkas, and D. Knorr. March, 1989. Biological effects of high hydrostatic pressure on food microorganisms. FoodTechnology: 99-107
12. Kaysner, Charles, C. Abeyta, Jr., M.M. Wekell, A. DePaola, R.F. Stott, and J.M. Leitch. 1987. Virulent strains of *Vibrio vulnificus* isolated from estuaries of the United States West Coast. Appl. Environ. Microbiol. 53:1349-1351.
13. Kilgen, M.B. 1991. Public health issues stemming from water-borne pathogens in the Barataria-Terrebonne estuary. Barataria-Terrebonne National Estuary Program - Scientific-Technical Committee Data Inventory Workshop Proceedings pp 202-219.
14. Kilgen, M.B. 1993. Cost-benefit aspects of irradiation processing for Louisiana oysters. In: Proceedings of an Internat. Symp. on Cost-Benefit Aspects of Food Irradiation Processing, pp 89-101. IAEA, Vienna.
15. Kilgen, M.B. and M.T. Hemard. 1996. Evaluation of commercial irradiation and other processing methods for *Vibrio vulnificus* control in Louisiana oysters. Proceedings of the 19th and 20th Annual Conferences of the Tropical and Subtropical Seafood Science and Technology Society of the Americas. pp. 300-310.
16. Paris, C.L., A. Rhodes, and M.B. Kilgen. 1999. Evaluation of commercial hydrostatic high pressure processing for mechanical shucking and *Vibrio vulnificus* control in Louisiana shellstock oysters. Abstract to the American Society for Microbiology, South Central Branch. October, 1999, New Orleans, LA
17. Kilgen, M.B., J. Bourgeois and C. Porche. 1999. Hydrostatic high pressure processing of Louisiana oysters for *Vibrio vulnificus* control and mechanical shucking. Abstract to the Louisiana Academy of Sciences, February, 1999, Monroe, LA
18. Levy, A.S. and S. Fein. 1995. Consumer perceptions of food safety problems and reported practices. Division of Market Studies, Center for Food Safety and Applied Nutrition, FDA.
19. Lin, J., W. Milon, E. Babb and R. Degner. 1991. Consumer perceptions of shellfish related safety risks: Results from east coast focus groups. Food and Resource Economics Department, University of Florida.
20. Massad, George and J.D. Oliver. 1987. New Selective and Differential Medium for *Vibrio cholerae* and *Vibrio vulnificus*. Appl Environ Micro. 53(9):2262-2264.
21. Motes, M,L, and A. DePoala. 1996. Offshore Suspension Relaying to Reduce Levels of *Vibrio vulnificus* in Oysters (*Crassostrea virginica*). Appl Environ Micro 62(10):3875-3877.
22. Oliver, J.D., K. Guthrie, J. Preyer, A. Wright, L. Simpson, R. Seibling, J.G. Morris, Jr. 1992. Use of Colistin-Polymyxin B-Cellobiose Agar for Isolation of *Vibrio vulnificus* from the Environment. Appl Environ Micro. 58(2): 737-739.
23. Oliver, J.D. 1989. *Vibrio vulnificus*. 569-599. In M. Doyle (ed.), Food-borne Bacterial Pathogens. Marcel Dekker, Inc., New York.

24. Oliver, J.D., R.A. Warner, and D.R. Cleland. 1982. Distribution and ecology of *Vibrio vulnificus* and other lactose-fermenting marine vibrios in coastal waters of the southeastern United States. Appl. Environ. Microbiol. 44: 1404-1414.
25. Oneill, K.R., S.H. Jones, and D.J. Grimes. 1992. Seasonal incidence of Vibrio vulnificus in the Great Bay Estuary of New Hampshire and Maine. Appl. Environ. Microbiol. 58: 3257-3262.
26. Parker, R.W., E.M. Maurer, A.B. Childers, and D.H. Lewis. 1994. Effect of Frozen Storage and Vacuum-Packaging on Survival of *Vibrio vulnificus* in Gulf Coast Oysters *(Crassostrea virginica)*. J Food Prot. 57(7): 604-606.
27. Rovere, P. 1995. The third dimension of food technology. Tecnologie Alimentari 4:1-6.
28. Ruple, A.D. and D.W. Cook. 1992. *Vibrio vulnificus* and Indicator Bacteria in Shellstock and Commercially Processed Oysters from the Gulf-Coast. J Food Prot. 55(9): 667-671.
29. Seafood Safety. 1991. National Academy Press, Washington, D.C., p. 292-293.
30. Styles, M.F., D.G. Hoover and D.F. Farkas. 1991. Response of Listeria monocytogenes and *Vibrio parahaemolyticus* to high hydrostatic pressure. J. of Food Science. 56(5):1404-1407.
31. Sun, Yi and J.D. Oliver. 1994. Effects of GRAS Compounds on Natural *Vibrio vulnificus* Populations in Oysters. J Food Prot. 57(10): 921-923.
32. Sun, Yi and J.D. Oliver. 1995. Hot Sauce: No Elimination of *Vibrio vulnificus* in Oysters. J Food Prot. 58(4) 441-442.
33. Tamplin, M.L. and G.M. Capers. 1991. Persistence of *Vibrio vulnificus* in Tissues of Gulf Coast Oysters, *Crassostrea virginica*, Exposed to seawater Disinfected with UV Light. Appl Environ Micro. 58. 1506-1510.
34. Tamplin, M.L., A.L. Martin, A.D. Ruple, D.W. Cook and C.W. Kaspar. 1991. Enzyme Immunoassay for Identification of *Vibrio vulnificus* in Seawater, Sediment, and Oysters. Appl Environ Micro. 57(4): 1235-1240.
35. Voisin, M. 1998. Personal communication.
36. Wright, Anita, R.T. Hill, J.A. Johnson, M. Roghmen, R.R. Colwell and J.G. Morris. 1986. Distribution of *Vibrio vulnificus* in the Chesapeake Bay. Appl. Environ. Microbiol. 62: 717-724.



# NATIONAL FISHERIES INSTITUTE

1901 North Fort Myer Drive, Suite 700
Arlington, VA 22209
(703) 524-8880 • Fax: (703) 524-4619
www.nfi.org

September 13, 2000

Mike Voisin
Motivatit Seafoods, Inc.
P.O. Box 3916
Houma, LA 70361-3916

Dear Mike,

It was a pleasure seeing you at the ISSC Meeting in July. It certainly reminded me of the meeting in New Orleans last year and the visit to your plant to observe the High Pressure Processing of Oysters to reduce Vibrio vulnificus bacteria.

This new process is truly impressive when you consider the amount of time and money spent by universities and scientist worldwide to solve this concern.

Your dad, Ernest, is to be complimented for having the original idea to treat oysters this way and pursuing it through many hours of testing and fine tuning.

I'm sure the regulators, such as ISSC and FDA, are aware of the importance of this new process.

The oyster industry has been challenged for many years because of Vibrio vulnificus bacteria. This could be one of the breakthroughs needed to correct the problem.

Mike, keep up the good work. If we can be of help, please let us know.

Sincerely,

*Robert L. Collette*

Robert L. Collette
VP of Science & Technology

EXHIBIT B



AGRICULTURAL EXPERIMENT STATION
Department of Food Science
111 Food Science Building - LSU
Baton Rouge, Louisiana 70803-4200
(225)578-5206
Fax: (225)578-5300
Website: www.lsuagcenter.com

September 1, 2000

To Whom it may concern,

I am an Extension food technologist with the Louisiana State University Agricultural Center in Baton Rouge, LA. I have been with LSU for more than 24 years. My doctorate is from Louisiana State University. During that time, I have worked extensively with seafood processors on issues related to process technology, microbiology, and food safety.

The US shell stock oyster industry has been scrutinized for years by public health agencies and consumer groups. The industry is highly regulated by both federal and state governmental agencies responsible for food inspection and safety. It is assumed that shell stock oysters will be eaten raw by consumers, hence the reason for the intense concern. The procedures for inspection of harvesting waters has worked well for decades to minimize the presence of sewage related human pathogens in shell stock oysters. In the 1980's, the discovery of *Vibrio vulnificus* associated with raw molluscan shellfish raised new and important concerns. This organism was not associated with human sewage but is considered to be part of the natural microflora of marine waters. In addition, only identified at-risk individuals (especially those with liver disease) seem to be susceptible to infection. One major goal of the industry and food safety regulatory agencies has focused on the elimination of this pathogen without compromising the integrity of the oyster.

Prior to Mr. Ernie Voisin contacting me about the possibility of using high pressure treatment for the elimination of *Vibrio vulnificus* in raw molluscan shellfish, I was not aware of the process being used anywhere or by anyone for that purpose. In addition, I was not aware of anyone suggesting that the process be used for that purpose prior to Mr. Voisin contacting me. I was invited by Mr. Voisin to assist Dr. Marilyn Kilgen in some preliminary microbiological testing of the process in March, 1998 in Chicago, IL. According to Dr. Kilgen, the process is highly effective in eliminating *Vibrio vulnificus*.

Please let me know if I may be of any further assistance.

Sincerely,

Michael W. Moody, Ph.D.
Seafood Technologist

EXHIBIT C

The LSU Agricultural Center is a campus of the LSU System and provides equal opportunities in programs and employment.

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant: Ernest A. Voisin

Serial No.: 09/121,725

Examiner Drew Becker

Filed: July 24, 1998

Group Art Unit 1761

For: A Process of Elimination of Bacteria in
Shellfish, of Shucking Shellfish and
an Apparatus Therefor

### DECLARATION

I, Le Roy Chauvin, declare and say:

That I am a citizen of the United States of America and I reside at 7614 Main Street, Apt. 205, Houma, Louisiana 70360. I began my work in the oyster industry in 1953 and have worked in this field ever since.

That I have almost fifty years of experience in all aspects of oyster treatment, from cultivating oysters to harvesting, processing, distribution, canning, freezing and breading. I was the first person to ship shell oysters to the Chesapeake Bay area of Virginia, Maryland, New Jersey and the Florida coast.

That I am a member of North American Oyster Institute, that my recommendations relating to improving fresh shell oyster quality are being followed and enforced by the Federal Food and Drug Administration to this day.

That I made numerous improvements in the field of growing oysters off bottom from a hatchery. I am a patentee of U.S. patent No. 5,579,724 issued December 3, 1996. That I teach students how to grow oysters started in a hatchery off bottom. I am currently writing a textbook on this subject.

I am intimately familiar with the problems faced by seafood industry and technical solutions offered by numerous individuals and companies.

I am aware that the industry has been actively engaged in finding solution to the problem of seafood contamination by naturally-occurring marine bacteria, such as *Vibrio Vulnificus* and others.

I have reviewed the above-identified application of Mr. Ernest A. Voisin, the prosecution history of the application, Japanese application identified as JP 4356156A, Cheftel [Effects on high hydrostatic pressure on food constituents: an overview] (page 203, heading 1.2), and patent No. 5,773,064 (Tesvich).



EXHIBIT D

Having reviewed the Office Action of Examiner Becker dated June 6, 2003 and having considered statements made by the examiner, I submit that I disagree with the examiner in his assessment of the Japanese application as it is applied to claims 6 and 27. It is my belief that the Japanese reference does not teach a person familiar with the seafood industry how the solve the problem of bacterial contamination. The fact that the Japanese inventor suggests exposing oysters to hydrostatic pressures of 14,615 – 44,087 p.s.i. for 0.5 – 10 minutes at ambient temperatures for the purpose of opening oysters does not translate, suggest, imply or make inherent the teachings of Claims 6 and 27 of Mr. Voisin's application.

I have also reviewed Cheftel's reference and disagree with examiner's assessment of the application of that reference to a real-life problem. Cheftel, while theorizing on the possibility of using high pressure in treating cheeses, minced meat and other food products (note the words "provisional and tentative" at the top of the page) also suggests using high pressure in gelation of muscle protein (paragraph 2.1). To me it suggests that Cheftel did not appreciate the danger of indiscriminately using high pressure in oysters and other delicate seafood items if one does not wish to cause irreversible damage of the product. Therefore, it would not have occurred to me to read the Japanese application or Cheftel's page, singularly or in combination, as a guiding manual or even a suggestion for elimination of Vibrio Vulnificus in molluscan shellfish. I submit that it is not inherent in the Japanese reference and is not recognized inherent by me, based on my experience and knowledge of seafood processing, that the method steps of the Japanese application would result in elimination of bacteria in molluscan shellfish. I have reached the same conclusion after considering the Cheftel's page.

I also disagree with the examiner's statement that a person of ordinary skill in the art would have expected the same result (Vibrio elimination) after having read the Japanese reference. It is my opinion that Japanese application addresses only one subject - oyster shucking. There is nothing in that paper that have told me or suggested to m, or made inherent to me that using certain pressures and time values can eliminate Vibrio in seafood without changing the taste of seafood.

I have further reviewed the patent of Tesvich and Japanese application as they relate to Claims 3, 4 and 7. I disagree with the examiner in his assessment of the differences between Claims 3, 4, and 7 of Mr. Voisin's application and the combined disclosure of the Japanese application and Tesvich's patent. It is my belief that it would not have been obvious to a person familiar with seafood industry to pressurize seafood at 20,000 p.s.i. and 80,000 p.s.i., without application of heat, without causing damage to shellfish, for a period of time of between 1 and 15 minutes in order to destroy bacteria in raw molluscan shellfish after having reviewed JP 4356156A and Tesvich. The mere fact that Tesvich suggests banding and refrigeration of seafood after "mild heat treatment" does not change the result – neither JP 4356156A nor Tesvich, singularly or combined together, suggest, make inherent or obvious what Mr. Voisin's claims 3, 4, and 7 teach.

I submit that Mr. Voisin's invention is unique and novel in the industry; it provided a viable solution to a long-existing problem. Mr. Voisin achieved success where many

others before him failed. It is for this reason that this inventor received acclaim from other seafood processors, who gave him "Processor of the Year" award.

Further declarant saeyth not.

Date: Oct 1, 2003

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant: Ernest A. Voisin

Serial No.: 09/121,725

Filed:   July 24, 1998

Examiner Drew Becker

Group Art Unit 1761

For: A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor

### DECLARATION

I, Michael C. Voisin, declare and say:

That I am a citizen of the United States of America and I reside at 116 East Ellendale Est. Drive, Houma, Louisiana 70360.

That I attended Nicholls State University in Thibodaux, Louisiana in 1973, 1974, and 1976.

That since 1971 I have been working in the field of seafood processing. I have been employed by Motivatit Seafoods, Inc. of Houma, Louisiana since 1971. I have firsthand knowledge and experience in all aspects of seafood processing, including farming, harvesting, plant processing and distribution. Since about August 1971, I have been General Manager of Motivatit Seafoods, Inc., a corporation engaged in seafood processing. I am an active member of Louisiana Oyster Dealers & Growers Association; I was President of this organization and Chairman of the Board. I am also an active member of Gulf and South Atlantic Fisheries Development Foundation; I was President of this organization and Board of Trustees member.

That I am an active member of Interstate Shellfish Sanitation Conference, Terrebonne Parish Economic Development Consortium, Louisiana Restaurant Association, Southeastern Fisheries Association, Louisiana Seafood Processors Council, Gulf Oyster Industry Council, National Fisheries Institute and Molluscan Shellfish Institute of North America. In many of the listed organizations I served as President, Board member and Chairman.

That I was also appointed to serve on National Shellfish Pollution Indicator Program, National Fish and Seafood Promotion Council, and many others. A more detailed Resume is attached herewith.

I am intimately familiar with the problems faced by seafood industry and technical solutions offered by numerous individuals and companies.



EXHIBIT E

I am aware that the industry has been actively engaged in finding solution to the problem of seafood contamination by naturally-occurring marine bacteria, such as *Vibrio Vulnificus* and others.

I have reviewed the above-identified application of Mr. Ernest A. Voisin, the prosecution history of the application, Japanese application identified as JP 4356156A, Cheftel [Effects on high hydrostatic pressure on food constituents: an overview] (page 203, heading 1.2), and patent No. 5,773,064 (Tesvich).

Having reviewed the Office Action of Examiner Becker dated June 6, 2003 and having considered statements made by the examiner, I submit that I disagree with the examiner in his assessment of the Japanese application as it is applied to claims 6 and 27. It is my belief that the Japanese reference does not teach a person familiar with the seafood industry how the solve the problem of bacterial contamination. The fact that the Japanese inventor suggests exposing oysters to hydrostatic pressures of 14,615 – 44,087 p.s.i. for 0.5 – 10 minutes at ambient temperatures for the purpose of opening oysters does not translate, suggest, imply or make inherent the teachings of Claims 6 and 27 of Mr. Voisin's application.

I have also reviewed Cheftel's reference and disagree with examiner's assessment of the application of that reference to a real-life problem. Cheftel, while theorizing on the possibility of using high pressure in treating cheeses, minced meat and other food products (note the words "provisional and tentative" at the top of the page) also suggests using high pressure in gelation of muscle protein (paragraph 2.1). To me it suggests that Cheftel did not appreciate the danger of indiscriminately using high pressure in oysters and other delicate seafood items if one does not wish to cause irreversible damage of the product. Therefore, it would not have occurred to me to read the Japanese application or Cheftel's page, singularly or in combination, as a guiding manual or even a suggestion for elimination of Vibrio Vulnificus in molluscan shellfish. I submit that it is not inherent in the Japanese reference and is not recognized inherent by me, based on my experience and knowledge of seafood processing, that the method steps of the Japanese application would result in elimination of bacteria in molluscan shellfish. I have reached the same conclusion after considering the Cheftel's page.

I also disagree with the examiner's statement that a person of ordinary skill in the art would have expected the same result (Vibrio elimination) after having read the Japanese reference. It is my opinion that Japanese application addresses only one subject - oyster shucking. There is nothing in that paper that have told me or suggested to m, or made inherent to me that using certain pressures and time values can eliminate Vibrio in seafood without changing the taste of seafood.

I have further reviewed the patent of Tesvich and Japanese application as they relate to Claims 3, 4 and 7. I disagree with the examiner in his assessment of the differences between Claims 3, 4, and 7 of Mr. Voisin's application and the combined disclosure of the Japanese application and Tesvich's patent. It is my belief that it would not have been obvious to a person familiar with seafood industry to pressurize seafood at 20,000 p.s.i.

and 80,000 p.s.i., without application of heat, without causing damage to shellfish, for a period of time of between 1 and 15 minutes in order to destroy bacteria in raw molluscan shellfish after having reviewed JP 4356156A and Tesvich. The mere fact that Tesvich suggests banding and refrigeration of seafood after "mild heat treatment" does not change the result – neither JP 4356156A nor Tesvich, singularly or combined together, suggest, make inherent or obvious what Mr. Voisin's claims 3, 4, and 7 teach.

I submit that Mr. Voisin's invention is unique and novel in the industry; it provided a viable solution to a long-existing problem. Mr. Voisin achieved success where many others before him failed. It is for this reason that this inventor received acclaim from other seafood processors, who gave him "Processor of the Year" award.
Further declarant saeyth not.

Date: 10/1/03                                     [signature]

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant: Ernest A. Voisin

Serial No.: 09/121,725                     Examiner Drew Becker

Filed:   July 24, 1998                     Group Art Unit 1761

For: A Process of Elimination of Bacteria in
    Shellfish, of Shucking Shellfish and
    an Apparatus Therefor

### DECLARATION

I, Christopher Lee Nelson, declare and say:

That I am a citizen of the United States of America and I reside at 12582 Oak Tree Drive, Magnolia Springs, AL 36555. I began my work in the Oyster industry in 1989 and have been active in this field ever since. I am totally experienced with oyster biology, microbiology, and industry practice.

I am an active member of the National Fisheries Institute, Molluscan Shellfish Institute, National Shellfisheries Association, Southeastern Fisheries Association, Interstate Shellfish Sanitation Conference, Gulf Oyster Industry Council, Gulf States Marine Fisheries Commission, Alabama Seafood Association, South Baldwin Chamber of Commerce, and the Louisiana Oyster Dealers and Growers Association.

I am intimately familiar with the problems faced by the seafood industry and technical solutions offered by numerous individuals and companies.

I am aware that the industry has been actively engaged in finding methods to eliminate naturally occurring marine bacteria, such as *Vibrio vulnificus* and others from seafood.

I have reviewed the above-identified application of Mr. Ernest A. Voisin, the prosecution history of the application, Japanese application identified as JP 4356156A, Cheftel [Effects on high hydrostatic pressure on food constituents: an overview] (page 203, heading 1.2), and patent No. 5,773,064 (Tesvich).

Having reviewed the Office Action of Examiner Becker dated June 6, 2003 and having considered statements made by the examiner, I submit that I disagree with the examiner in his assessment of the Japanese application as it is applied to claims 6 and 27. It is my belief that the Japanese reference does not teach a person familiar with the seafood industry how to eliminate certain bacteria in seafood. The fact that the Japanese inventor suggests exposing oysters to hydrostatic pressures of 14,615 – 44,087 p.s.i. for 0.5 – 10 minutes at ambient temperatures for the purpose of opening oysters does not

EXHIBIT F

translate, suggest, imply or make inherent the teachings of Claims 6 and 27 of Mr. Voisin's application.

I have also reviewed Cheftel's reference and disagree with the examiner's assessment of the application of that reference to a real-life problem. Cheftel, while theorizing on the possibility of using high pressure in treating cheeses, minced meat and other food products (note the words "provisional and tentative" at the top of the page) also suggests using high pressure in gelation of muscle protein (paragraph 2.1). To me it suggests that Cheftel did not appreciate the danger of indiscriminately using high pressure in oysters and other delicate seafood items if one does not wish to cause irreversible damage of the product. Therefore, it would not have occurred to me to read the Japanese application or Cheftel's page, singularly or in combination, as a guiding manual or even a suggestion for elimination of *Vibrio vulnificus* in molluscan shellfish. I submit that it is not inherent in the Japanese reference and is not recognized inherent by me, based on my experience and knowledge of seafood processing, that the method steps of the Japanese application would result in elimination of bacteria in molluscan shellfish. I have reached the same conclusion after considering Cheftel's paper.

I also disagree with the examiner's statement that a person of ordinary skill in the art would have expected the same result (Vibrio elimination) after having read the Japanese reference. It is my opinion that Japanese application addresses only one subject - oyster shucking. There is nothing in that paper that would have told me or suggested to me, or made inherent to me that using certain pressures and time values can eliminate Vibrio in seafood without changing the taste of seafood.

I have further reviewed the patent of Tesvich and Japanese application as they relate to Claims 3, 4 and 7. I disagree with the examiner in his assessment of the differences between Claims 3, 4, and 7 of Mr. Voisin's application and the combined disclosure of the Japanese application and Tesvich's patent. It is my belief that it would not have been obvious to a person familiar with seafood industry to pressurize seafood at 20,000 p.s.i. and 80,000 p.s.i., without application of heat, without causing damage to shellfish, for a period of time of between 1 and 15 minutes in order to destroy bacteria in raw molluscan shellfish after having reviewed JP 4356156A and Tesvich. The mere fact that Tesvich suggests banding and refrigeration of seafood after "mild heat treatment" does not change the result – neither JP 4356156A nor Tesvich, singularly or combined together, suggest, make inherent or obvious what Mr. Voisin's claims 3, 4, and 7 teach.

I submit that Mr. Voisin's invention is unique and novel in the industry; it provided a viable solution to a long-existing problem. Mr. Voisin achieved success where many others before him failed. It is for this reason that this inventor received acclaim from other seafood processors, who gave him "Processor of the Year" award.
Further declarant saeyth not.

Date: 10/02/03

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant: Ernest A. Voisin

Serial No.: 09/121,725                                   Examiner Drew Becker

Filed:      July 24, 1998                                Group Art Unit 1761

For: A Process of Elimination of Bacteria in
    Shellfish, of Shucking Shellfish and
    an Apparatus Therefor

## DECLARATION

I, Alfred R. Sunseri, declare and say:

That I am a citizen of the United States of America and I reside at 833 Celeste Avenue, River Ridge, LA 70123. I began my work in the oyster processing and distributing industry in 1980 and have been active in this field ever since. I am totally experienced with oyster processing, distributing, farming, as well as, state and national regulations and requirements for oyster processing and distribution.

I am an active member of the Louisiana Oyster Dealers and Growers Association, Louisiana Oyster Task Force, Gulf Oyster Industry Council, and the Interstate Shellfish Sanitation Conference.

I am intimately familiar with the problems faced by seafood industry and technical solutions offered by numerous individuals and companies.

I am aware that the industry has been actively engaged in finding solution to the problem of seafood contamination by naturally-occurring marine bacteria, such as *Vibrio Vulnificus* and others.

I have reviewed the above-identified application of Mr. Ernest A. Voisin, the prosecution history of the application, Japanese application identified as JP 4356156A, Cheftel [Effects on high hydrostatic pressure on food constituents: an overview] (page 203, heading 1.2), and patent No. 5,773,064 (Tesvich).

Having reviewed the Office Action of Examiner Becker dated June 6, 2003 and having considered statements made by the examiner, I submit that I disagree with the examiner in his assessment of the Japanese application as it is applied to claims 6 and 27. It is my belief that the Japanese reference does not teach a person familiar with the seafood industry how the solve the problem of bacterial contamination. The fact that the Japanese inventor suggests exposing oysters to hydrostatic pressures of 14,615 – 44,087 p.s.i. for 0.5 – 10 minutes at ambient temperatures for the purpose of opening oysters



EXHIBIT G

does not translate, suggest, imply or make inherent the teachings of Claims 6 and 27 of Mr. Voisin's application.

I have also reviewed Cheftel's reference and disagree with examiner's assessment of the application of that reference to a real-life problem. Cheftel, while theorizing on the possibility of using high pressure in treating cheeses, minced meat and other food products (note the words "provisional and tentative" at the top of the page) also suggests using high pressure in gelation of muscle protein (paragraph 2.1). To me it suggests that Cheftel did not appreciate the danger of indiscriminately using high pressure in oysters and other delicate seafood items if one does not wish to cause irreversible damage of the product. Therefore, it would not have occurred to me to read the Japanese application or Cheftel's page, singularly or in combination, as a guiding manual or even a suggestion for elimination of Vibrio Vulnificus in molluscan shellfish. I submit that it is not inherent in the Japanese reference and is not recognized inherent by me, based on my experience and knowledge of seafood processing, that the method steps of the Japanese application would result in elimination of bacteria in molluscan shellfish. I have reached the same conclusion after considering the Cheftel's page.

I also disagree with the examiner's statement that a person of ordinary skill in the art would have expected the same result (Vibrio elimination) after having read the Japanese reference. It is my opinion that Japanese application addresses only one subject - oyster shucking. There is nothing in that paper that have told me or suggested to m, or made inherent to me that using certain pressures and time values can eliminate Vibrio in seafood without changing the taste of seafood.

I have further reviewed the patent of Tesvich and Japanese application as they relate to Claims 3, 4 and 7. I disagree with the examiner in his assessment of the differences between Claims 3, 4, and 7 of Mr. Voisin's application and the combined disclosure of the Japanese application and Tesvich's patent. It is my belief that it would not have been obvious to a person familiar with seafood industry to pressurize seafood at 20,000 p.s.i. and 80,000 p.s.i., without application of heat, without causing damage to shellfish, for a period of time of between 1 and 15 minutes in order to destroy bacteria in raw molluscan shellfish after having reviewed JP 4356156A and Tesvich. The mere fact that Tesvich suggests banding and refrigeration of seafood after "mild heat treatment" does not change the result – neither JP 4356156A nor Tesvich, singularly or combined together, suggest, make inherent or obvious what Mr. Voisin's claims 3, 4, and 7 teach.

I submit that Mr. Voisin's invention is unique and novel in the industry; it provided a viable solution to a long-existing problem. Mr. Voisin achieved success where many others before him failed. It is for this reason that this inventor received acclaim from other seafood processors, who gave him "Processor of the Year" award.
Further declarant saeyth not.

Date: 9/24/03