IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INNOVATIT SEAFOOD SYSTEMS, LLC and AVURE TECHNOLOGIES, INC.<br><br>        Plaintiffs,<br><br>v.<br><br>COMMISSIONER FOR PATENTS,<br><br>        Defendant | Civil Action No. 06-0825(JR) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Plaintiffs Innovatit Seafood Systems, L.L.C. and Avure Technologies, Inc., joined as a party under Rule 19 FRCP ("Plaintiffs") pursuant to Court Order of November 27, 2007, oppose Commissioner for Patents ("Defendant") motion for summary judgment of anticipation of the claims of the application-in-suit Serial No. 09/949,704 ("application-in-suit").

## I.   INTRODUCTION

There is no evidence, let alone clear and convincing evidence, that the Defendant is entitled to a judgment as a matter of law on the issue of anticipation of the asserted claims of the application-in-suit in view the cited reference of Tesvich Pat. No. 5,773,064 ('064 patent"). The PTO's motion for summary judgment that the claims of the application-in-suit are anticipated by the Tesvich patent fails to establish the undisputed evidence required by law, and must be denied. The Defendant's Motion to Remand should likewise be denied.

## II.   SUMMARY OF ARGUMENT

In its Motion, the Patent Office ("PTO" or "Defendant") asks this Court to summarily declare as anticipated all asserted claims of application Serial No. 09/949,704. This Court should

1

deny PTO's Motion because PTO has failed to demonstrate the lack of any genuine issue of material fact, and because PTO has not satisfied its heavy burden to demonstrate entitlement to judgment as a matter of law by clear and convincing evidence.

The Court should first reject PTO's assertion that Claims 5 and 27 - 38 of the application-in-suit are anticipated under 35 U.S.C. § 102(e), either expressly or inherently, by Tesvich '064 patent.

The threshold question is whether the cited reference discloses the same product as recited in the clams of the instant application. PTO asserts that the product of the instant invention as the same as a product that would have been produced by the process disclosed in Tesvich '064 and such terms as "post-pressurized" and "pressure-shucked" should not be given patentable weight. Plaintiffs assert, as shown below and as common sense dictates that a publication that discusses a method of mild heat treatment and that was proven unsatisfactory in producing undamaged shellfish, does not and cannot, according to the controlling law, anticipate claims directed to a post-pressurized pressure-shucked product that retains sensory characteristics of raw product.

Second, the Court should similarly reject PTO's attempt to remand this case for further examination because the Japanese published application JP 4156156A ("JP '156") was not recently "discovered" by the Patent Office but was available to Examiner Drew Becker from the Information Disclosure Statement submitted by inventor Ernest Voisin in the parent application as early as January 10, 2000.

Here, the threshold question is whether the Patent Office is entitled to raise a new issue on appeal where it effectively waived its right to return the application for examination following the decision by BPAI. As discussed in more detail below, the Court should reject PTO's attempt to further extend the time of this litigation and proceed with the trial without remanding the case for further examination.

The PTO has failed to meet its heavy summary judgment burden to demonstrate anticipation of the asserted claims under any of the theories presented in its Motion. At a minimum, there remain genuine issues of material fact regarding each issue presented by the PTO. Accordingly, PTO's Motion should be denied on all issues.

### III.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is only appropriate when, drawing all factual inferences in favor of the nonmoving party, no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A motion for summary judgment must be supported with a showing sufficient to establish there are no genuine issues of material fact and that, even with all reasonable factual inferences drawn in favor of the non-movant, the movant would still be entitled to judgment as a matter of law. Cont'l Can Co. USA, Inc. v. Monsanto Co., 948 F.2d 1264, 1265 (Fed. Cir. 1991). The Federal Circuit has observed that "when summary judgment is improvidently granted the effect is to prolong litigation and increase its burdens." Id. at 1265-66. "This is of particular concern in patent disputes, where the patent property is a wasting asset, and justice is ill served by delay in final resolution." Id. at 1266. Experience has shown that a trial often establishes facts and inferences that cannot be gleaned from papers submitted pretrial. SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1116 (Fed. Cir. 1985). "Trial by document is an inadequate substitute for [a] trial with witnesses, who are

subject to examination and cross-examination in the presence of the decision maker." Scripps Clinic & Research Found. v. Genetech, Inc., 927 F.2d 1565, 1578 (Fed. Cir. 1991).

The application of a Rule 56 summary judgment to a patent case requires careful concern of the entire record and the relevant law. Rockwell Intl. V. United States, 147 F.3d 1358 (Fed. Cir. 1998). The fact intensive nature of anticipation and obviousness analysis is such that conflicts between opposing versions of fact, credibility and weight are likely. *See*, for example, Interconnect Planning Corp. v. Feil, 774 F.2d 1132 (Fed. Cir. 1985); Scripps Clinic & Research Found. v. Genentech Inc., 927 F.2d 1565 (Fed. Cir. 1991). The Federal Circuit applies the law as enunciated in the landmark cases of Anderson v. Liberty Lobby Inc., 477 U.S. 242 (1986), and Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Under Celotex, a motion for summary judgment must satisfy all evidentiary requirements necessary to sustain a judgment in movant's favor. If the Celotex threshold is crossed, Anderson requires the non-moving party to respond with evidence that would support a judgment in its favor; mere argument is insufficient.

To prove a properly construed claim unpatentable for anticipation under 35 U.S.C. § 102, there must be an identity between the claimed invention and the prior art; i.e., every element of a claim must be found in a single prior art reference. Glaverbel SA v. Northlake Mktg., 45 F.3d 1550 (Fed. Cir. 1995). There must be no difference between the invention and the reference disclosure as viewed by one skilled in the art. Scripps, 927 F.2d 1565. Anticipation is a fact question to be proven by clear and convincing evidence. Diversified Corp v. Century Steps, Inc., 850 F.2d 675 (Fed. Cir. 1988).

### IV. PTO'S SUMMARY JUDGMENT PRESENTS NEW ISSUES ON APPEAL

**1.    PTO's Request for Remand Is Unfair**

In its Motion, the Solicitor raised new issues, asserting that Claims 6 and 27 of the application-in-suit are anticipated only by JP '156. The BPAI decision stated: "we affirm the examiner's rejection of Claim 5 and Claims 27 through 38 . . . under 35 U.S.C. 102(e) as anticipated by Tesvich '064." Under the heading "Other Issues," the BPAI added, "in the event of further prosecution of this application or continuing application before the examiner, the examiner and appellant should consider the patentability of the claimed subject matter now on appeal in view of Yasushi et al., Japanese unexamined patent application No. H4-356156." This is the same application that the inventor submitted to the PTO on January 10, 2000 in the parent application and of which the PTO was aware at the time of the examination of the instant application, at the time of appeal to BPAI and at the time of BPAI's decision.

MPEP § 1211 gives authority to BPAI to remand a case to the examiner when it deems it necessary. For example, the Board may remand a case to the examiner for further search where it feels that the most pertinent art has not been cited, or to consider an amendment." 37 C.F.R. § 41.50(a)(1) states:

> The Board, in its decision, may affirm or reverse the decision of the examiner in whole or in part on the grounds and on the claims specified by the examiner. The affirmance of the rejection of a claim on any of the grounds specified constitutes a general affirmance of the decision of the examiner on that claim, except as to any ground specifically reversed. *The Board may also remand an application to the examiner*. (emphasis added)

37 C.F.R. § 41.50(a)(1)

The BPAI therefore, should have remanded the case to the examiner, directing him to examine the claims in view of JP '156 and not wait until after the applicant appealed the case to this Court. The PTO cannot claim that it suddenly "discovered" the new reference; it knew of this reference in January 10, 2000. The Solicitor asserts that this Court remanded the cases under similar circumstances in the past. In support of this proposition, the Solicitor cited <u>ExxonMobil Chemical Patents Inc. v. Godici</u>, 2002 WL 34233002 (D.D.C. 2002). However, in <u>ExxonMobil,</u> the Patent Office conducted a new search for prior art and discovered three patents not previously considered after the appeal to the District Court was filed. Similarly, in <u>McNeely v. Commissioner of Patents</u>, 334 F.Supp. 564 (D.C.D.C. 1971), the case was remanded because the Patent Office discovered prior art references after Plaintiffs filed the action.

The Plaintiffs most strongly oppose the Solicitor's request for remand. The PTO's attempt to further prolong resolution of the issues before this Court should be denied.

**2.      PTO's Argument of Anticipation Based on JP '156 Constitutes New Issue**

The Solicitor's assertion of anticipation of the instant claims in view of JP '156 constitutes a new issue and should be rejected by the Court. As the Court of Appeals for the Federal Circuit stated in <u>In re Hedges</u>, 783 F.2d 1038 (C.A.F.C. 1986), "[w]e and our predecessor court have not condoned the presentation of new grounds of rejection for the first time on appeal," citing <u>In re Hounsfield</u>, 699 F.2d 1320, 1324, 216 USPQ 1045, 1049 (Fed. Cir.1982); <u>In re Ziedler</u>, 682 F.2d 961, 967, 215 USPQ 490, 494 (CCPA 1982); <u>In re Nygard</u>, 341 F2d, 924, 928-9, 144 USPQ 586, 590 (CCPA 1965).

In the instant case, JP '156 is not of record as an anticipatory reference; it was indicated as a reference to be considered in the event of "further prosecution or continuing application."

The BPAI did not consider this reference as defeating novelty of the instant claims; it only indicated that it "would appear relevant." Solicitor, on her own accord, made a determination that the asserted claims are anticipated and now argues anticipation of the claims in view of JP '156, for the first time in the Summary Judgment Motion.

In re Nygard, the Federal Circuit stressed, "This court is a court of review and reasons for rejection not made in the Patent Office are not properly before us." 341 F.2d at 929. For this reason Solicitor's arguments should be rejected.

### V.  PTO'S SUMMARY JUDGMENT SHOULD BE DENIED IN VIEW OF SUBSTANTIAL ISSUES OF FACT AND LAW RAISED BY THE PLAINTIFFS

The Plaintiffs will now address other PTO's assertions in order.

**1.     Plaintiffs Disagree with Defendant's Statements of Uncontested Facts**

a.     In paragraph 11, the Defendant asserts, as an uncontested fact, that Tesvich teaches a bacteria-free product in Col. 3, line 66 through Col. 3, line 4. It is not true. What Tesvich states there is that "the pathogenic bacteria may be reduced." This is a far cry from a bacteria-free product of the instant claims.

b.     In paragraph 11, the Defendant also contends that Tesvich discloses a shucked product that is produced by the Tesvich method. It is not true. Tesvich teaches that "to serve the mollusk, one removes the band and removes the shell per the known "raw bar" style." This means that the Tesvich process does not produce a shucked product. It is the ultimate consumer who has to remove the band and then shuck the oyster, usually using a special knife, prior to serving. The Tesvich oyster remains banded during transport to end user. Col. 1, lines 15 – 18.

c.     In paragraph 15, the Defendant suggests that "the Tesvich '064 patent discloses a method of destroying *Vibrio vulnificus* bacteria in molluscan shellfish. . . This method

7

uses "mild heat treatment" followed by rapid cool-down and cold storage." Tesvich actually teaches a method of reduction to a lower level of pathogenic bacteria. Col. 2, lines 30 – 36. Tesvich does not teach a rapid cool-down, instead suggesting a cool bath for 15 – 20 minutes. Col. 6, lines 1 – 7. Only then the shellfish product is stored at 32 – 40°F in preparation for transport. Col. 6, lines 8 – 14. This step is different from the instant claims that require refrigeration immediately following high-pressure processing.

d.    The Plaintiffs object to the legal conclusion stated in paragraph 25 since these are not facts, let alone uncontested facts.

e.    The facts relating to any alleged teaching of JP '156 are not "material' to any of the issues involved in this appeal.

**2.    Plaintiffs' Evidence Raises Substantial Issues of Fact Precluding Grant of Summary Judgment for Defendant**

It is well settled that to find express anticipation, the reference must expressly disclose every limitation of the claimed invention. Connell v. Sears, Roebuck & Co., 722 F.2d 1542, 1548, 220 U.S.P.Q. (BNA) 193, 198 (Fed. Cir. 1983) ("Anticipation requires the presence in a single prior art disclosure of **all** elements of a claimed invention arranged as in the claim.") (emphasis added).

The Defendant erred in concluding that the '064 patent  discloses all limitations of Claims 5 and 27 - 38. Claims 5 and 27 - 38 recite several structural characteristics of the claimed product that are not and cannot be achieved using the method of Tesvich '064. More specifically, the asserted claims recite that the terms "pressure-shucked' and post-pressurized" define claim limitations that are understood as structural features of the product by the persons skilled in the art  Such structural features are not present in the single cited reference, a pre-requisite to the finding of anticipation.

As Dr. Kilgen wrote, high-pressure processing of shellfish involves mechanical disruption of the non-covalent bonds that hold the tertiary structure of a protein together. In contrast, heat processing (such as Tesvich '064 method) involves "melting" of the non-covalent bonds holding the tertiary structure of the protein together. This "melting" process is different from the mechanical disruption that occurs when shellfish, such as oysters, is processed using high pressure. Professor Kilgen's statement provides evidence on the biological (structural) differences between a product processed by heat and a product processed by high pressure; it fully supports the Plaintiffs' position that heat treatment causes irreversible changes in the structure of the protein food product, such as the oyster and that a shellfish product that has been treated by heat to eliminate bacteria inevitably has different sensory characteristics than a product treated by high pressure.

At the very least, Dr. Kilgen's statement raises an issue of fact as to whether such terms as "post-pressurized" and "pressure-shucked" impart structural limitations within the context of product-by-process claims.

Similarly, the statements of Drs. Bell and Bankston raise an issue of fact that cannot be disposed of as a matter of law. In particular, Drs. Bell and Bankston stated that the oysters treated by heat according to Tesvich (Ameripure) method did not result in release of the adductor muscle and that manual shucking was required as a post-processing step. In contrast, the claimed invention produces a structurally different product, a pressure-shucked product, where the adductor muscle of an oyster is released without resort to manual shucking. Therefore, the product produced by the Tesvich method is not "pressure-shucked."

Still another issue of fact is raised by the declaration of Mr. Sunseri who confirmed that due to difficulty of controlling the Tesvich process, one can see curling and shrinking of the

edges of the meat in less dense-shell oysters; that protein degradation can produce partially cooked product. See, for instance, the "refinement" '601 patent of Tesvich et al. Col. 2, lines 32-39.

Mr. Sunseri's statements are further proof that persons of more than ordinary skill in the art can clearly see the distinctions between the mildly heat-treated product of Tesvich et al. and the post-pressurized product of the claimed invention, and such terms as "raw shellfish retaining sensory characteristics of raw product" are indeed structural limitations capable of being so recognized by persons of ordinary skill in the relevant art.

In view of the above, the Plaintiffs respectfully submit that the PTO failed to establish a prima facie case of anticipation of the asserted Claims 5 and 27 - 38. Even assuming that the PTO did in fact meet its burden, the applicant presented sufficient, credible and uncontroverted evidence sufficient to traverse the PTO's rejection of the claims. At the very least, the evidence submitted by the Plaintiffs raises substantial issues of fact that preclude granting of summary judgment for the Defendant.

## VI.    CONCLUSION

The BPAI erroneously found that the examiner established prima facie case of anticipation based on the references and evidence in the record. Even if the examiner has made the initial showing of anticipation, Plaintiffs successfully traversed the initial rejection of the claims and presented evidence that the teachings of the prior art do not amount to anticipation.

Moreover, the uncontroverted statements of persons of skill in the art prove that the Plaintiffs rebutted the PTO's case of *prima facie* anticipation. Alternatively, the evidence presented by the Plaintiffs precludes granting of summary judgment in favor of Defendant.

                        Respectfully submitted,

                        /s/Thomas S. Keaty
                        Thomas S. Keaty, *pro hac vice*
                        Attorney for Plaintiff
                        Keaty Professional Law Corporation
                        2140 World Trade Center
                        No. 2 Canal Street
                        New Orleans, LA 70130
                        (504) 524-2100
                        (504) 524-2105 (fax)

## CERTIFICATE OF SERVICE

      I herby certify that on November 30, 2007, I electronically filed the foregoing with the clerk of court by using CM/ECF system, with the US District Court for the District of Columbia, 333 Constitution Ave., NW, Washington DC 20001.

      And served on Defendant through their counsel of record by depositing same with the U.S. mail, first class postage prepaid, or by facsimile transmission or by hand delivery.

      Robin M. Meriweather, D.C. Bar #490114
      Jeffrey A. Taylor, D.C. Bar #498610
      Rudolph Contreras, D.C. Bar #434122
      Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 307-1249
(202) 514-8780 (facsimile)


      /s/ Thomas S. Keaty
      Thomas S. Keaty