**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INNOVATIT SEAFOOD     ) | |
| SYSTEMS, LLC., *et al.*,     ) | |
|      ) | |
| Plaintiffs,     ) | |
|      ) | |
| v.     ) | Civil Action No. 06-0822 (JR) |
|      ) | |
| DIRECTOR, UNITED STATES     ) | |
| PATENT AND TRADEMARK     ) | |
| OFFICE,     ) | |
|      ) | |
| Defendant.     ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY**
**JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant, the Director of

the  United States Patent and Trademark Office ("USPTO"), respectfully opposes the motion for

summary judgment filed by Plaintiffs Innovatit Seafood Systems, LLC ("Innovatit) and Avure

Technologies, Inc. ("Avure")  (collectively "Plaintiffs").  Plaintiffs brought the present action

under 35 U.S.C. § 145 challenging the decision of the Board of Patent Appeals and Interferences

("Board"), which affirmed the examiner's rejection of claims 3, 4, 6, 7, and 27 of Innovatit's

U.S. Patent Application Serial No. 09/121,725 ("the '725 application") as unpatentable under 35

U.S.C. §§ 102 and 103.  Plaintiffs move for summary judgment that claims 3, 4, 6, 7, and 27 are

patentable under 35 U.S.C. §§ 102 and 103 and that the Board's affirmance of the examiner's

rejection is both (i) arbitrary, capricious, an abuse of discretion, and not in accordance with law;

and (ii) unsupported by substantial evidence.

As set forth in the Memorandum in Opposition to Plaintiffs' Motion for Summary

Judgment and the Memorandum of Points and Authorities in Support of Defendant's Motion for

Summary Judgment, there are no genuine issues of material fact as to the unpatentability of

claims 3, 4, 6, 7, and 27 of the '725 application under 35 U.S.C. §§ 102 and 103.  The USPTO is

entitled to judgment as a matter of law because the Board's decision is not arbitrary, capricious,

an abuse of discretion, is in accordance with law, and is supported by substantial evidence.

Therefore, the USPTO respectfully requests that this Court grant its motion for summary

judgment and deny Plaintiffs's cross-motion for summary judgment.

                         Respectfully submitted,

                         _____/s/_____
                         JEFFREY A. TAYLOR, D.C. Bar # 498610
                         United States Attorney


                         _____/s/_____
                         RUDOLPH  CONTRERAS, D.C. Bar # 434122
                         Assistant United States Attorney


                         _____/s/ Robin M. Meriweather_____
                         ROBIN M. MERIWEATHER, D.C. Bar # 490114
                         Assistant United States Attorney
                         Civil Division
                         555 Fourth Street, N.W.
                         Washington, D.C.  20530
                         202/307-1249
                         202/514-8780 (facsimile)

Of Counsel:
STEPHEN WALSH
Acting Solicitor

BENJAMIN D. M. WOOD
JANET GONGOLA
Associate Solicitors
United States Patent and Trademark Office

November 30, 2007

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INNOVATIT SEAFOOD<br>SYSTEMS, LLC., *et al.*,<br><br>       Plaintiffs,<br><br>       v.<br><br>DIRECTOR, UNITED STATES<br>PATENT AND TRADEMARK<br>OFFICE,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 06-0822 (JR) |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' STATEMENT
OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

Pursuant to Local Civil Rule 7(h), Defendant submits this response to Plaintiffs'

statement of material facts which are not in genuine dispute.

1-10.    Defendant agrees with the facts set forth in paragraphs 1 to 10.

11.    Defendant agrees with the facts set forth in paragraph 11 with the exception that

JP '156 discloses applying pressure for 0.5 to 10 minutes and not for 0.5 to 5 minutes, as stated

by Plaintiffs.  R1147.

12.    Defendant disagrees with Plaintiffs' statement that "JP '156 does not teach

treatment of raw molluscan shellfish at ambient temperature."  First, Plaintiffs conceded that

the JP '156 process is carried out "at ambient temperature."  R1581.  Second, JP '156 does not

describe applying heat or cold before, during, or after the disclosed pressurization process.

R1145-1150.  Third, Inventor Voisin explains that the JP '156 process is conducted at ambient

temperature.  R1598-99.

13.     Defendant disagrees with the fact set forth in paragraph 13.  JP '156 discloses a specific embodiment, Embodiment 1, that uses a pressure and duration that fall squarely within the claimed pressure and duration ranges.  R1149.

14.     Defendant disagrees with Plaintiffs' statement that "JP '156 does not teach loading pressurizable liquid into the pressure container."  JP '156 teaches that raw shellfish and sea water are placed in a plastic container and that the plastic container is placed into a high pressure processing device.  R1148.  JP '156 also teaches in preferred Embodiment 1 placing shellfish into a plastic bag filled with sea water, sealing the bag, placing the sealed bag into a high pressure processing device, and applying pressure.  R1149.

15.     Defendant disagrees with Plaintiffs' statement that the USPTO cited Cheftel in combination with JP '156 to assert anticipation of Claim 6 and 27 and obviousness of claims 3, 4, and 7.  The USPTO did not cite Cheftel to support either the anticipation or the obviousness rejection.  Rather, the USPTO cited Cheftel only to show that it was well known in the art that high pressure treatment of seafood destroyed pathogenic microorganisms such as *Vibrio* bacteria. *See* R1638-1639.

16-17.   Defendant agrees with the facts set forth in paragraphs 16 and 17, though notes that Cheftel discusses the effect of pressurization on fish, in particular sardine mince, R1166, R1168, and destruction of *Vibrio* and viruses in seafoods, R1168.

18.     Defendant disagrees with Plaintiffs' statement that Dr. Kilgen "stated that the applicant's invention is a 'novel' method of eliminating *vibrio* contamination of shellfish."  Dr. Kilgen instead characterized the use of hydrostatic high pressure processing for the pasteurization of live shellstock oysters to eliminate or reduce to non-detectable levels, the

naturally-occurring marine organism *Vibrio vulnificus*, and other *vibrio* species, and for

mechanical shucking of shellstock oysters as " novel." R1237.  In any event, Dr. Kilgen's

characterization is irrelevant in determining whether Plaintiffs' claimed invention is novel under

35 U.S.C. § 102(b).

19.    Defendant disagrees with Plaintiffs' statement that Mr. Collette referred to Mr.

Voisin's invention as a "breakthrough needed to correct the problem," referring to the problem

of reducing *Vibrio vulnificus* bacteria.  Mr. Collette instead stated that Mr. Voisin's new process

"could be one of the breakthroughs needed to correct the problem" [of reducing *Vibrio vulnificus*

bacteria].  R1240.  In any event, Mr. Collette's statement is irrelevant in determining whether

Plaintiffs' claimed invention is novel under 35 U.S.C. § 102(b).

20.    Defendant agrees with the facts set forth in paragraphs 20, but notes that Mr.

Moody's opinion is irrelevant in determining whether Plaintiffs' claimed invention is novel

under 35 U.S.C. § 102(b).

21.    Defendant agrees with the fact set forth in paragraph 21.

22.    Defendant agrees with the fact set forth in paragraph 22, but avers that the

USPTO is not required pursuant to case law to produce any affidavit from a person skilled in the

art regarding inherent anticipation or obviousness.  *See e.g., In re Huang*, 100 F.3d 135, 139

(Fed. Cir. 1996) ("In the *ex parte* process of examining a patent application, the PTO lacks the

means or resources to gather evidence which supports or refutes the applicant's assertion that the

sales constitute commercial success.").

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH  CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/ Robin M. Meriweather_____
ROBIN M. MERIWEATHER, D.C. Bar # 490114
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 514-7189
(202) 514-8780 (facsimile)

Of Counsel:

STEPHEN WALSH
Acting Solicitor

BENJAMIN D. M. WOOD
JANET GONGOLA
Associate Solicitors
United States Patent and Trademark Office

November 30, 2007

4

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INNOVATIT SEAFOOD SYSTEMS, LLC., *et al*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0822 (JR) |
| | ) | |
| DIRECTOR, UNITED STATES PATENT AND TRADEMARK OFFICE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ansonia Brass & Copper Co. v. Elec. Supply Co.*, 144 U.S. 11, 18 (1892) . . . . . . 25, 26

*Atlas Powder Co. v. Ireco, Inc.,* 190 F.3d 1342 (Fed. Cir. 1999) . . . . . . . . . . . . . . . 8, 9

*Atofina v. Great Lakes Chemical Corp.,* 441 F.3d 991 (Fed. Cir. 2006) . . . . . . . . . . . 10

*In re Baxter Travenol Laboratories,* 952 F.2d 388 (Fed. Cir. 1991) . . . . . . . . . . . . . . 12

*Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc.,* 246 F.3d 1368
(Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Gen. Elec. Co. v. Jewel Incandescent Lamp Co.,* 326 U.S. 242, 248 (1945) . . . . . . . . . . . 26

*In re Cruciferous Sprout Litigation,* 301 F.3d 1343 (Fed. Cir. 2002) . . . . . . . . . 9, 14, 25

*In re Gartside,* 203 F.3d 1305 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 21

*Helene Curtis Industrial v. Sales Affiliates,* 121 F. Supp. 490 (S.D. N.Y.
1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*In re Icon Health &Fitness, Inc.,* 496 F.3d 1374 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . 21

*KSR International Co. v. Teleflex, Inc.,* 127 S. Ct. 1727 (2007) . . . . . . . . . . . . . . . . . 21

*In re May*, 574 F.2d 1082, 1090 (CCPA 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*MEHL/Biophile International Corp. v. Milgraum*, 192 F.3d 1362 (Fed. Cir.
1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

*Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368 (Fed. Cir. 2005) . . . . . . . . . 9, 10, 11

*PharmaStem Therapeutics, Inc. v. Vacuole, Inc.*, 491 F.3d 1342 (Fed. Cir.
2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Schering Corp. v. Geneva Pharma., Inc.*, 339 F.3d 1373 (Fed. Cir. 2003) . . . . . . . . . 20

*Titanium Metals Corp. v. Banner*, 778 F.2d 775 . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Transclean Corp. v. Bridgewood Serv., Inc.*, 290 F.3d 1364 (Fed. Cir. 2002) . . . . . . . . 6

*Upsher-Smith Laboratories, Inc. v. Pamlab, L.L.C.*, 412 F.3d 1319 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Verdegaal Bros., Inc. v. Union Oil Co.*, 814 F.2d 628, 633 (Fed.Cir.1987) . . . . . . . . . . . . 25

*W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 721 F.2d 1540 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Woodruff*, 919 F.2d 1575 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## FEDERAL STATUTES

35 U.S.C. § 100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

35 U.S.C. § 101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

35 U.S.C. § 102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

35 U.S.C. § 102(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

35 U.S.C. § 103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

35 U.S.C. § 103(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    **Plaintiffs' Claims Are Directed To Processes for Disinfecting Oysters From Harmful Bacteria Using Pressure** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    **The Prior Art of Record Teaches Each and Every Limitation Of Plaintiffs' Claims Either Expressly or Inherently or Renders Those Limitations Obvious** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        1.    **Japanese Patent Application 4356156A Teaches a Process of Pressurizing Shellfish That Inherently Destroys Bacteria** . . . . . . . . . . 3

        2.    **U.S. Patent No. 5,773,064 to Tesvich *et al.* Teaches Banding and Refrigerating Shellfish After Heat-Treating to Kill Bacteria** . . . . . . . 4

    C.    **The Board Affirmed The Examiner's Rejection of Claims 6 and 27 As Anticipated by JP '156 and His Rejection of Claims 3, 4, and 7 As Obvious Over JP '156 in View of Tesvich '064** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.    **SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT CLAIMS 6 AND 27 ARE ANTICIPATED BY JP '156** . . . . . . . . . . . . . . . . . 6

        A.    **JP '156 Expressly Discloses The Pressure and Time Limitations of Claims 6 and 27**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        B.    **JP '156 Expressly Discloses the Negative Limitation of "Without Application of Heat" Recited in Claims 6 and 27** . . . . . . . . . . . . . . . . 11

        C.    **JP '156 Expressly Discloses the "Sensory Characteristics" Limitation of Claims 6 and 27** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        D.    **JP '156 Inherently Discloses the Elimination of Pathogenic Bacteria Limitation of Claims 6 and 27** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**II.**  **PLAINTIFFS' REMAINING ARGUMENTS CHALLENGING THE ANTICIPATION REJECTION OF CLAIMS 6 AND 27 ARE UNAVAILING** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    **A.**  **It Is Immaterial to an Anticipation Rejection Whether Skilled Artisans Opine that an Invention Is Novel** . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    **B.**  **JP '156 Sufficiently Enables the Claimed Process such that It Qualifies as Anticipatory Prior Art** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**III.**  **SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT CLAIMS 3, 4, AND 7 ARE OBVIOUS IN VIEW OF JP '156 AND TESVICH '064** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**IV.**  **PLAINTIFFS' CITATION TO 35 U.S.C. §§ 100 AND 101 IS A RED HERRING** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## INTRODUCTION

The Defendant, Director, U.S. Patent and Trademark Office ("USPTO"), respectfully submits this memorandum in opposition to the motion of Innovatit Seafood Systems, LLC ("Innovatit") and Avure Technologies, Inc. ("Avure") (collectively "Plaintiffs") for summary judgment.[1]  Plaintiffs seek to patent processes for disinfecting raw shellfish, such as oysters, by exposing the oysters to high pressure, without the application of heat, for a specified period of time, leaving the oysters uncooked after pressurization.  Plaintiffs also seek to patent a process that employs, in addition to high pressure, other well-known techniques, such as refrigeration and banding the shells.  These processes are not new or nonobvious. Rather, they are expressly or inherently taught by the prior art or rendered obvious by it.  Thus, Plaintiffs are not entitled to a patent for their processes.

## FACTUAL BACKGROUND

The background concerning patent applications and the facts concerning the application at issue in this litigation are set forth in detail in Defendant's Motion for Summary Judgment.  *See* Dkt. Entry 25.  The following paragraphs provide only those facts necessary to provide a context for this opposition memorandum.

---

[1] In the original complaint, Innovatit alleged that it was the assignee of the entire right, title, and interest in the invention disclosed and claimed in the '704 application. Dkt. Entry 1 (Complaint, ¶ 3).  In its present motion and its motion to amend the complaint and join an indispensable party, *see* Dkt. Entry 28, Innovatit avers that it assigned its entire right, title, and interest in the '704 application to Avure. As the Court has granted Innovatit's motion to join Avure as an indispensable plaintiff, Defendant refers to Innovatit and Avure collectively herein as "Plaintiffs."

**A.    Plaintiffs' Claims Are Directed To Processes for Disinfecting Oysters From Harmful Bacteria Using Pressure**

Innovatit filed U.S. Patent Application No. 09/121,725 ("the '725 application"), entitled

"A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus

Therefor," on July 24, 1998.  Innovatit presented claims 3, 4, 6, 7, and 27 for examination.

Independent Claim 27 is representative and provides:

> A process of treating raw molluscan shellfish, comprising the steps of:
>
> depositing the raw molluscan shellfish into a pressure vessel and pressurizing the pressure vessel to between 20,000 p.s.i. and 80,000 p.s.i. for 1 - 15 minutes without application of heat at ambient temperature, without causing thermal and mechanical damage to the raw molluscan shellfish, while eliminating pathogenic naturally-occurring marine bacteria in said raw molluscan shellfish, and while retaining sensory characteristics of said raw molluscan shellfish.

R1595.  More simply put, claim 27 recites a process for pressurizing shellfish to between 20,000

and 80,000 p.s.i. for 1 to 15 minutes, at ambient temperature (*i.e.*, without the application of heat),

to eliminate pathogenic bacteria on the shellfish, while retaining sensory characteristics of raw

shellfish (*i.e.*, without cooking the shellfish).

Independent claim 3 is similar to claim 27, and adds the process step of retaining the

processed shellfish at a temperature below ambient temperature – *e.g.*, under refrigeration

conditions.  R1594. Claim 4 depends from claim 3 and is further limited to a pressurization

process sufficient to eliminate *Vibrio* bacteria, a specific kind of bacteria.  *Id.*

Independent claim 6 is similar to claim 27, but is specifically directed to the treatment of

oysters as the shellfish and to the elimination of *Vibrio* bacteria.  *Id.*  Claim 7 depends from Claim

6, and adds the process step of "banding" the oysters and enclosing them in

liquid-impermeable bags prior to pressurization.  *Id.*

2

**B.**    **The Prior Art of Record Teaches Each and Every Limitation Of Plaintiffs' Claims Either Expressly or Inherently or Renders Those Limitations Obvious**

**1.**    **Japanese Patent Application 4356156A Teaches a Process of Pressurizing Shellfish That Inherently Destroys Bacteria**

In 1992, more than three years before Innovatit filed the '725 Application, Japanese Patent Application 4356156A to Yasushi *et al.* ("JP '156") published. It teaches a method of processing shellfish, such as oysters, by exposing them to pressures of between about 1000 and 4000 "normal atmospheres" (approximately 14,200 to 56,880 p.s.i.) for about 0.5 minutes to 10 minutes without the any heat. R1146-47. The resulting shellfish, accordingly to JP '156, can be easily opened with fingers and "the meat is substantially at a raw condition." R1150. JP '156 also discloses the use of the following particular pressures and duration ranges: (i) when pressurizing shellfish to 2000 normal atmospheres (28,440 p.s.i.), the pressure is to be maintained for 3 to 10 minutes; (ii) when pressurizing to 3000 normal atmospheres (42,660 p.s.i.), the pressure is maintained for 0.5 to 5 minutes; and (iii) when pressurizing to 4000 normal atmospheres (56,880 p.s.i.), the pressure is maintained for 0.5 to 3 minutes. R1147.

JP '156 further discloses two embodiments of the claimed process. The first embodiment, referred to as simply "Embodiment 1," teaches that (i) oysters in the shell are placed in a plastic bag with sea water; (ii) the bag is sealed and placed in a high pressure processing device; and (iii) a pressure of 3000 normal atmospheres (approximately 42,660 p.s.i.) is applied to the oysters for three minutes. R1149. The oysters treated under the process of Embodiment 1 are, according to JP '156, rendered easy to open with fingers and still raw. R1150. The pressure and temperature of preferred Embodiment 1 falls squarely within Plaintiffs' claimed pressure and time ranges.

3

### 2. U.S. Patent No. 5,773,064 to Tesvich *et al.* Teaches Banding and Refrigerating Shellfish After Heat-Treating to Kill Bacteria

In June of 1998, approximately one month before Innovatit filed the '725 Application, U.S. Patent No. 5,773,064 to Tesvich *et al.* ("Tesvich '064") issued. It discloses a process of treating molluscan shellfish via mild heat treatment followed by cold storage (*i.e.*, refrigeration) to kill harmful bacteria like *Vibrio vulnificus*. R0056-E, col. 2, lines 31-36; R0056-G, col. 5, line 57 - col. 6, line 7. During the treatment, Tesvich '064 discloses that the mollusks have a band placed around the shells to keep them closed. R0056-G, col. 5, lines 14-18, 42-47; R0056-C & D (Figures 1 to 4 showing band).

### C. The Board Affirmed The Examiner's Rejection of Claims 6 and 27 As Anticipated by JP '156 and His Rejection of Claims 3, 4, and 7 As Obvious Over JP '156 in View of Tesvich '064

Innovatit appealed the examiner's final rejection of claims 6 and 27 as anticipated under 35 U.S.C. § 102(b) by JP '156 and his rejection of claims 3, 4, and 7 as obvious under 35 U.S.C. § 103 over JP '156 in view of Tesvich '064. Beginning with the anticipation rejection, the Board agreed with the examiner that JP '156 discloses identical process steps as those in claims 6 and 27. R1672. Indeed, the Board noted: "[A]ppellant admits that JP '156 teaches pressure ranges overlapping the claimed pressure range (Brief, page 5) with teachings that higher pressures could be employed, and examples to specific pressures within the scope of the claimed pressures." R1669 (citing JP '156, ¶ 6 & Embodiment 1). The Board also agreed with the examiner that the process of JP '156 necessarily kills pathogenic *Vibrio* bacteria, exactly like Plaintiffs' claimed process. R1668, R1672. To this end, the Board pointed to the Examiner's Answer, stating:

> The examiner recognizes that the reference is silent about any effect of the pressure application on the pathogenic bacteria content of the oysters.

4

(Answer, page 4). However, the examiner reasons that, since the claimed
method steps are the same as taught by JP '156, the claimed characteristic
of eliminating pathogenic *Vibriones* bacteria is an inherent property and
result of the reference method, absent any clear and convincing evidence
to the contrary (Answer, page 4). The examiner has also found that high
pressure treatment of seafood destroys pathogenic organisms such as
*Vibriones*, illustrating this finding with Cheftel's disclosure. (*id.*).

R1668.

The Board then considered Innovatit's rebuttal arguments and evidence that JP '156 was

not enabling and thereby could not qualify as anticipatory prior art, finding neither to be

persuasive. R1670. The Board observed that Innovatit's evidence (*i.e.*, Japanese Patent

2000-157157A ("JP '157") and a declaration from Inventor Voisin ("the Voisin Declaration"))

was irrelevant. The Board reasoned that Innovatit's evidence did not show that JP '156 failed to

put the claimed pressurization process in the hands of one of ordinary skill in the art, but instead

was misdirected at whether JP '156 resulted in the successful shucking of oysters, a non-claim

limitation. R1670. The Board further noted that the Voisin Declaration demonstrates that the

process disclosed in JP '156 *was* successful in shucking oysters since he indicated that 80

percent of oysters that he tested were shucked at the pressure and duration conditions

exemplified in Embodiment 1 of JP '156. *Id.*

Finally, the Board addressed declarations from Messrs. Chauvin, Michael Voisin,

Nelson, and Sunseri, upon which Innovatit relied to establish that JP '156 did not inherently

disclose the elimination of pathogenic bacteria. The Board found these declarations to be

unpersuasive, explaining that they "merely conclude that the method steps disclosed by JP '156

do not inherently eliminate bacteria in shellfish but fail to present any evidence to support this

conclusion." R1672. Hence, the Board affirmed the examiner's anticipation rejection of claims 6 and 27. R1673.

Turning to the obviousness rejection of claims 3, 4, and 7, which add refrigeration and banding limitations, the Board noted that JP '156 is silent regarding both, but that the examiner relied on Tesvich '064 for its disclosure of those features. R1673. The Board observed that Innovatit did not contest or dispute the examiner's findings, but instead merely repeated its indecency and enablement arguments. *Id.* Accordingly, the Board affirmed the examiner's obviousness rejection of claims 3, 4, and 7. R1674.

## ARGUMENT

### I. SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT CLAIMS 6 AND 27 ARE ANTICIPATED BY JP '156

"A person shall be entitled to a patent unless—the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). A determination that a claim is anticipated under 35 U.S.C. § 102 requires a finding that each and every limitation is found either expressly or inherently in a single prior art reference. *Transclean Corp. v. Bridgewood Serv., Inc.*, 290 F.3d 1364, 1370 (Fed. Cir. 2002). Anticipation is a question of fact; the Board's finding of anticipation must therefore be upheld if supported by substantial evidence. *Gartside*, 203 F.3d at 1316.

Claim 27 recites a process for pressurizing shellfish to between 20,000 and 80,000 p.s.i. for 1 to 15 minutes, at ambient temperature (*i.e.*, without the application of heat), to eliminate pathogenic bacteria on the shellfish, while retaining sensory characteristics of raw shellfish

(*i.e.*, without cooking the shellfish).  R1595.  Claim 6 is substantially the same as claim 27, but is further limited to the treatment of oysters and to the elimination of *Vibrio* bacteria.  R1594. Thus, claims 6 and 27 recite the following four key limitations: (1) the pressurization of shellfish at 20,000 to 80,000 p.s.i. for 1 to 15 minutes; (2) without application of heat; (3) retention of sensory characteristics of raw shellfish; and (4) elimination of pathogenic bacteria, including *Vibrio vulnificus*.  Substantial evidence supports the Board's finding that JP '156 discloses each of these limitations, either expressly or inherently.

> **A.    JP '156 Expressly Discloses The Pressure and Time Limitations of Claims 6 and 27.**

Plaintiffs argue that JP '156 fails to disclose the pressure and time limitations of claims 6 and 27.  Br. at 14.  Plaintiffs are wrong.  JP '156 teaches a method of shucking oysters and other shellfish by pressurizing them to between about 14,200 p.s.i. to 56,800 p.s.i. for 0.5 minutes to 10 minutes.  R1147.  Indeed, JP '156 teaches a series of pressure and corresponding time ranges to use when pressuring shellfish: (i) 2000 normal atmospheres (28,440 p.s.i.) for 3-10 minutes; (ii) 3000 normal atmospheres (42,660 p.s.i.) for 0.5 to 5 minutes; and (iii) 4000 normal atmospheres (56,880 p.s.i.) for 0.5 to 3 minutes.  R1147. The pressure/duration envelope defined by these specific values along with the pressure/duration envelope of Plaintiffs' claims (20,000 - 80,000 p.s.i. for 1 to 15 minutes) is depicted in Figure 1 shown below.  R1147.



**Figure 1.** The shaded rectangle depicts the pressure/duration envelope of Innovatit's claims. The area enclosed by the bold line depicts the pressure/duration envelope disclosed in JP '156.

As is evident from Figure 1, almost every pressure and time setting specifically disclosed in JP '156 falls within or substantially overlaps the pressure and time ranges of claims 6 and 27. What is more, the Board noted that Innovatit even admitted "that JP '156 teaches pressure ranges overlapping the claimed pressure range, with teachings that higher pressures could be employed, and examples to specific pressures within the scope of the claimed pressures." R1669 (citing Innovatit's Brief to Board at page 5). Thus, as the Board correctly found, *see* R1669, the general

8

disclosure in JP '156 is sufficient to anticipate the claimed pressure and time limitations found in

claims 6 and 27.  *See Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1345 (Fed. Cir. 1999)

(holding of anticipation where claim recited six different ranges for the contents of a claimed

composition and prior art disclosed overlapping ranges for each range limitation); *Helene Curtis*

*Indus. v. Sales Affiliates*, 121 F. Supp. 490, 500-1 (S.D. N.Y. 1954) (finding anticipation where

claims recited pH range of 7 to 10 or 7 to 9.5 and prior art disclosed overlapping pH range of 8 to

11); *see also Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1377 (Fed. Cir. 2005) (holding

of anticipation where claim required 0.025% to 5% by weight and the prior art disclosed broader

range of 0.01% to 20% by weight).

In addition to disclosing pressure and time ranges that substantially overlap the claimed

ranges, JP '156 goes on to disclose preferred Embodiment 1 that teaches pressure treating oysters

in a bag of sea water at 3000 normal atmospheres, or approximately 42,660 p.s.i., for three

minutes.  R1149.  Those parameters fall squarely within Plaintiffs' claimed pressure and time

ranges, as depicted in Figure 1 shown above.[2]  Accordingly, as the Board correctly found,

preferred Embodiment 1 of JP '156 anticipates the claimed pressure and time limitations found in

claims 6 and 27.  *See* R1672 ("[w]e agree with the examiner that Embodiment 1 of JP '156

anticipates claims 6 and 27. . . ."); *see also Titanium Metals Corp. v. Banner*, 778 F.2d 775,

781-2 (Fed. Cir. 1985) ("It is also an elementary principle of patent law that when, as by a

recitation of ranges or otherwise, a claim covers several compositions, the claim is 'anticipated' if

one of them is in the prior art."); *Atlas Powder*, 190 F.2d at 1346 ("[W]hen a patent claims a

---

[2]       In arguing that JP '156 does not encompass its claimed process, Plaintiffs make
no mention of Embodiment 1, thus apparently attempting to ignore its teachings entirely.  *See* Br.
at 14-16.

chemical composition in terms of ranges of elements, any single prior art reference that falls

within each of the ranges anticipates the claim."); *In re Cruciferous Sprout Litig.*, 301 F.3d 1343,

1350-51 (Fed. Cir. 2002) (applying *Titanium Metals* to process claims).

Plaintiffs' reliance on *Atofina v. Great Lakes Chemical Corp.*, 441 F.3d 991 (Fed. Cir.

2006), to support their argument that a partial overlapping prior art range is insufficient for a

finding of anticipation is misplaced.  *See* Br. at 14.  In *Atofina*, the claim was directed to a process

for making difluoromethane using an oxygen to methylene chloride molar ratio of 0.1 to 5.0

percent at a temperature range of 330 to 450 degrees Celsius.  *Id.* at 993.  The Federal Circuit

found that the prior art disclosed an oxygen to methylene molar ratio and temperature range that

only "slight[ly] overlap[ped]" the claimed ratio and temperature range, as well as another

temperature range that was "considerabl[y] differen[t]" than the claimed temperature range.  *Id.* at

999-1000.  Accordingly, the court held that "no reasonable fact finder could conclude that the

prior art describes the claimed range with sufficient specificity to anticipate this limitation of the

claim."  *Id.* at 999.

The *Atofina* decision is simply inapplicable to the present case.  First and foremost, unlike

the prior art in *Atofina*, JP '156 discloses a specific embodiment, a "species," using specific

pressure and duration values.  R1149.  These values fall squarely within the claimed pressure and

duration ranges.  *See* Fig. 1.  It is well settled that disclosure in the prior art of any specific value

within a claimed range expressly anticipates the claimed range.  *See Titanium Metals*, 778 F.2d at

781-82; *Atofina*, 441 F.3d at 999 ("*Titanium Metals* stands for the proposition that an earlier

species reference anticipates a later genus claim, not that an earlier genus anticipates a narrower

species.").  Second, unlike the prior art in *Atofina*, JP '156 discloses pressure and duration ranges

10

that overlap substantially with the claimed ranges.  *See supra* Fig. 1.  This disclosure is thus

sufficiently specific to anticipate the claimed pressure and duration ranges.  *See Perricone*, 432

F.3d at 1377 (holding that prior art ranges anticipates claimed range even though prior art range

did not exactly correspond to claimed range).

Plaintiffs contend that the USPTO's reliance on *MEHL/Biophile International Corp. v.*

*Milgraum*, 192 F.3d 1362 (Fed. Cir. 1999), is misplaced.  Br. at 15.  Plaintiffs make this assertion

in connection with their argument that the claimed pressure range is not expressly taught in the

prior art, "even though there exists some overlap in the pressure ranges used for the treatment of

shellfish."  *Id.*  In doing so, Plaintiffs reveal their misunderstanding both of the *MEHL/Biophile*

case and of the USPTO's reliance on it.  The USPTO did not rely on *MEHL/Biophile* in

explaining how substantial evidence supports the Board's finding that claimed pressure range is

expressly taught in JP '156.  Instead, the USPTO cites that case to support the Board's correct

finding that JP '156 inherently anticipates the elimination of pathogenic bacteria limitation of

claims 6 and 27, since the Federal Circuit squarely addressed what is necessary for inherent

anticipation in *MEHL/Biophile*.  *See* 192 F.3d at 1365, 1366.

**B.    JP '156 Expressly Discloses the Negative Limitation of "Without Application of Heat" Recited in Claims 6 and 27**

Plaintiffs contend that JP '156 does not anticipate the limitation recited in claims 6 and 27

that the process be carried out at ambient temperature, *i.e.*, without the application of heat.  That

limitation is properly characterized as a "negative limitation," since it excludes a step (the

application of heat) rather than includes a step.  *See Upsher-Smith Labs., Inc. v. Pamlab, L.L.C.*,

412 F.3d 1319 (Fed. Cir. 2005) (characterizing limitation that excludes antioxidants from the

claimed vitamin formulation as a negative limitation).  Plaintiffs, however, appear to have

11

conceded before the Board that the JP '156 process is carried out at room temperature: "[JP '156]

teaches a process of opening shells of raw oysters by subjecting the raw oysters to hydrostatic

pressure of 1,000 ATM - 4,000 ATM (14,223 - 56,892 p.s.i.) for 0.5 - 10 minutes *at ambient*

*temperature*." R1581 (emphasis added).

    In any event, Plaintiffs are incorrect that JP '156 fails to teach the no-application-of-heat

limitation.  First, the Federal Circuit has held that a prior art reference need *not* contain an express

teaching to exclude that which is prohibited by a negative limitation in order for the reference to

anticipate that limitation.  *Upsher-Smith*, 412 F.3d at 1322 (holding that prior art reference that

optionally *includes* antioxidants in vitamin formulation anticipated claimed formulation that

excluded antioxidants).  Second, a person of ordinary skill in the art would understand from JP

'156 that the method disclosed therein is to be carried out at ambient temperature, *i.e.*, without the

application of heat.  *See In re Baxter Travenol Labs*, 952 F.2d 388, 390 (Fed. Cir. 1991) (holding

that prior art reference anticipated limitation that primary bag be plasticized with DEHP, even

though reference did not expressly disclose plasticization with DEHP, because "one skilled in the

art would reasonably understand or infer from the reference that it disclosed a primary bag

plasticized with DEHP").  Nowhere in its detailed description of the pressurization process does

JP '156 call for the application of heat:

> [A]fter raw shellfish with a shell and sea water have been
> accommodated into a plastic container and after said plastic
> container with saw raw shellfish and said sea water has been sealed,
> said sealed plastic container is placed into a high pressure
> processing device (for example, an MCT-150 model produced by
> Mitsubishi Heavy Industries Corporation) so as to apply a
> predetermined high pressure.

R1148.  This is strong evidence that the JP '156 process is to be carried out at ambient

temperature, as Plaintiff has already conceded.  Indeed, like Plaintiffs, Inventor Voisin himself

understands that the JP '156 process is to be carried out at ambient temperature.  In his

Declaration, he explained that understanding in the context of discussing a series of tests he

performed using the JP '156 method:

> I, Ernest A. Voisin, . . . declare and say: . . . That I conducted an
> exhaustive series of tests at the facilities of Motivatit Seafoods, Inc.
> in Houma, Louisiana following the steps outlined in Japanese
> application No. 4-356156 [JP '156]; . . . That the tests started with
> oysters (the subject of the Japanese reference [JP '156]) being taken
> from a cooler where they were kept at 38 degrees Fahrenheit and
> then allow to rest to come to the ambient temperature of about 50
> degrees Fahrenheit; That *in accordance with the teachings of the
> cited reference*, oysters in shells were placed in a pressure chamber
> with water; That the pressure chamber was then pressurized to 1000
> ATM *at ambient temperature of about 50 degrees Fahrenheit* . . .

R1148 (emphases added); *see also* R1581.  Thus, Plaintiffs and Inventor Voisin all take the

process of JP '156 to be carried out at ambient temperature, just like the claimed process.

Accordingly, the Board's interpretation of JP '156 as containing the negative no-application-of-

heat limitation is supported by substantial evidence.

### C.    JP '156 Expressly Discloses the "Sensory Characteristics" Limitation of Claims 6 and 27

JP '156 expressly teaches that shellfish treated according to the disclosed process will

retain their "sensory characteristics" (*i.e.*, will remain raw).  In a section entitled "Advantageous

Result of the Invention," JP '156 teaches that "processed shellfish wherein the shell of said

shellfish is extremely easily opened and where in the *meat is substantially at a raw* condition is

offered."  R1150 (emphasis added).  Before this court, Plaintiffs do not even challenge that

JP '156 fails to disclose the "sensory characteristic" limitation.  Accordingly, there is no dispute that JP '156 anticipates that limitation of claims 6 and 27.

> **D.    JP '156 Inherently Discloses the Elimination of Pathogenic Bacteria Limitation of Claims 6 and 27**

Plaintiffs make several arguments about the elimination of pathogenic bacteria limitation of claims 6 and 27.  First, Plaintiffs admit that "[a] reference can anticipate a claim even if it does not explicitly disclose an element if that element is inherent in the disclosure."  Br. at 8 (citing *PharmaStem Therapeutics, Inc. v. Vacuole, Inc.*, 491 F.3d 1342, 1359 (Fed. Cir. 2007)).  Plaintiffs argue, however, that JP '156 does not inherently disclose elimination of pathogenic bacteria.  Br. at 21, 22, & 23.  Plaintiffs are mistaken.  JP '156, and specifically Embodiment 1 thereof, disclose the same process with the same steps and same pressure and time parameters as claimed in claims 6 and 27.  And, claims 6 and 27 recite that such process results in the elimination of pathogenic bacteria, including *Vibrio vulnificus*.  If the process of JP '156 mirrors the claimed process, then it logically follows that the two processes will achieve the same result–elimination of pathogenic bacteria.  *See Cruciferous Sprout Litig.*, 301 F.3d at 1349 ("Under the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claimed limitations, it anticipates.") (quoting *MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d at 1365).

Moreover, as alluded to earlier, the examiner and Board followed the exact rationale applied by the Federal Circuit in *MEHL/Biophile* in considering whether the elimination of pathogenic bacteria limitation is inherent to JP '156.  In *MEHL/Biophile*, the claim was directed to a process of hair removal comprising: aligning a laser light applicator substantially vertically over a hair follicle opening, and applying a pulse of laser energy of a wavelength to damage the

papilla of the follicle to prevent hair regrowth. *MEHL/Biophile*, 192 F.3d at 1364. The Federal

Circuit concluded that the prior art reference discussed exposing a laser to guinea pig skin in

such a way that the laser would align perpendicular to the skin surface and therefore

"substantially vertically" over the guinea pig skin's follicle openings, exactly as claimed. *Id.* at

1366. Importantly, the Court held that "to the extent the embodiment in the patent achieves hair

depilation, so does the [prior art] method" such that the prior art inherently anticipates the

claimed aligning step. *Id.* The Federal Circuit thus reasoned that the prior art reference

inherently taught hair removal because it disclosed operating parameters that substantially

coincided with the claimed process, and because the claimed process step resulted in hair

removal.

Here, the Board employed a similar "one-two punch" reasoning. In the words of the

Board explaining the examiner's rationale: "[S]ince the claimed method steps are the same as

taught by JP '156, the claimed characteristic of eliminating pathogenic *Vibriones* bacteria is an

inherent property and result of the reference method, absent any clear and convincing evidence

to the contrary. . . ." R1668. Notably, Innovatit failed to produce any evidence that the process

as described in JP '156 would not eliminate pathogenic bacteria. Accordingly, the Board

correctly found that JP '156 inherently teaches that the disclosed pressurization process will

result in elimination of pathogenic bacteria.

Next, Plaintiffs contend that the examiner erroneously relied upon a second reference,

Cheftel, "to fill the gaps in the Japanese reference that is silent on the crucial step of the

process–elimination of pathogenic bacteria." Br. at 17. In doing so, Plaintiffs complain that the

Board's anticipation rejection was nothing more than an obviousness argument "in disguise."

Br. at 16.  Neither the examiner nor the Board, however, relied upon more than one reference in finding that the elimination of pathogenic bacteria limitation is inherently anticipated by the prior art; both relied exclusively on JP '156.  As explained above, the examiner and the Board found that the elimination of pathogenic bacteria limitation was inherent to JP '156 since (i) the process disclosed in JP '156 and the claimed process are identical; and (ii) the claimed process results in elimination of pathogenic bacteria.  R1636, R1672.

Furthermore, Plaintiffs misapprehend the examiner's citation of Cheftel.  The examiner cited to Cheftel simply as evidence that it was well known in the art that high pressure treatment of seafood destroyed pathogenic microorganisms such as *Vibrio* bacteria.  R1636.  Indeed, the examiner explained as much in his Answer in response to Plaintiffs' identical argument made during prosecution:

> [T]he Cheftel reference was merely used as an evidentiary reference to show that high pressure preservation of seafood, via destruction of bacteria such as *Vibrio*, was commonly known.  It does not add to the teachings of JP ['156], such as in a 103 rejection, but rather merely provides evidence of the teaching of the JP ['156] patent.

R1638-39.

The Board cited to Cheftel in the same way as the examiner, *i.e.*, for evidence as to what was known in the art regarding the effect of pressure on seafood.  To that end, the Board stated: "Claims 6 and 27 stand rejected under section 102(b) as anticipated by JP '156, as evidenced by Cheftel."  R1667.  Significantly, in this sentence, the Board did not say that claims 6 and 27 stand rejected as anticipated by JP '156 *and* Cheftel or by JP '156 *in view of* Cheftel or by JP '156 *combined with* Cheftel, all of which is language typically used when describing an obviousness rejection.  Rather, the Board carefully used the language "as evidenced by Cheftel."

16

Hence, Plaintiffs are not and cannot be correct in arguing that "the PTO has cited Cheftel's reference as allegedly showing that elements in the claims of the application-in-suit are present in the prior art."  Br. at 16.

Finally, Plaintiffs argue that four skilled artisans have attested that JP '156 does not teach the elimination of pathogenic bacteria limitation.  Br. at 19 (citing the declarations of Messrs. Chauvin, Michael Voisin, Nelson, and Sunseri).  Plaintiffs' reliance on these declarations is misplaced.  First, it is noteworthy that all four declarations are identical, except for the personal background information of each declarant.  *See* R1413 (Chauvin), R1416 (Micheal Voisin), R1419 (Sunseri), & R1421 (Nelson).  This suggests that the declarations were written by Plaintiffs' counsel rather than by the declarants themselves.  Second, as the examiner and Board found, the four declarations contain nothing more than conclusory statements, founded on beliefs as opposed to actual experimental data, that the method disclosed by JP '156 will not inherently eliminate bacteria in shellfish.  R1672.  For example, the most that each declarant could muster to say is: "[I]t would not have occurred to me to read the Japanese application or Cheftel's page, singularly or in combination, as a guiding manual or even a suggestion for elimination of *Vibrio Vulnificus* in molluscan shellfish.  I submit that it is not inherent in the Japanese reference and is not recognized inherent by me, based upon my experience and knowledge of seafood processing, that the method steps of the Japanese application would result in elimination of bacteria in molluscan shellfish."  R1413 (Chauvin), R1416 (Micheal Voisin), R1419 (Sunseri), & R1421 (Nelson).  Thus, the Board correctly found that the four cookie-cutter declarations were not sufficient to show that  JP '156 fails to teach the elimination of bacteria limitation of claims 6 and 27.

17

II.    **PLAINTIFFS' REMAINING ARGUMENTS CHALLENGING THE ANTICIPATION REJECTION OF CLAIMS 6 AND 27 ARE UNAVAILING**

A.    **It Is Immaterial to an Anticipation Rejection Whether Skilled Artisans Opine that an Invention Is Novel**

Plaintiffs argue that persons skilled in the art of seafood processing consider the claimed invention to be novel.  Br. at 17-20.  Plaintiffs point to (i)  the categorization of JP '156 by the search authority at the European Patent Office as a class "A" prior art reference and (ii) comments in letters from Dr. Kilgen, Mr. Collette, and Dr. Moody.   Plaintiffs' reliance on this evidence is entirely misplaced.  First, 35 U.S.C. § 102(b), which is in play here, does not take into account the opinions of skilled artisans that an invention is patentable, but only considers whether "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."  35 U.S.C. § 102(b).  Accordingly, public opinion of "novelty" is immaterial when making an anticipation decision.[3]

Second, Plaintiffs misrepresent what the categorization of a reference by a search authority means.  Plaintiffs would like this Court to believe that a "category A" reference" is "a strong indication and confirmation that the cited reference cannot be recognized as defeating novelty of the claims" because the International Search Report defines such a reference to mean that the document "defin[es] the general state of the art [which is not considered to be] of

---

[3]    In considering an applicant's rebuttal evidence of secondary considerations (*e.g.*, long felt need) for an obviousness rejection, the USPTO may look to public opinion. However, Plaintiffs are not relying on public opinion evidence to rebut an obviousness rejection. Plaintiffs improperly relu on it to rebut the examiner's and Board's *prima facie* anticipation rejection.

18

particular relevance."[4]  Br. at 17-18.  However, the categorization of a reference into class A carries no such indication or confirmation for a U.S. examiner, and it certainly does not bind the U.S. examiner into disregarding the effect of a reference on an invention.  Thus, Plaintiffs clearly attempt to transform the categorization of JP '156 as a general reference by the search authority of the European Patent Office into something that it is not.

Third, Plaintiffs take the comments made by Dr. Kilgen, Mr. Collette, and Dr. Moody about Plaintiffs' process invention out of context.  When these skilled artisans made their comments about the process invention, they were not doing so with a view toward the patentability of the process.  Instead, they were merely commenting in an academic sense on the value of the process to the scientific community.  Dr. Kilgen, after discussing her high pressure oyster pasteurization research studies done in collaboration with Inventor Voisin, R1234-1237, evaluated the use of high pressure as a technique to accomplish pasteurization: "Overall, the novel use of hydrostatic high pressure processing for the pasteurization of live shellstock oysters to eliminate or reduce to non-detectable levels, the naturally-occurring marine organism *Vibrio vulnificus*, and other *vibrio* species, and for mechnical shucking of shellstock oysters, will result in significant benefit to the global economy of the oyster and other molluscan shellfish industries."  R1237.  Similarly, Mr. Collette opined that Inventor Voisin's high pressure

---

[4]    The International Search Report prepared by the search authority at the European Patent Office is not of record in this case, and Plaintiffs failed to attach it as an exhibit to their Brief.  It therefore is impossible to verify that the search authority actually categorized JP '156 as a class "A" reference.  Assuming that the search authority did, the scope of the claims that the search authority searched is not known; the search authority may have searched claims of different scope than are before this Court.  Further, it is not clear whether the search authority searched the complete text of JP '156, which is written in Japanese, or merely the English abstract of that reference.

19

processing "is truly impressive when you consider the amount of time and money spent by universities and scientist[s] worldwide to solve this concern." R1240. Mr. Moody simply commented that he "was not aware of anyone suggesting that [high pressure treatment for the elimination of *Vibrio vulnificus*] be used . . . prior to Mr. Voisin." R1241. Accordingly, Plaintiffs' argument regarding what skilled seafood processing artisans think of the claimed process plays no role in an anticipation analysis.

### B.    JP '156 Sufficiently Enables the Claimed Process such that It Qualifies as Anticipatory Prior Art

Plaintiffs complain that "not all pressures listed in JP '156 . . . necessarily result in bacteria elimination, with sensory characteristics being unaffected." Br. at 24. In support of their complaint, Plaintiffs rely on the testing performed by Inventor Voisin in which he found "without the addition of the temperature factor JP '156 worked only some of the time." *Id.* Based upon that testing, Plaintiffs argue that JP '156 cannot be practiced without undue experimentation and thereby does not enable the process of claims 6 and 27. *Id.*

Plaintiffs mischaracterize the nature of Inventor Voisin's testing. He tested whether the JP '156 process successfully shucked oysters; he did not test to see whether the JP '156 process successfully eliminated *Vibrio* bacteria. *See* R1596-97. Further, "[a]n anticipatory reference need only enable subject matter that falls within the scope of the claims at issue, nothing more." *Schering Corp. v. Geneva Pharma., Inc.*, 339 F.3d 1373, 1381 (Fed. Cir. 2003). JP '156 certainly enables the subject matter of claims 6 and 27 since neither claim recites the successful shucking of oysters as a limitation. As the Board found, JP '156 need only teach the pressurization process itself in order for it to be a sufficiently enabled prior art reference since that process inherently results in elimination of *Vibrio* bacteria. R1670. Moreover, Plaintiffs did not argue before the

20

Board, and do not argue before this Court, that JP '156 does not adequately teach how to perform the relatively simple pressurization process.  Nor could Plaintiffs advance such an argument, given that Inventor Voisin carried out the process taught in JP '156 in his testing.  R1433 (performing tests "following the steps outlined in [JP '156]").  Therefore, the Board correctly found that JP '156 adequately describes the claimed pressurization process, does not require undue experimentation to practice, and is enabled.

## III.    SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT CLAIMS 3, 4, AND 7 ARE OBVIOUS IN VIEW OF  JP '156 AND TESVICH '064

A new invention may not be patented if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill the art to which said subject matter pertains."  35 U.S.C. § 103(a).  The issue of obviousness is a legal question based on underlying factual findings.  *See Gartside*, 203 F.3d at 1316.  "Underlying facts include the scope and content of the prior art, the level of ordinary skill in the art at the time of the invention, objective evidence of nonobviousness, and differences between the prior art and the claimed subject matter."  *In re Icon Health & Fitness, Inc.*, 496 F.3d 1374, 1378 (Fed. Cir. 2007).

"The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR Int'l Co. v. Teleflex, Inc.*, 127 S.Ct. 1727, 1739 (2007).  However, "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *Id.* at 1741.  Accordingly, "it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." *Id.*

21

Claims 3 and 4 are virtually identical to claims 27 and 6, respectively, adding only a process step of refrigerating the shellfish after treatment. R1594. Claim 7 depends from, and is substantially the same as claim 6, further adding process steps of banding and bagging the shellfish prior to pressurization. *Id.* Substantial evidence supports the Board's finding that JP '156 in combination with Tesvich '064 would have rendered all of these limitations obvious to a person of skill in the art at the time of Plaintiffs' invention.

Plaintiffs contend that the Board failed to perform the required obviousness analysis, *i.e.*, (i) evaluate the scope and content of the prior art; (ii) the differences or similarities between the prior art and the claims at issue; (iii) the level of ordinary skill in the art; and (iv) certain objective indicia of nonobviousness. Br. at 24-27. Plaintiffs' argument lacks merit. Because Plaintiffs did not challenge the examiner's obviousness findings, but instead only reiterated their inherency and enablement arguments, *see* R1581-93, the Board did not expound on the examiner's findings. It simply adopted them in whole and affirmed. *See* R1672. The examiner, however, engaged in a complete obviousness analysis, making the requisite findings of fact.[5]

The examiner observed that JP '156 expressly or inherently discloses all of the process steps of claims 3, 4, and 7, except for the refrigeration and banding steps. R1636. The examiner thus focused on whether the refrigeration and banding limitations of claims 3, 4, and 7 would have been obvious based upon the combination of JP '156 and Tesvich '064. The examiner

---

[5] JP '156 expressly teaches bagging the oysters prior to pressurization. Preferred Embodiment 1 of JP '156 discloses that "said oysters are accommodated into a plastic bag; after said plastic bag with oysters and sea water accommodated has been sealed, said sealed plastic bag is placed into a high pressure processing device." R1149. With this express teaching, there can be no doubt that JP '156 anticipates the bagging limitation of claim 7.

correctly found that Tesvich '064 teaches these steps and that a skilled artisan would have been motivated to modify the process of JP '156 to provide for them.

Beginning with the refrigeration limitation, Tesvich '064 expressly teaches the refrigeration of raw oysters following treatment and prior to consumption: "The sixth step in the process is the storage step 24. During this step the individual mollusks (*e.g.*, oysters) may be placed into master cases in specified numbers as required and are then *placed under refrigeration*." R0056-G, col. 6, lines 8-11 (emphasis added). As Tesvich '064 implies, it would have been a matter of common sense to place treated oysters, which remained uncooked, under refrigeration to preserve them prior to consumption. *See id.* at lines 11-13 ("The refrigeration is preferably between 32-40 degrees fahrenheit until shipped to the consumer in refrigerated transport."); *see also id.* at lines 27-31 ("This [referring to mild heat treatment followed by cold storage] allows reduction of harmful bacteria while bringing the product to the consumer in shell, in a raw, uncooked state, which permits the mollusk to be prepared on the halfshell, or by other known preparation methods."). Thus, a person of ordinary skill in the art would have been motivated to combine the refrigeration step of Tesvich '064 with the pressurization process of JP '156, rendering claims 3 and 4 obvious.

Turning to the banding limitation, Tesvich '064 expressly teaches banding raw oysters before treatment to prevent them from opening during pressurization: "The third step is the banding step 18. In order to keep the mollusk in a closed state during the upcoming heat treatment, the mollusk is banded about its perimeter using synthetic rubber, plastic or metal bands during the banding step 18." *Id.* at col. 5, lines 14-19. Tesvich '064 likewise discloses banding oysters in all of the figures of the patent. Figure 1 shows a flow diagram of the steps in the

23

treatment process; the fourth box represents the banding step. R0056-C. Figure 2, repeated

below, shows an oysters "with a band 52 secured about the two halves of its shell." R0056-G at

col. 6, lines 36-38; R0056-D.



FIG 2

Figures 3 and 4 show an elastic band used

to secure the halves shells of an oyster during treatment. R0056-D. In addition, Tesvich teaches

that banding is desirable for three reasons: (i) to preserve the oyster's "liquor" (R0056-E at col.

2, lines 1-5); (ii) to permit the mollusk to be served on the half-shell in a raw state (a "favorite

consumer food") (R0056-G at col. 6, lines 28-32); and (iii) to prevent contamination and product

degradation during processing (R0056-F at col. 3, line 67 - col. 4, line 4). Thus, based upon

these teachings, a person of ordinary skill in the art would have been motivated to combine the

pressurization method of JP '156 with the banding step of Tesvich '064 to keep the oyster shells

closed during pressurization, as claimed in claim 7. Accordingly, the examiner and Board

correctly found that JP '156 in combination with Tesvich '064 renders claims 3, 4, and 7

obvious.

24

**IV.    PLAINTIFFS' CITATION TO 35 U.S.C. §§ 100 AND 101 IS A RED HERRING**

Plaintiffs assert that 35 U.S.C. §§ 100 and 101 mandate that the USPTO grant a patent on a new use of a known process. Br. at 13-14. While Plaintiffs are correct that Sections 100 and 101 permit an applicant to secure patent protection for a new use of a known process, Plaintiffs' claimed processes are not new uses of an old process. Rather, they are directed to the same process as disclosed in JP '156 more than three years earlier. That Plaintiffs recognized that the method taught in JP '156 resulted in elimination of pathogenic bacteria and that Plaintiffs claimed that result as a limitation does not make claims 3, 4, 6, 7, and 27 patentable. *Cruciferous Sprout Litig.*, 301 F.3d at 1352 ("While [the patent applicant] may have recognized something about sprouts that was not known before, [the patent applicant's] claims do not describe a new method."); *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.,* 246 F.3d 1368, 1376 (Fed. Cir. 2001) ("Newly discovered results of known processes directed to the same purpose are not patentable because such results are inherent.") (citing *In re May*, 574 F.2d 1082, 1090 (CCPA 1978) & *Verdegaal Bros., Inc. v. Union Oil Co.*, 814 F.2d 628, 633 (Fed.Cir.1987)); *In re Woodruff*, 919 F.2d 1575, 1578 (Fed. Cir. 1990) ("It is a general rule that merely discovering and claiming a new benefit of an old process cannot render the process again patentable."); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1548 (Fed. Cir. 1983) ( observing that " it is therefore irrelevant that those using the invention may not have appreciated the results . . . . Were that alone enough to prevent anticipation, it would be possible to obtain a patent for an old and unchanged process.") (applying *Gen. Elec. Co. v. Jewel Incandescent Lamp Co.*, 326 U.S. 242, 248 (1945) & *Ansonia Brass & Copper Co. v. Elec. Supply Co.*, 144 U.S. 11, 18 (1892)). Hence, the examiner and Board properly rejected claims 3, 4, 6, 7, and 27 under 35 U.S.C. §§ 102(b) and 103.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests this Court enter an order granting its motion for summary judgment and denying Plaintiffs' cross-motion for summary judgment.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH  CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/ Robin M. Meriweather_____
ROBIN M. MERIWEATHER, D.C. Bar # 490114
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 514-7198; Facsimile: (202) 514-8780

Of Counsel:
STEPHEN WALSH
Acting Solicitor

BENJAMIN D. M. WOOD
JANET GONGOLA
Associate Solicitors
United States Patent and Trademark Office

November 30, 2007

27