IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INNOVATIT SEAFOOD SYSTEMS, LLC and AVURE TECHNOLOGIES, INC., )<br><br>Plaintiffs )<br><br>v. )<br><br>COMMISSIONER FOR PATENTS, )<br><br>Defendant ) | Civil Action No. 06-0822(JR) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Plaintiffs Innovatit Seafood Systems, L.L.C. and Avure Technologies, Inc., joined as a party under Rule 19 FRCP ("Plaintiffs") pursuant to the Court Order of November 27, 2007, oppose Commissioner for Patents ("Defendant") motion for summary judgment of anticipation and obviousness of the claims of the application-in-suit Serial No. 09/121,725 ("application-in-suit").

## I.   INTRODUCTION

There is no evidence, let alone clear and convincing evidence, that the Defendant is entitled to a judgment as a matter of law on the issue of anticipation and obviousness of the asserted claims of the application-in-suit in view the cited references. The PTO's motion for summary judgment that the claims of the application-in-suit are not allowable over the prior art of record fails to establish the undisputed evidence required by law, and must be denied.

## II.   SUMMARY OF ARGUMENT

In its Motion, the Patent Office ("PTO" or "Commissioner") asks this Court to summarily declare as anticipated and obvious all asserted claims of application Serial No. 09/121,725. This

1

Court should deny PTO's Motion because PTO has failed to demonstrate the lack of any genuine issue of material fact, and because PTO has not satisfied its heavy burden to demonstrate entitlement to judgment as a matter of law by clear and convincing evidence.

The Court should first reject PTO's assertion that Claims 6 and 27 of the application-in-suit are anticipated under 35 U.S.C. §102(b), either expressly or inherently, by Japanese application publication No. JP 4356156A ("JP '156"), and that the asserted Claims 3, 4 and 7 of the application-in-suit are obvious in view of the cited references of JP '156 and Tesvich.

The threshold question is whether the cited reference disclosed all steps of a process of elimination of bacteria in molluscan shellfish at the time of filing the instant patent application. PTO states that such process is inherent in the teaching of JP '156. Plaintiffs assert, as shown below and as common sense dictates that a publication that discusses a method of shucking oysters using high pressure processing does not and cannot, according to the controlling law, anticipate or make obvious claims directed to elimination of bacteria in molluscan shellfish. Further, a person of ordinary skill would and did recognize as a breakthrough the claimed process of treating molluscan shellfish for elimination of harmful bacteria in shellfish using high pressure processing within the ranges recited in the instant claims, and thus understands that the inventor had invented patentable method at the time of filing his patent application.

Second, the Court should similarly reject PTO's assertion that the Japanese application in combination with Tesvich makes obvious asserted claims 3, 4, and 7 of the application-in-suit. Here, the threshold question is whether a person of ordinary skill in the art would recognize that the cited reference makes it obvious to use the process as disclosed in JP '156 as a solution to the problem of bacteria elimination in shellfish. Plaintiffs assert that a marine biologist or seafood processor, that is one of ordinary skill, would not and did not recognize the teachings of JP '156

2

as leading them to a solution of the bacteria contamination problem. The analysis is a question of fact properly decided by a jury. As discussed in more detail below, the Court should reject PTO's obviousness argument because reasonable jurors would no doubt find that the cited references do not disclose every limitation of any asserted claim.

The PTO has failed to meet its heavy summary judgment burden to demonstrate anticipation and obviousness of the asserted claims under any of the theories presented in its Motion. At a minimum, there remain genuine issues of material fact regarding each issue presented by the PTO. Accordingly, PTO's Motion should be denied on all issues.

### III.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is only appropriate when, drawing all factual inferences in favor of the nonmoving party, no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A motion for summary judgment must be supported with a showing sufficient to establish there are no genuine issues of material facts and that, even with all reasonable factual inferences drawn in favor of the non-movant, the movant would still be entitled to judgment as a matter of law. Cont'l Can Co. USA, Inc. v. Monsanto Co., 948 F.2d 1264, 1265 (Fed. Cir. 1991). The Federal Circuit has observed that "when summary judgment is improvidently granted the effect is to prolong litigation and increase its burdens." *Id*. at 1265-66. "This is of particular concern in patent disputes, where the patent property is a wasting asset, and justice is ill served by delay in final resolution." *Id*. at 1266. Experience has

shown that a trial often establishes facts and inferences that cannot be gleaned from papers submitted pretrial. SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1116 (Fed. Cir. 1985). "Trial by document is an inadequate substitute for [a] trial with witnesses, who are subject to examination and cross-examination in the presence of the decision maker. Scripps Clinic & Research Found. v. Genetech, Inc., 927 F.2d 1565, 1578 (Fed. Cir. 1991).

The application of a Rule 56 summary judgment to a patent case requires careful concern of the entire record and the relevant law. Rockwell Intl. v. United States, 147 F.3d 1358 (Fed. Cir. 1998). The fact intensive nature of anticipation and obviousness analysis is such that conflicts between opposing versions of fact, credibility and weight are likely. *See*, for example, Interconnect Planning Corp. v. Feil, 774 F.2d 1132 (Fed. Cir. 1985); Scripps Clinic & Research Found. v. Genentech Inc., 927 F.2d 1565 (Fed. Cir. 1991). The Federal Circuit applies the law as enunciated in the landmark cases of Anderson v. Liberty Lobby Inc., 477 U.S. 242 (1986), and Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Under Celotex, a motion for summary judgment must satisfy all evidentiary requirements necessary to sustain a judgment in movant's favor. If the Celotex threshold is crossed, Anderson requires the non-moving party to respond with evidence that would support a judgment in its favor; mere argument is insufficient.

To prove a properly construed claim unpatentable for anticipation under 35 U.S.C. §102, there must be an identity between the claimed invention and the prior art; i.e., every element of a claim must be found in a single prior art reference. Glaverbel SA v. Northlake Mktg., 45 F.3d 1550 (Fed. Cir. 1995). There must be no difference between the invention and the reference disclosure as viewed by one skilled in the art. Scripps, 927 F.2d 1565. Anticipation is a fact question to be proven by clear and convincing evidence. Diversified Corp. v. Century Steps, Inc., 850 F.2d 675 (Fed. Cir. 1988).

"Obviousness" under 35 U.S.C. §103 requires a structured analysis as set forth in Graham v. John Deere, 383 U.S. 1 (1966); KSR International Co. v. Teleflex Inc., 127 S. Ct. 1727, 1734 (2007). Although ultimately a question of law, obviousness is based on several elements of fact. Burlington Indus. v. Quigg, 822 F.2d 1581 (Fed. Cir. 1987). Simply finding the elements of a claim in a collection of prior art is insufficient. In re Sang-Su Lee, 277 F.3d 1338 (Fed. Cir. 2002); *accord* Environmental Designs v. Union Oil, 713 F.2d 693 (Fed. Cir. 1983). Indeed, the obviousness analysis requires evidence of a teaching, suggestion or motivation (TSM) in the selection of the references to meet the substance of the claim as a whole. The precedent makes it clear that the best defense against the subtle but powerful attraction of a hindsight-based obviousness analysis is a rigorous application of the requirement for a showing of the teaching or motivation to combine prior art references. In re Dembiczak, 175 F.3d 994, 999 (Fed. Cir. 1999).

Objective factors such as commercial success and industry acclaim are important indicators of non-obviousness and must always be taken into account, not just when the decision maker has doubts. Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 231 USPQ 81 (Fed. Cir. 1986); Stratoflex v. Aeroquip, Inc., 713 F.2d 1530 (Fed. Cir. 1983).

**IV.    PTO'S SUMMARY JUDGMENT PRESENTS NEW ISSUES ON APPEAL**

In its Motion, the Solicitor raised new issues, asserting that Claims 6 and 27 of the application-in-suit are anticipated only by JP '156. The BPAI decision stated: "Claims 6 and 27 stand rejected under section 102(b) as anticipated by JP '156, as evidenced by Cheftel." The PTO, through its Solicitor, now argues that claims 6 and 27 are anticipated by JP '156 without even once mentioning Cheftel. This constitutes a new issue and should be rejected by the Court. As the Court of Appeals for the Federal Circuit stated in In re Hedges, 783 F.2d 1038 (C.A.F.C. 1986), "[w]e and our predecessor court have not condoned the presentation of new grounds of

5

rejection for the first time on appeal," citing In re Hounsfield, 699 F.2d 1320, 1324, 216 USPQ 1045, 1049 (Fed.Cir.1982); In re Zeidler, 682 F.2d 961, 967, 215 USPQ 490, 494 (CCPA 1982); In re Nygard, 341 F.2d 924, 928-9, 144 USPQ 586, 590 (CCPA 1965).

In the instant case, even though JP '156 is of record, the Solicitor applied the reference as new grounds of rejection, without the supporting reference of Cheftel. As the Federal Circuit stressed in In re Nygard, "[t]hese, however, are new arguments never used in making the rejection and if they are to be relied on we think they should be made in the Patent Office where appellant has the opportunity to answer them as contemplated by the statute, 35 U.S.C. §132, and the rules, Rule 104(b), and not presented to him for the first time in this court. This court is a court of review and reasons for rejection not made in the Patent Office are not properly before us." *Id.* at 929. For this reason alone the Board's decision should be reversed.

**V.   PTO'S SUMMARY JUDGMENT SHOULD BE DENIED IN VIEW OF SUBSTANTIAL ISSUES OF FACT AND LAW RAISED BY THE PLAINTIFFS**

Should the Court allow the Solicitor to raise new issue on appeal and proceed with the case, the Plaintiffs will now address PTO's assertions in order.

**1.   Plaintiffs Disagree with Defendant's Statements of Uncontested Facts**

a.   In Paragraph 20, the Defendant asserts that "oysters treated in accordance with the process disclosed in Embodiment 1 of JP '156 remain raw, *i.e.*, retain sensory characteristics of raw shellfish." In fact, in paragraph [0012], JP '156 states, inter alia, "Note 2: when the shells of processed oysters of the present invention are opened, the condition does not substantially differ from that of raw oyster." The Plaintiffs object to this misstatement of the teachings of the cited reference.

b.   In Paragraph 21, the Defendant asserts "Pressurizing oysters to 42,660 p.s.i. for 3 minutes will eliminate naturally-occurring pathogenic marine bacteria, such as *Vibrio*

6

bacteria, in the oysters." Plaintiffs object to this conclusion as not supported by any empirical data.

c.     In Paragraph 22, the Defendant asserts: "The elimination of *Vibrio* and other naturally occurring marine bacteria in oysters is an inherent result of the pressurization process disclosed in Embodiment 1 of JP '156." The Plaintiffs object to this legal conclusion as not supported by any proof or empirical data.

d.     The Plaintiffs object to the statements in paragraph 24 for the following reasons:

- Tesvich teaches a mild heat treatment method for reduction to lower level of harmful bacteria (col. 2, lines 31 – 36) not a method of elimination of harmful bacteria;

- Tesvich does not teach "rapid cool-down";

e.     Plaintiffs object to the assertions to the statement in paragraph 27 as stating a legal conclusion and not an uncontested fact.

f.     Plaintiffs object to the assertions made in paragraphs 31 and 34 as implying that the only test that the inventor performed was the test at 3000ATMs for 0.5 to 5 minutes and that the tests demonstrated 80% success rate of the process according to JP '156. In fact, the inventor performed numerous tests, including at 1000ATM, 2000ATM, 3000ATM and 4000ATM, with and without application of heat. The tests proved criticality of adding temperature factor to the shellfish shucking process because only after elevating temperature the shells released at certain pressure and time values. These facts are material to the issues involved in this appeal.

g.     Plaintiffs object to the misstatement of facts contained in paragraph 35, which implies that the examiner met his burden of establishing *prima facie* case of inherent anticipation and further that only evidence that the Plaintiffs proffered to rebut PTO's

7

claim rejection were the declarations of Messrs. Nelson, Sunseri, Voisin and Chauvin. The record contains several other statements and declarations, which contain opinions of persons skilled in the art about the technical breakthrough that inventor Voisin achieved in his solution to the long-existing problem.

**2.    Defendant Erroneously Asserts That JP '156 Expressly Discloses All Limitations of Claims 6 and 27**

The Defendant erred in concluding that JP'156 discloses all limitations of Claims 6 and 27. Claims 6 and 27 recite several steps, which are not present in JP '156, such as the pressure ranges, times of processing and temperature. More specifically, the asserted claims recite the pressure parameters of between 20,000 p.s.i. and 80,000 p.s.i., while JP '156 suggests pressures of between 1,000ATMs and 4,000ATMs (14,615 – 58,460 p.s.i.). A partial overlapping of pressures is not sufficient for the finding of anticipation. Atofina v. Great Lakes Chem. Corp., 78 U.S.P.Q.2d 1417 (Fed. Cir. 2006). The instant claims recite processing time of between 1 and 15 minutes, while the cited reference teaches 0.5 – 10 minutes treatment time.

Further, the instant claims require that the process be conducted at ambient temperature. The JP '156 is silent on the temperature factor. It is well settled that to find express anticipation, the reference must expressly disclose every limitation of the claimed invention. Connell v. Sears, Roebuck & Co., 722 F.2d 1542, 1548, 220 U.S.P.Q. (BNA) 193, 198 (Fed. Cir. 1983) ("Anticipation requires the presence in a single prior art disclosure of **all** elements of a claimed invention arranged as in the claim.") (emphasis added). The Solicitor and the PTO completely ignore the claimed temperature limitation. Since JP '156 does not teach or expressly disclose all elements of the asserted claims, *prima facie* case of express anticipation has not been established.

**3.      JP '156 Does Not Inherently Anticipate Claims 6 and 27**

The Solicitor and the PTO erroneously assert that the cited reference discloses the *same* process as recited in the instant claims 6 and 27. As stated above, the pressure values only partially overlap, the time limitation contains partially overlapping values. Importantly, the temperature limitation, which is missing from the BPAI analysis and from the Summary Judgment Motion of the Defendant, should not be ignored or passed over in the rush to judgment. One can only speculate why the Japanese publication fails to address the temperature criteria. However, the simple fact remains – JP '156 lacks any teaching on the preferred temperature of oyster processing and no argument by the Defendant can fill the gap in the publication disclosure.

"[A]nticipation under §102 can be found only when the reference discloses exactly what is claimed and that where there are differences between the reference disclosure and the claim, the rejection must be based on §103 which takes differences into account." Titanium Metals Corp. v. Banner, 778 F.2d 775, 780 (Fed. Cir. 1985). The PTO did not reject Claims 6 and 27 under Section 103; instead these claims were rejected under section 102, which requires a one-to-one correspondence between the cited reference and the asserted claims. This basic rule of law does not change when the Patent Office applies the doctrine of inherent anticipation. As the Federal Circuit confirmed in Perricone v. Medics Pharmaceutical Corp., 432 F.3d 1368, 1375-76 (Fed. Cir. 2005) when addressing the doctrine of inherent anticipation, a single prior art reference must disclose each and every limitation of a claim in order to invalidate that claim by anticipation. If the reference does not explicitly disclose an element it is possible to find inherent anticipation, but only if, that element is inherent in the disclosure. *Id.* at 1375. To show inherent anticipation, any extrinsic evidence must make clear that the missing descriptive matter is

necessarily present in the thing described in the reference. Continental Can Co. USA v. Monsanto Co., 948 F.2d 1264, 1268 (Fed. Cir. 1991). Such limitations as temperature criteria are not just "descriptive matter," they are claimed features, and no such corresponding features can be found in the cited reference. By expressly ignoring one or more of the claimed features of the application-in-suit, the Patent Office failed to establish *prima facie* case of inherent anticipation.

The Defendant's Summary Judgment Motion misstates the issue when it asserts that "the Japanese Patent Application 4356156A teaches a process of pressurizing shellfish that inherently destroys bacteria." The proper inquiry is not whether the process of JP '156 inherently destroys bacteria but whether the Patent Office met its burden during the examination process when it failed to find a reference that discloses every feature of the claimed invention. Despite the apparent failure to cite such a reference, the PTO still rejected the claims under 35 U.S.C. §102. BPAI's confirmation of the claim rejection was arbitrary, capricious and contrary to the law.

**4.    The BPAI Erroneously Concluded That JP '156 Put the Claimed Invention in the Hands of One Skilled in the Art**

During examination, the Plaintiffs presented results of the experiments the inventor of the instant application, Mr. Ernest A. Voisin, performed in an attempt to test the workability of JP '156. The tests, conducted at ambient temperature of 50°F (one of the requirements of the instant claims) using the examples listed in the Japanese publication, proved that the method of oyster shucking as described in JP '156 was unreliable and in some cases could not be performed without the application of heat. These tests confirmed that the temperature factor is important in processing of shellfish, just as it was recognized by the instant inventor and claimed in the application-in-suit and not recognized or taught by the cited publication. Based on the test results, the inventor concluded that JP '156 does not provide an enabling disclosure, which is the threshold requirement for "putting the invention in the hands of one skilled in the art."

BPAI asserted that there was no suggestion that JP '156 method was conducted at 50°F (the ambient temperature as recognized in the U.S. seafood processing industry) and dismissed as unpersuasive by Mr. Voisin's tests and conclusions. However, if the process steps as taught by JP '156 are followed and result in the dramatic change in the quality of the shellfish, one cannot continue to assert that all features of the claimed invention are inherently present in the cited reference or that the cited reference puts the instant invention in the hands of the public. The PTO cannot fairly argue that elimination of bacteria in shellfish without thermal or mechanical damage to shellfish will inevitably flow from practicing the process of JP '156.

The results of Mr. Voisin's tests, at the very least, raise an issue of fact, to be decided by a fact-finder, as to whether the cited reference puts the claimed invention, in this case a process of bacteria elimination in seafood that does not cause thermal or mechanical damage to the product, in the hands of persons skilled in the art. The tests results also raise an issue of fact whether elimination of harmful bacteria in shellfish inevitably flows from following the teachings of JP '156.

**5.     The Defendant Did Not Meet Its Burden of Proof at the Examination Stage**

While the Federal Circuit, expanding the inherent anticipation doctrine in Schering Corp. v. Geneva Pharmaceuticals, Inc., 339 F. 3d 1373, 1375 (Fed. Cir. 2003) held that "artisans of ordinary skill may not recognize the inherent characteristics or functioning of the prior art," the Plaintiffs are not aware of any precedent that would relieve the Patent Office from its duty to make a *prima facie* case by citing a single reference that would include ALL limitations of the asserted claims.

While BPAI attacked the declarations of persons skilled in the art asserting that their recognition of inherent anticipation was not required, BPAI could not assume, as it did, that the

11

processing temperature for JP '156 would necessarily be the "ambient" temperature as recited in Claims 6 and 27. The PTO's conclusion is merely a speculation and should be treated as such by a fact finder.

### 6. Defendant Erroneously Asserts That Claims 3 and 4 "Are Virtually Identical to Claims 27 and 6"

Claim 3 recites:

> A process of destroying bacteria in raw molluscan shellfish, while shellfish is in the shell, comprising the steps of:
>
> providing a pressure vessel;
>
> depositing said shellfish into said pressure vessel;
>
> loading a pressure transmitting fluid into said pressure vessel;
>
> pressurizing said pressure vessel to high pressure of between about 20,000 p.s.i. and 80,000 p.s.i., without application of heat, for a period of between 1 and 15 minutes, thereby causing elimination of naturally-occurring pathogenic marine bacteria, while retaining sensory characteristics of said shellfish; and then
>
> retaining said shellfish at a temperature below ambient temperature.

Even a lay person would readily appreciate that the limitations of Claim 3 are not "virtually identical" to the limitations of Claims 6 and 27. The difference is not only in the post-pressurization step of refrigeration but also in the more specific method steps, such as loading pressure transmitting fluid into the pressure vessel after the shellfish was deposited in a specially-provided pressure vessel and prior to pressurizing the vessel. These steps are not recited in either Claim 6 or Claim 27. More importantly, these steps are not recited anywhere in JP '156. The PTO preferred not to address these differences, instead issuing a wholesale

rejection of Claims 3, 4 and 7 simply because Claim 3 recites similar pressure and time values as recited in Claims 6 and 27.

Such approach is in direct violation of the Patent Office examination rules. Manual of Patent Examining Procedure (MPEP), which regulates the examination process in the U.S. Patent Office, in Part 2143 entitled "Basic Requirements of a *Prima Facie* Case of Obviousness" states: "To establish a *prima facie* case of obviousness, three basic criteria must be met. First, there must be some suggestion or motivation, either in the references themselves or in the knowledge generally available to one of ordinary skill in the art, to modify the reference or to combine reference teachings. Second, there must be a reasonable expectation of success. *Finally, the prior art reference (or references when combined) must teach or suggest* **all** *the claim limitations*." (emphasis added)

The Defendant failed to follow its own rules when it ignored specific claim limitations not found in the prior art reference. The Plaintiffs would like to remind the Court that JP '156 teaches that oysters and seawater are sealed in plastic containers, which are then deposited into a pressure vessel. JP '156 does not teach that a pressure-transmitting fluid should be deposited directly into the pressure vessel, which contains the shellfish. JP '156 does not teach that processing should or could be conducted without the application of heat or that the goal of the process is elimination of naturally-occurring pathogenic marine bacteria, while retaining sensory characteristics of shellfish. By ignoring these important claim limitations the PTO deprived the applicant of his right to a fair examination.

7. **<u>Declarations of Persons Skilled in the Art Presented by the Plaintiffs Raise Issues of Fact That Preclude Granting Summary Judgment For Defendant</u>**

During examination, the applicant presented several statements and declarations from persons having more than ordinary skill in the art of marine biology and seafood processing. In

these declarations, all declarants attested that they reviewed the cited references and in their opinion, were no closer to the solution to the problem of bacteria elimination in seafood than they were before. Examiner Drew Becker, who by his own admission had never seen an oyster in his life, and without going into any detail, simply stated that these declarations and statements were not persuasive. The BPAI, without much ado, adopted Examiner's position and stated that "these declarations merely conclude that the method steps disclosed by JP '156 do not inherently eliminate bacteria in shellfish but fail to present evidence to support this conclusion."

The BPAI's statement is not supported by the evidence proffered by the Plaintiffs. The Declarations, as Plaintiffs pointed out in their Memorandum of Points and Authorities, contain a letter from Dr. Marilyn Kilgen, Head of the Department of Biological Sciences of Nicholls State University, who substantially details the issue of elimination of pathogenic bacteria, such as *Vibrio Vulnificus*, in raw seafood products. She also discussed how various techniques for elimination of bacteria were not successful, as being too costly, too time-consuming, without FDA approval or simply too inconvenient. Dr. Kilgen wrote that at the request of Mr. Voisin to Nicholls State University, she performed numerous experiments to test the efficacy of the method claimed in the present application. Dr. Kilgen, a marine biologist, a scientist, a person having more than ordinary skill in the art characterized Mr. Voisin's method as being "novel."

Another declaration was from Mr. Robert L. Collette, Vice-President of Science and Technology of the National Fisheries Institute, who characterized Mr. Voisin's invention as a "breakthrough needed to correct the problem" [of reducing *Vibrio Vulnificus* bacteria]. According to Mr. Collette, the new process "is truly impressive when considering the amount of time and money spent by universities and scientists worldwide to solve this concern."

14

A third Declaration came from Dr. Michael W. Moody, Ph. D., Seafood Technologist of the Louisiana State University Agricultural Center, who described in his letter the problem of raw molluscan shellfish contamination by *Vibrio Vulnificus* and stated that "prior to Mr. Ernest Voisin contacting [him] about the possibility of using high pressure treatment for the elimination of *Vibrio Vulnificus* in raw molluscan shellfish, [he] was not aware of the process being used anywhere or by anyone for that purpose." Dr. Moody also stated that he "was not aware of anyone suggesting that the process be used for that purpose." This is additional evidence that a "person of ordinary skill in the art" considers the instant invention novel and nonobvious.

Also of record in this case are declarations of Messrs. Chauvin, Michael Voisin, Nelson and Sunseri,[1] who had reviewed the cited references of JP '156, Cheftel and Tesvich and who declared that in their learned opinion, the method steps disclosed in the Japanese publication did not teach or "enable" them, as persons of ordinary skill in the art, how to use the described method for bacteria elimination. Contrary to the BPAI's assertion, the declarants did not simply conclude that "the methods steps disclosed by JP '156 do not inherently eliminate bacteria in shellfish." In fact, the declarants attested that they had reviewed all references cited by the Patent Office and reached their conclusions based on their extensive knowledge and experience in the field. In their opinion, Mr. Voisin's invention is novel, nonobvious and a true breakthrough.

The Plaintiffs respectfully submits that one of the major statutory requirements for finding of obviousness is recognition by persons skilled in the art.[2] There can be no finding of

---

[1] These declarations were attached to Plaintiff's Summary Judgment Motion as Exhibits D, E, F, G respectively.
2 35 U.S.C. 103 Conditions for patentability; non-obvious subject matter.
(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in Section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

15

obviousness unless recognized by persons skilled in the art. Our precedent instructs that obviousness can be found only when the asserted claims are recognized as obvious by such persons skilled in the art; that teaching, suggestion and motivation to combine references can come only from the prior art, not from the conclusions of the Patent Office. KSR International Co. v. Teleflex Inc., 127 S. Ct. 1727, 1734 (2007)

At the very least, the declarations of these skilled artisans raise an issue of fact to be decided by a fact finder and not summarily decided as a matter of law.

**8.      Secondary Considerations**

Secondary considerations, also known as indicia of nonobviousness, "must be considered in determining obviousness."[3] Indeed, such objective indicia may be "the most probative and cogent evidence in the record"[4] and "alone may defeat a claim of obviousness." Secondary considerations considered by courts to suggest nonobviousness include commercial success,[5] long-felt need,[6] failure of others,[7] copying by competitors,[8] praise by others/industry recognition,[9] industry acquiescence,[10] skepticism by those in the art, and licensing by others.[11]

As Plaintiffs demonstrated, the instant invention was widely acclaimed as a breakthrough by the seafood industry. Numerous awards that the Plaintiffs received, such as "Seafood

---

[3] Ruiz v. A.B. Chance Co., 234 F.3d 654, 667 (Fed. Cir. 2000)
[4] Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1538 (Fed. Cir. 1983)
[5] In re Piasecki, 745 F.2d 1468, 1473 (Fed. Cir. 1984); Sterling Drug Inc. v. Watson, 135 F. Supp. 173 (D.D.C. 1955)
[6] Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1539 (Fed. Cir. 1983); In re May, 574 F.2d 1082, 1092 (C.C.P.A. 1978)
[7] Sterling Drug Inc. v. Watson, 135 F. Supp. 173 (D.D.C. 1955)
[8] Rebuttal evidence may include evidence that the claimed invention was copied by others. See, e.g., In re GPAC, 57 F.3d 1573, 1580 (Fed. Cir. 1995); Hybritech Inc. v. Monoclonal Antibodies, 802 F.2d 1367, 1380 (Fed. Cir. 1986)
[9] Brenner v. Ladd, 247 F. Supp. 51 (D.D.C. 1965)
[10] Eli Lilly & Co. v. Generix, 324 F. Supp. 715, 718 (S.D. Fla. 1971), aff'd 460 F.2d 1096 (5th Cir. 1972)
[11] Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc., 348 F. Supp. 2d 713, 753 & 757-58 (N.D. W. Va. 2004)

Processor of the Year," and others evidence praise and industry recognition of the significant achievement made by the inventor in the relevant art. The Patent Office steadfastly refuses to acknowledge that the Plaintiffs fully met the burden of rebutting PTO's rejection of the claims based on Section 103, assuming such *prima facie* case was made.

These facts, at the very least raise another issue of fact, to be decided by the fact-finder during trial. In view of the above, the Defendant's Motion for Summary Judgment should be denied.

## V.    SUMMARY AND CONCLUSION

Defendant has not met or carried its burden of establishing that it is entitled to summary judgment of anticipation and obviousness of the asserted claims on the basis of their own flawed arguments. The PTO incorrectly applied the cited references to the asserted claims and failed to make prima facie case during examination in every instance. The PTO ignores claim limitations and creates significant evidentiary gaps; the claims do not read on the references the Defendant uses and it is insufficient to base anticipation or obviousness argument since not all claim limitations of the asserted claims can be found in any of the cited references, singularly or in combination. Based on these evidentiary and legal flaws, Defendant's motion should be dismissed as prima facie insufficient.

When Plaintiffs' countering evidence is taken into account, it is clear that a reasonable jury could find each claim of the application-in-suit patentable. In every case, competent testimony shows that no claim of the application reads on any single reference. The obviousness arguments presented by Defendant does not hold up under scrutiny and, in any event, are negated by the strong presence of numerous objective factors. Based on this presentation, Defendant's motion should be denied in its entirety.

Respectfully submitted,


/s/Thomas S. Keaty
Thomas S. Keaty, *pro hac vice*
Attorney for Plaintiff
Keaty Professional Law Corporation
2140 World Trade Center
No. 2 Canal Street
New Orleans, LA 70130
(504) 524-2100
(504) 524-2105 (fax)

## CERTIFICATE OF SERVICE

I herby certify that on November 30, 2007, I electronically filed the foregoing with the clerk of court by using CM/ECF system, with the US District Court for the District of Columbia, 333 Constitution Ave., NW, Washington DC 20001.

And served on Defendant through their counsel of record by depositing same with the U.S. mail, first class postage prepaid, or by facsimile transmission or by hand delivery.

    Robin M. Meriweather, D.C. Bar #490114
    Jeffrey A. Taylor, D.C. Bar #498610
    Rudolph Contreras, D.C. Bar
    Assistant United States Attorney
    555 4th St., N.W.
    Washington, D.C. 20530
    (202) 307-1249
    (202) 514-8780 (facsimile)

                                      /s/ Thomas S. Keaty
                                      Thomas S. Keaty