## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INNOVATIT SEAFOOD SYSTEMS, LLC and )
AVURE TECHNOLOGIES, INC.,               )
                                        )
      Plaintiffs,                       )
                                        )
    v.                                 )      Civil Action No. 06-0822(JR)
                                        )
COMMISSIONER FOR PATENTS,               )
                                        )
      Defendant                        )

## PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Plaintiffs, Innovatit Seafood Systems, L.L.C. and Technologies, Inc. respectfully reply to the Defendant's Opposition to Plaintiff's Motion for Summary Judgment.  Plaintiffs brought the present action under 35 U.S.C. § 145 challenging the decision of the Board of Patent Appeals and Interferences ("Board"), which affirmed the examiner's rejection of claims 3, 4, 6, 7, and 27 of application Serial No. 09/121,725. As set forth in the attached Memorandum of Points and Authorities, the Defendant failed to prove that it is entitled to judgment as a matter of law and failed to demonstrate that there any genuine issues of fact that would entitle it to a trial.

In view of the above, the Plaintiff's respectfully request that the Defendant's Motion for Summary Judgment be denied and the Plaintiffs' Cross-motion for Summary Judgment be granted.

Respectfully submitted,

/s/Thomas S. Keaty
Thomas S. Keaty, *pro hac vice*
Attorney for Plaintiff
Keaty Professional Law Corporation
2140 World Trade Center

No. 2 Canal Street
New Orleans, LA 70130
(504) 524-2100
(504) 524-2105 (fax)

## CERTIFICATE OF SERVICE

I herby certify that on January 4, 2008, I electronically filed the foregoing with the clerk

of court by using CM/ECF system, with the US District Court for the District of Columbia, 333

Constitution Ave., NW, Washington DC 20001, which will send a notice of electronic filing to

the following:

Robin M. Meriweather, D.C. Bar #490114
Jeffrey A. Taylor, D.C. Bar #498610
Rudolph Contreras, D.C. Bar #434122
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 307-1249
(202) 514-8780 (facsimile)

/s/Thomas S. Keaty
Thomas S. Keaty

# TABLE OF AUTHORITIES

**CASES**

Pages

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986),...................................25

Application of Carleton, 599 F.2d 1021 (Cust. & Pat. App., 1979)...............................22

Atlas Powder Co. v. Ireco, Inc., 190 F.3d 1342, 1345 (Fed. Cir. 1999).........................7

Beasley, No. 04-1225, 117 Fed. Appx. 739 (Fed. Cir. Dec. 7, 2004) ..........................23

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). .................................................24

Connell v. Sears, Roebuck & Co., 722 F.2d 1542, 1548, 220 U.S.P.Q. (BNA) 193, 198
    (Fed. Cir. 1983)........................................................................................................12

Continental Can Co. v. Monsanto Co., 948 F.2d at 1268 (Fed. Cir. 1991).......................14, 16, 17

Cruciferous Sprout Litig., 301 F.3d 1343, 1350-51 (Fed. Cir. 2002)..............................9

Dreiling v. Peugeot Motors of America, Inc., 850 F.2d 1373, (10th Cir. 988) ...........................25

Eli Lilly & Co. v. Zenith Goldline Pharm., Inc., 471 F.3d 1369, 1380 (Fed. Cir. 2006) ..............23

Helene Curtis Indus. v. Sales Affiliates, 121 F. Supp. 490, 500-1 (S.D. N.Y. 1954) ....................7

Huang, 100 F.3d 135, 139 (Fed. Cir. 1996).....................................................................22

Id at 1378 ........................................................................................................................8

Id. at 1376. ......................................................................................................................7

Id. at 1379 .......................................................................................................................8

Id. at 1380. ......................................................................................................................7

Id. at 511 .........................................................................................................................24

Interconnect Planning Corp. v. Feil, 774 F.2d 1132, 1138 (Fed. Cir. 1985)................................21

Kahn, 2006 U.S. App. LEXIS 7070 ................................................................................20

KSR International Co. v. Teleflex Inc., 127 S. Ct. 1727, 1734 (2007) ...........................21

Lewis, 443 F.2d 389 (CCPA 1971) .................................................................................22

Loctite Corp. v. Ultraseal Ltd., 781 F.2d 861, 875 (Fed. Cir. 1985) .............................14

McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995) ..................24

MEHL/Biophile International Corp. v. Milgraum, 192 F.3d 1362 (Fed. Cir. 1999)....................16

Ochiai, 71 F. 3d 1565, 37 USPQ2d 1127 (Fed. Cir. 1995) ...........................................21

Omeprazole Patent Litigation, 483 F. 3d 1364 (Fed. Cir. 2007) ....................................14

Perricone v. Medicis Pharm. Corp., 432 F.3d 1368, 1377 (Fed. Cir. 2005)....................7

Petering, 301 F.2d 676 (CCPA 1962).................................................................................8

Rinehart, 531 F.2d 1048 (CCPA 1976) ............................................................................22

Schering Corp. v. Geneva Pharm., Inc., 339 F.3d 1373, 1377 (Fed. Cir. 2003) ...........12

Structural Rubber Prods. Co. v. Park Rubber Co., 749 F.2d 707, 716 (Fed. Cir. 1984) ...............16

Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1334 (Fed. Cir. 2002)...............21

Titanium Metals Corp. v. Banner, 778 F.2d 775, 781-2 (Fed. Cir. 1985) ..................8, 9

Toro Co. v. Deere & Co., 355 F.3d 1313, 1322 (Fed. Cir. 2004)..................................10

**STATUTES**

Article 33(2) and (3) ........................................................................................................18

35 U.S.C. § 103................................................................................................................23

35 U.S.C. § 145..................................................................................................................1

35 U.S.C. §100(b) ............................................................................................................14

35 U.S.C. §101.................................................................................................................14

**OTHER AUTHORITIES**

Administrative Instructions Sections 505-508.................................................................18

**RULES**

Fed.R.Civ.P Rule 56(f) ....................................................................................................25

Fed.R.Civ.P Rule 19 ..........................................................................................................6

Fed.R.Civ.P Rule 43.5( c)................................................................................................18

Fed. R.Civ.P Rule 56 ..................................................................................................23, 24

Fed.R.Civ. P Rule 56(e)....................................................................................................24

Fed.R.Civ. P Rule 56.1 .....................................................................................................24

# TABLE OF CONTENTS

I.   THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED ...................................................................................................1

    A.   Defendant Has Not Established That the JP '156 Reference Discloses All Features of the Asserted Claims 6 and 27, and, Therefore, Cannot Prove It Is Entitled to Summary Judgment ...........................................................................................1

    B.   Partial Overlapping of Pressure and Time Parameters Does Not Establish Anticipation of Claims as a Whole ........................................................................2

    C.   Inherent Anticipation of Properties-Reciting Claims Is Not Applicable to Method-of-Processing Claims ..................................................................................4

    D.   There is Not Genus-Species Relationship ...........................................................5

    E.   The "Ambient Temperature" Limitation Is Expressly Recited .............................6

    F.   JP '156 Does Not Teach the Limitation of "Ambient Temperature"....................6

    G.   Defendant Misreads Voisin's Test Results ...........................................................7

    H.   The Defendant Is Not entitled to Summary Judgment on the Issue of Inherent Anticipation ...........................................................................................................7

    I.   Plaintiffs Are Entitled to Patent Pursuant to 35 U.S.C. 101 ...............................9

    J.   The Defendant Cannot Rely on Extrinsic Evidence of Cheftel............................10

    K.   Defendant Misconstrues the Evidence Submitted by Plaintiffs ...........................12

II.  DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF OBVIOUSNESS ....................................................................................14

    A.   The Defendant Confuses "Pressure Vessel" With Plastic Bag.............................14

    B.   Claims 3 and 4 Are Not Identical to Claims 6 and 27 .........................................14

    C.   The Defendant Substituted Its Knowledge for That of Skilled Artisans ...............17

III. THE PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL THEIR CLAIMS BECAUSE DEFENDANT HAS FAILED TO PRESENT ANY EVIDENCE OF A GENUINE ISSUE OF MATERIAL FACT AS TO ANY OF THE DEFENSES...19

IV.    DEFENDANT HAS FAILED TO MEET ITS BURDEN OF SHOWING THAT
       FURTHER DISCOVERY IS NECESSARY CONCERNING ANY OF ITS
       DEFENSES ................................................................................................................ 20

CONCLUSION ..................................................................................................................... 21

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INNOVATIT SEAFOOD SYSTEMS, LLC and AVURE TECHNOLOGIES, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 06-0822(JR) |
| COMMISSIONER FOR PATENTS, | ) ) | |
| Defendant | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Innovatit Seafood Systems, L.L.C. and Avure Technologies, Inc., joined as a party under Rule 19 FRCP ("Plaintiffs"), reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment filed by Commissioner for Patents ("Defendant") on November 30, 2007.

## I.    THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

### A.    Defendant Has Not Established That the JP '156 Reference Discloses All Features of the Asserted Claims 6 and 27, and, Therefore, Cannot Prove It Is Entitled to Summary Judgment

The Japanese reference does not explicitly disclose a method of eliminating pathogenic bacteria in shellfish and the Defendant does not contend that it does. The Japanese reference, likewise, does not disclose the step of processing shellfish at ambient temperature but the Defendant erroneously contends that it does. The Plaintiff's Appeal Brief inadvertently mentioned that JP '156 teaches conducting the process of oyster shucking at ambient

1

temperature. The statement was in error. However, it does not change the result – JP '156 does not disclose, teach, or suggest the requirement that the process be conducted at ambient temperature. Reading into the prior art disclosure the desired temperature limitation is hindsight reconstruction by the Defendant.

### B. Partial Overlapping of Pressure and Time Parameters Does Not Establish Anticipation of Claims as a Whole

The cited reference does not disclose the same pressure ranges and times of processing of shellfish to achieve bacteria elimination at ambient temperature. The Defendant contends that every time when the stated pressure or time ranges partially overlap, the courts necessarily find anticipation. In support of this proposition, the Defendant cites Atlas Powder Co. v. Ireco, Inc., 190 F.3d 1342, 1345 (Fed. Cir. 1999); Helene Curtis Indus. v. Sales Affiliates, 121 F. Supp. 490, 500-1 (S.D. N.Y. 1954) and Perricone v. Medicis Pharm. Corp., 432 F.3d 1368, 1377 (Fed. Cir. 2005).

However, these cases do not uniformly stand for the same proposition in the case of method claims. In fact, the Perricone case supports Plaintiffs' position, not Defendant's. In Perricone, three sets of claims were at issue. The first two sets of claims recited methods of treating sunburned or damaged skin by topically applying a specific composition. The third set of claims required topical application of the same composition, but did not require that the skin be sunburned or damaged. The prior art reference at issue "disclose[d] the very same composition and [taught] its topical application," but did not disclose application of the composition specifically to sunburned or damaged skin. Id. at 1380. Moreover, while the benefit of treating sunburn or damaged skin was not expressly described in this prior art reference, the district court noted that "the topical application of [the prior art reference's] compositions would necessarily yield [the patent's] claimed skin benefits." Id. at 1376.

2

Under those facts, the claims which did not require that the treated skin be sunburned or otherwise damaged were anticipated. However, the claims which specifically required application of the composition to sunburned or damaged skin were not anticipated. As to these latter claims, the Federal Circuit held that "[t]he issue is . . . whether [the prior art] discloses the application of its composition to skin sunburn." Id. at 1379. It did not, and "topical application does not suggest application of [the prior art product] to skin sunburn." *Id*. In other words, even though it may have been possible for the composition to have been applied to sunburned or otherwise damaged skin, there was no inherent anticipation. See Id at 1378.

Similarly here, Claims 6 and 27 require shellfish processing for 1-15 minutes, at ambient temperature and pressure of between 20,000 p.s.i. and 80,000 p.s.i.. Even if the JP '156 method, exactly as taught, (0.5 – 10 minutes, 1,000ATM -4,000ATM) could have been used in bacteria elimination - and there is no evidence that it was - under Perricone there is no inherent anticipation.

The defendant also relies on a statement in Titanium Metals Corp. v. Banner, 778 F.2d 775, 781-2 (Fed. Cir. 1985), which reads, "it is also an elementary principle of patent law that when, as by a recitation of ranges or otherwise, a claim covers several compositions, the claim is 'anticipated' if one of them is in the prior art." The Titanium Metals case actually quoted a 40-year old decision of In re Petering, 301 F.2d 676 (CCPA 1962), which dealt with anticipation in a genus-species situation of chemical compositions. In Petering, the prior art disclosed a chemical genus having a limited number of substituent groups that represented either hydrogen or alkyl radicals, and an R group containing an OH group. The reference also disclosed a subgenus with preferred substituents for each group. The court held that the subgenus, containing only 20 compounds and a limited number of variations in the generic chemical formula,

inherently anticipated a claimed species within the genus because "one skilled in [the] art would… envisage each member" of the genus. According to the rules of chemical composition examinations, a genus anticipates a species if one of ordinary skill in the art is able to "envisage" the species compound within the chemical formula of the genus compound. In genus-species situations, a prior art species will always anticipate a genus. In stark contrast, the disclosure of a genus may or may not anticipate a species within a genus of a chemical compound.

However, as addressed in more detail below, in the present case, there is no genus-species relationship between the instant claims and the method of oyster shucking described in JP '156.

### C. Inherent Anticipation of Properties-Reciting Claims Is Not Applicable to Method-of-Processing Claims

The Defendant cites In re Cruciferous Sprout Litig., 301 F.3d 1343, 1350-51 (Fed. Cir. 2002) as allegedly applying Titanium Metals to process claims. In fact, Cruciferous Sprout dealt a method of growing certain edible sprouts, where the purpose of the method of developing particular properties in the sprouts was to increase the level of glucosinolate. Foods with high levels of glucosinolates produce Phase 2 enzymes in the human body; these enzymes help detoxify carcinogens, thus reducing the risk of developing cancer. Therefore, the method in Cruciferous Sprout dealt with a problem of developing certain **properties** in the plant, as opposed to a method of processing the plant. The court determined that high levels of gluscosinolates were present in sprouts as long as sprouts have existed. The gluconsinolates were inherent characteristics or properties as disclosed by the prior art references. The court in Cruciferous Sprout concluded that because the patents merely recognized a property inherently disclosed in prior art references, the patents were anticipated.

Here, the Defendant asserts anticipation of the method steps that it claims are inherent in the method steps of the Japanese publication. The legal analysis applicable to the claim construction of inherent properties existing in a live plant is inapplicable to the instant case, where the inventor claims a method of shellfish processing under high-pressure conditions for bacteria elimination.

### D.    There is Not Genus-Species Relationship

Contrary to the Defendant's suggestion, there is no genus-species relationship between the asserted claims and the method of oyster shucking of JP '156. In order to obscure an otherwise clear situation of erroneous claim of anticipation by inherency, the Defendant improperly attempts to apply genus-species analysis to this case. The Defendant's attempt must fail, however, because the case at bar bears virtually none of the indicia that define a genus-species relationship. While both Claims 6, 27 and the process of JP '156 are directed to methods, they fail to meet other basic premises of the genus-species construction. In fact, there is no "inherent property" in the method JP '156 that can be analyzed within the legal framework of biotech patents.

In cases like the one at bar, the courts are reluctant to grant summary judgment because no reasonable factfinder could find that one of skill in the art would discern from the prior art teachings the unique combination of **all** of the necessary parameters to produce the claimed method. See, for instance, Toro Co. v. Deere & Co., 355 F.3d 1313, 1322 (Fed. Cir. 2004). In Toro, the Federal Circuit affirmed the district court's denial of summary judgment on the issue of inherent anticipation advanced by Deere. At issue was whether a certain claim limitation ("limitation ( c)"), which recited "moving said source of incompressible liquid over the surface of said turf in a pattern such that the lateral dispersion from adjacent jets coact with one another

to lift and fracture the soil and reduce the general soil density" was inherently present in the cited reference. The Federal Circuit stated:

> "Although the district court did not address this issue, and although the district court did not properly construe limitation (c), we nonetheless hold that Deere failed to make the requisite factual showing for summary judgment of inherent anticipation. Deere did not present any direct evidence of the necessary features or results of '516 embodiments, such as testing results. Instead, Deere argued that if '168 embodiments necessarily performed the function of limitation (c), then at least some '516 embodiments must also necessarily perform that function, given the partial overlap in the numerical ranges of the parameters for liquid pressure and lateral nozzle spacing. **But several other parameters besides liquid pressure and lateral nozzle spacing are recited in the two patents, such that on this record the numerical overlaps identified by Deere fail to demonstrate that no genuine issue exists as to '516 embodiments necessarily performing the function of limitation (c)**. For that reason, we affirm the denial of summary judgment of invalidity." (emphasis added)

The same is true here, where the pressure and time ranges are not the only limitations in the asserted claims. The partial numerical overlaps in the shellfish processing parameters still do not entitle the Defendant to a grant of summary judgment because other limitations, not disclosed in any of the cited references, are recited in the asserted claims.

### E.    The "Ambient Temperature" Limitation Is Expressly Recited

The Defendant also erroneously contends that the Plaintiffs rely only on the negative limitation ("without application of heat") in traversing examiner's rejection. A careful reading of Claims 6 and 27 reveals that the applicant positively stated "at ambient temperature" in line 3 of Claim 6 and in lines 3-4 of Claim 27. In fact, the claims positively recite "ambient temperature" as one of the required process parameters. Therefore, the Defendant's line of reasoning on this issue must fail.

### F.    JP '156 Does Not Teach the Limitation of "Ambient Temperature"

The Defendant erroneously contends that since the detailed description of the pressurization process of JP '156 does not call for the application of heat it constitutes "strong

evidence that the JP '156 process is to be carried out at ambient temperature." As mentioned above, this statement is nothing but a hindsight reconstruction. One cannot assume that such method step was contemplated by the applicant of JP '156. it is well settled that in order to anticipate the cited prior reference must disclose ALL limitations of the asserted claims, arranged just like in the asserted claims. <u>Connell v. Sears, Roebuck & Co.</u>, 722 F.2d 1542, 1548, 220 U.S.P.Q. (BNA) 193, 198 (Fed. Cir. 1983) ("Anticipation requires the presence in a single prior art disclosure of **all** elements of a claimed invention arranged as in the claim.") (emphasis added) The law does not leave room for assumptions or guessing, and the Defendant's assumption of JP '156 teaching ambient temperature processing should be ignored as being contrary to the law.

      **G**.    **Defendant Misreads Voisin's Test Results**

The Defendant mischaracterizes the tests that inventor Ernest Voisin conducted. In fact, Mr. Voisin tried to follow the steps as taught by JP '156 but using the instant invention's requirement for ambient temperature. A careful reading of Mr. Voisin's Declaration makes it clear that JP '156 failed at the lower stated ranges of pressure, at ambient temperature, almost every time. It is only after the heat was applied that the lower pressure parameters listed in JP '156 managed to yield some positive result.  Consequently, this line of Defendant's attack on valid test results fails as well.

      **H**.    **The Defendant Is Not entitled to Summary Judgment on the Issue of Inherent Anticipation**

The Defendant seeks summary judgment under the doctrine of inherent anticipation. It is true that the Federal Circuit in <u>Schering Corp. v. Geneva Pharm., Inc.</u>, 339 F.3d 1373, 1377 (Fed. Cir. 2003) held that "a prior art reference may anticipate without disclosing a feature of the claimed invention if that characteristic is necessarily present, or inherent, in the single anticipating reference." However, given that inherent anticipation of all claim limitations,

including the temperature limitation is before the Court on the Defendant's motion for summary judgment, the Court should determine whether the Defendant had demonstrated that no genuine issue of fact exists as to the understanding of persons skilled in the art that this limitation is necessarily present in the cited reference and that the claimed step of bacteria elimination necessarily results under every time-pressure combination by practicing the method of oyster shucking according to the JP '156 publication. To prove that this single reference anticipates, the Defendant must prove, inter alia, that bacteria elimination at ambient temperature, without thermal and mechanical damage to shellfish is inherently disclosed in the JP '156. The Defendant has not done so. This "ambient temperature" element is a critical element of the invention. It is one of the elements that distinguish the invention from prior methods of bacteria elimination in shellfish, and it is the element that facilitates solution of the problem set forth above, bacteria elimination.

The Defendant relies on the partially overlapping time and pressure parameters as an unquestionable proof that inherent anticipation exists. According to the Defendant's reasoning, Embodiment 1 of JP '156 discloses" the same process with the same steps and same pressure and time parameters as claimed in claims 6 and 27. And, claims 6 and 27 recite that such process results in the elimination of pathogenic bacteria, including Vibrio vulnificus. If the process of JP '156 mirrors the claimed process, then it logically follows that the two processes will achieve the same result–elimination of pathogenic bacteria."

The Defendant is wrong. First, Embodiment 1 teaches application of pressure of 3000ATMs (44,087 psi) for 3 minutes. Claims 6 and 27 require 20,000 – 80,000 psi for 1 – 15 minutes. Second, the pressure and time parameters are not the only claimed parameters – temperature is an important consideration, as well. On this, JP '156 provides zero guidance. The

Defendants admits as much, stating in Paragraph 12 of the Response: "Second, JP '156 does not describe applying heat or cold before, during, or after the disclosed pressurization process. R1145-1150." Consequently, the Defendant's assertion that JP '156 discloses "the same" process is entirely in error.

To prove inherent anticipation, an element missing from a prior art reference must be "necessarily present" in that same prior art reference. <u>Continental Can Co. v. Monsanto Co.</u>, 948 F.2d 1264, 1268 (Fed. Cir. 1991). "The mere fact that a certain thing may result from a given set of circumstances is not sufficient." *Id*. The Defendant must therefore prove that bacteria elimination at ambient temperature will always result when practicing the method described in the JP '156 reference. Since the Defendant did not prove that ALL claimed limitations are present in the single prior art reference or that the step of bacteria elimination at ambient temperature will "necessarily" result from practicing the method of JP '156 the Defendant did not meet its burden of establishing *prima facie* case of express or inherent anticipation.

## I.    Plaintiffs Are Entitled to Patent Pursuant to 35 U.S.C. 101

According to 35 U.S.C. §100(b), a new use of a known process defines the term "process" as eligible subject matter within the meaning 35 U.S.C. §101.  "Eligible methods include "a new use of a known process, machine, manufacture, composition of matter, or material." <u>Loctite Corp. v. Ultraseal Ltd.</u>, 781 F.2d 861, 875 (Fed. Cir. 1985).  *See also* Judge Newman's dissent in <u>In re Omeprazole Patent Litigation</u>, 483 F. 3d 1364 (Fed. Cir. 2007). The Plaintiffs contend that the method of oyster shucking according to JP '156 is NOT THE SAME PROCESS as recited in the instant claims. But assuming that the Patent Office manages to prove that the processes are the same, the Plaintiffs are still entitled to issuance of a patent directed to elimination of bacteria in shellfish within the criteria recited in the claims.

The Defendant is incorrect characterizing the Plaintiff's arguments as "red herring." Reliance on the existing law is fully justified in the case at bar.

**J.      The Defendant Cannot Rely on Extrinsic Evidence of Cheftel**

The Defendant mistakenly contends that bacteria elimination is inherently present in the cited reference and in support brings the Cheftel publication. However, the bacteria elimination element is the element which is clearly missing as a matter of law from JP '156. Resorting to Cheftel does not prove that the bacteria elimination at ambient temperature, without thermal or mechanical damage to shellfish will necessarily result from practicing the method of JP '156. Reliance on Cheftel's two-line heading and reference to minced fish is not enough to prove that JP '156 teaches bacteria elimination in shellfish. The instant claims specifically recite that the shellfish does not suffer any "thermal or mechanical" damage; an intact shellfish unit is a far cry from "minced" fish, which was barely mentioned in Cheftel's publication and was prominent in the Defendant's argument.

The Defendant also suggests that inherency does not require prior knowledge, recognition, or appreciation by those of skilled in the art of the inherent characteristic, property, or ingredient. However, the Defendant confuses the law as applied to the teachings of a single prior art reference with the law where the teaching of the extrinsic evidence is at issue. The Defendant contends that by using the term "as evidenced by" instead of "in view of" the Defendant in fact relied only on JP '156 in its case of inherent anticipation. As the Defendant puts it, "The examiner cited to Cheftel simply as evidence that it was well known in the art that high pressure treatment of seafood destroyed pathogenic microorganisms such as Vibrio bacteria." The Defendant does not deny that Cheftel constitutes extrinsic evidence. However, the use of extrinsic evidence is extremely limited – "such evidence must make clear that the missing

descriptive matter is necessarily present in the thing described in the reference, and **that it would be so recognized by persons of ordinary skil**l." <u>Continental Can Co. v. Monsanto Co.</u>, 948 F.2d at 1268 (emphasis added). Accordingly, while the doctrine of inherency permits reliance on a prior-art reference's implicit disclosures in an anticipation analysis, it does not permit filling in missing elements just because one of skill in the art might know of the missing material.[1] One of skill in the art must recognize, based on his knowledge that the extrinsic descriptive matter (bacteria elimination in shellfish using high-pressure processing) is necessarily present in JP '156. The Plaintiffs submitted several declarations from persons having more than ordinary skill in the art, all of whom testified that in their opinion the missing descriptive matter of bacteria elimination was not inherent in JP '156 even after they have studied Cheftel.

The Defendant attacks the statements of Dr. Kilgen and Mr. Collette ignoring the fact that it is the step of bacteria elimination that is at issue in the inherent anticipation rejection made by the Patent Office. So long as the Defendant continues to contend that Cheftel, the extrinsic evidence, made it known in the art that the use of high pressure processing can kill bacteria, both Dr. Kilgen's and Mr. Collette's statements are directly on point. It is their recognition of the scope of the extrinsic evidence that is paramount to the issue of whether Cheftel fills the huge gap in the teachings of JP '156. As a minimum, the failure of persons skilled in the art (including Messrs. Chauvin, Sunseri, Voisin and Nelson) to recognize Cheftel as making clear that the missing descriptive matter of bacteria elimination is inherently present in JP '156 raises an issue of fact that cannot be resolved by a summary judgment.

The Defendant asserts, relying on the holding in <u>MEHL/Biophile International Corp. v. Milgraum</u>, 192 F.3d 1362 (Fed. Cir. 1999) that "the prior art reference inherently taught hair removal because it disclosed operating parameters that substantially **coincided** with the claimed

---

[1] Cf. <u>Structural Rubber Prods. Co. v. Park Rubber Co.</u>, 749 F.2d 707, 716 (Fed. Cir. 1984)

process, and because the claimed process step resulted in hair removal." The Defendant thereby admits that in order to find inherent anticipation the parameters of the process must "substantially coincide."

In the instant case, there is no "substantial coincidence." At best, there is a partial overlap of some of the method parameters that do not constitute the entire list of the method steps recited in the asserted claims. Besides, the JP '156 "envelope prominently displayed in the Defendant's Motion for Summary Judgment and the Opposition, fails to account for the lower range that JP '156 teaches – 1,000ATM (14,600 p.s.i.). The Japanese publication, which is cited as allegedly teaching 1,000 – 4,000ATM pressure for 0.5 – 10 minutes, fails to disclose the time necessary for the oyster shucking using 1,000ATM. Therefore, the "envelope" constructed by the Defendant cannot be correct.

Because the Defendant cannot prove by clear and convincing evidence that the JP '156 publication, even "as evidenced by Cheftel," expressly or inherently discloses the method of bacteria elimination at ambient temperature, the defendant's anticipation rejection fails as a matter of law. Summary judgment should be granted in favor of the Plaintiffs.

### K.    Defendant Misconstrues the Evidence Submitted by Plaintiffs

The Defendant contends that the Declarations of persons skilled in the art are immaterial for the purposes of anticipation analysis. While it is true that Section 102 rejection is based on printed publications, the analysis of inherent anticipation must take into account any extrinsic evidence introduced by the Defendant, in this case, Cheftel's publication. As the Court in Continental Can[2] stated the extrinsic evidence "must make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and **that it would be so**

---

[2] 948 F.2d 1264 (Fed. Cir. 1991)

**recognized by persons of ordinary skil**l." Consequently, the understanding of the nature and the extent of teaching of the extrinsic evidence is important to the inherent anticipation analysis.

As to the characterization by the EPO of JP '156 as showing the general state of the art, it is important because the U.S. PTO did not find this reference, even though it was obligated to conduct a thorough patentability search. If fact, the U.S. Patent Office originally allowed all claims of the application-in-suit. It was only after the applicant, pursuant to his duty of disclosure shared the results of the competent search conducted by the European Patent Office (EPO) in the corresponding international application filed under the Patent Cooperation Treaty that the U.S. PTO became aware of this reference and withdrew the Notice of Allowance.

It is also important to note that the U.S. PTO is one of the designated international searching authorities pursuant to the provisions of Patent Cooperation Treaty (PCT), and an applicant of an international application has the right to designate USPTO as the International Searching Authority in a PCT application. The U.S. Patent Office examiners routinely conduct such searches and also examine corresponding U.S. applications. The U.S. examiners are expected to be well familiar with the criteria for novelty and inventive step of Article 33(2) and (3), as well as Rule 43.5( c) and Administrative Instructions Sections 505-508 related to the relevance determination of the cited references governing search and examination procedures under the PCT.

The Defendant asserts that it is impossible to compare the claims that were pending before the EPO and the instant claims. In fact, one can easily review these claims by accessing the web site of the World Intellectual Property Organization (WIPO).[3]

---

[3] www.wipo.org

## II.    DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF OBVIOUSNESS

### A.    The Defendant Confuses "Pressure Vessel" With Plastic Bag

In Defendant's Response to the Undisputed Facts, paragraph 14, the Defendant contends that the JP '156 teaches the step of "loading a pressure transmitting fluid into said pressure vessel" by stating that a couple of oysters are placed in a plastic bag with sea water. The Specification of the application-in-suit makes it clear that the term "pressure vessel" is applied to the apparatus designated by numerals 30 and 50 in the drawings. The pressure vessels 30 and 50 are not plastic bags. Therefore, the Defendant cannot prove that JP '156 discloses the same steps as those recited in Claim 3 of the instant application.

### B.    Claims 3 and 4 Are Not Identical to Claims 6 and 27

The Defendant is wrong in asserting that Claims 3 and 4 are identical to Claims 6 and 27 by only reciting post-treatment refrigeration. In addition to setting forth the processing criteria of pressure and time parameters, claim 3 recites the following steps:

providing a pressure vessel,

depositing the shellfish into the pressure vessel,

loading a pressure transmitting fluid into the pressure vessel before the vessel is pressurized; and then

pressuring the pressure vessel.

The Defendant completely ignores these limitations for a simple reason that it cannot find any reference that would have recited the same combination of elements as presented in the asserted claims.

It bears reminding that JP '156 Embodiment 1, describes the process as follows:

14

placing two oysters in a plastic bag filled with sea water at an amount equivalent to that of said oysters,

sealing the plastic bag, and then

placing the sealed bag into a high pressure processing device.

These steps are not identical, not the same as the steps recited in Claim 3. The Defendant assumes away the very issue that the Plaintiffs raised in the summary Judgment Motion. The Defendant simply forges ahead, asserting that the only thing missing from Claim 3 is refrigeration, and since refrigeration is discussed in the mild-heat method of Tesvich – the PTO met its burden of proving obviousness. This hindsight analysis fails as a matter of law.

As a further matter, the Defendant cannot claim that each element of Claims 3, 4, and 7 is found in the combination of JP '156 and Tesvich. In addition to the steps mentioned above, the limitation "without the application of heat" is nowhere to be found in JP '156. The defendant ignores this limitation as well because in that case, the matchstick tower of obviousness rejection will inevitably fall – Tesvich teaches mild heat treatment; JP '156, if one is to accept Defendant's reasoning, is conducted at ambient temperature, and is therefore diametrically opposite to the teachings of Tesvich. If combined as suggested by the Defendant, the teachings of the primary and secondary references clash in conflict. In other words, JP '156 teaches away from Tesvich, and no reasonable fact finder could find any suggestion or motivation to combine these references.

In considering motivation in the obviousness analysis, the problem examined is not the specific problem solved by the invention but the general problem that confronted the inventor before the invention was made. In re Kahn, 2006 U.S. App. LEXIS 7070, at *15. The Tesvich reference, by using mild heat treatment, teaches away from the invention claimed in the asserted

claims of no-heat-application rather than renders them obvious. A "showing of motivation to combine must be clear and particular and supported by actual evidence, not merely by a conclusory assertion that the nature of the problem itself supplies the necessary motivation to combine." <u>Teleflex, Inc. v. Ficosa N. Am. Corp</u>., 299 F.3d 1313, 1334 (Fed. Cir. 2002). Here, the Defendant extracts the banding and refrigeration features of Tesvich and interposes the limitations on the process of JP '156. However, JP '156 is silent on any requirement or desirability of refrigeration or retention of oyster juices. In other words – no clear motivation to combine.  It is well settled that obviousness can be found only when the asserted claims are recognized as obvious by such by persons skilled in the art; that teaching, suggestion and motivation to combine references can come only from the prior art, not from the conclusions of the Patent Office. <u>KSR International Co. v. Teleflex Inc.</u>, 127 S. Ct. 1727, 1734 (2007). Since the defendant did not conduct the legal analysis of teaching-suggestion-motivation criteria, *prima facie* case of obviousness has not been established.  But even if there was a motivation to combine JP '156 and Tesvich, which there is not, all of the elements of Claims 3, 4, and 7 are not present in the combined teachings.

The courts repeatedly instructed that the invention must be viewed not with the blueprint drawn by the inventor, but in the state of the art that existed at the time.  <u>Interconnect Planning Corp. v. Feil</u>, 774 F.2d 1132, 1138 (Fed. Cir. 1985)  Interpreting a claimed invention as a whole requires consideration of all claim limitations. <u>In re Ochiai</u>, 71 F. 3d 1565, 37 USPQ2d 1127 (Fed. Cir. 1995). In the instant case, the Defendant ignores these basic principles and urges the Court to find that Claims 3 and 4 are identical to Claims 6 and 27 and that all claimed limitations are present in the combined teachings of JP '156 and Tesvich. By simply reiterating what the

examiner found and what the BPAI affirmed does not change the result – the PTO failed to establish *prima facie* obviousness of Claims 3, 4 and 7.

### C.      The Defendant Substituted Its Knowledge for That of Skilled Artisans

In Paragraph 22 of Defendant's Response to Plaintiffs' statement of Undisputed Material Facts, the Defendant cited In re Huang, 100 F.3d 135, 139 (Fed. Cir. 1996) for a proposition that "In the ex parte process of examining a patent application, the PTO lacks the means or resources to gather evidence which supports or refutes the applicant's assertion that the sales constitute commercial success." The Defendant's citation suggests that the only thing that the declarations and statements submitted by the Plaintiffs relate to secondary considerations. It is not so since the declarations, in addition to proving undisputable commercial success also prove nonobviousness and non-anticipation by inherency.

After the applicant met his burden of coming forth with the evidence traversing examiner's rejection, the burden shifted back to the Patent Office to evaluate the evidence and give it evidentiary weight. The examiner and the Board disposed of their duty in a single sentence – the evidence is not persuasive. In effect, the examiner and the Board substituted their personal knowledge for that of skilled artisans.

The correct procedure during examination, if the applicant presents rebuttal evidence, is to consider all of the evidence of record (both that supporting and that rebutting the prima facie case) in determining whether the subject matter as a whole would have been obvious. See, In re Rinehart, 531 F.2d 1048 (CCPA 1976); In re Lewis, 443 F.2d 389 (CCPA 1971). In <u>Application of Carleton</u>, 599 F.2d 1021 (Cust. & Pat. App., 1979), the court instructed on the correct examination of the rebuttal evidence:

> Though the burden of going forward to rebut the prima facie case remains with the applicant, the question of whether that burden has been successfully

carried requires that the entire path to decision be retraced. An earlier decision should not, as it was here, be considered as set in concrete, and applicant's rebuttal evidence then be evaluated only on its knockdown ability. Analytical fixation on an earlier decision can tend to provide that decision with an undeservedly broadened umbrella effect. Prima facie obviousness is a legal conclusion, not a fact. Facts established by rebuttal evidence must be evaluated along with the facts on which the earlier conclusion was reached, not against the conclusion itself.

In this case, the examiner and the Board ignored this basic rule and failed to properly evaluate the rebuttal evidence submitted by the inventor. The final rejection simply repeated the same basis for rejection as was stated in the first Office Action.

See, also <u>In re Beasley</u>, No. 04-1225, 117 Fed. Appx. 739 (Fed. Cir. Dec. 7, 2004) (unpublished), where the Federal Circuit faulted the Board for relying on "the examiner's and its own knowledge as skilled artisans."

Finally, the defendant ignores the facts of secondary considerations as presented by the Plaintiffs. PTO must consider whether any secondary considerations, or objective indicia of non-obviousness, such as the failure of others, a long-felt and unresolved need for the safe method, commercial success, unexpected results, and commercial acquiescence, are sufficient to rebut a prima facie showing of obviousness. See, e.g., <u>Eli Lilly & Co. v. Zenith Goldline Pharm., Inc.,</u> 471 F.3d 1369, 1380 (Fed. Cir. 2006). The Defendant has not done so. For these reasons and those stated above, the Plaintiffs believe that the PTO abused its discretion in rejecting the claims of the application-in-suit.

Therefore, summary judgment should be granted in favor of the Plaintiffs on Plaintiffs' § 103 claim.

## III. THE PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL THEIR CLAIMS BECAUSE DEFENDANT HAS FAILED TO PRESENT ANY EVIDENCE OF A GENUINE ISSUE OF MATERIAL FACT AS TO ANY OF THE DEFENSES

"When a motion for summary judgment is made and supported as provided in this rule [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e) Fed.R.Civ.P. When a party moves for summary judgment based on a lack of evidence by the other party, "Rule 56 requires entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In such a case, there are no facts to present to the Court in the motion, and the moving party must simply show the lack of evidence. See, e.g., *Id.* at 511.

The Plaintiffs have presented a proper motion for summary judgment in accordance with Rule 56, and Defendant has failed to present any evidence to support any of its defenses except reiterating the same arguments that the examiner and the Board made. The Plaintiffs have met their burden of opposing the Defendant's Summary Judgment by raising issues of fact that cannot be resolved on a Summary Judgment Motion. Without question, then, the Plaintiffs have met their burden under Rule 56 and Local Rule 56.1.

The Defendant has utterly failed to meet its undisputable burden to set forth specific facts showing that there is a  genuine issue for trial on any of the claims. In the Opposition, Defendant

19

presents a list of facts, with which it "agrees" or "disagrees." However, the Defendant fails to point out which of these facts raise genuine issues for trial. Hence, Defendant's presentation of facts, agreement or disagreement with the facts raises absolutely no genuine issue of material fact as to any of Defendant's defenses. Accordingly, Defendant has failed to meet its burden under Rule 56, and the Plaintiff's Motion should prevail.

## IV.    DEFENDANT HAS FAILED TO MEET ITS BURDEN OF SHOWING THAT FURTHER DISCOVERY IS NECESSARY CONCERNING ANY OF ITS DEFENSES

Although the Supreme Court has held that under Fed.R.Civ.P. 56(f), 'summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to its opposition,' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986), this protection arises only if the nonmoving party files an affidavit explaining why he or she cannot present facts to oppose the motion." Dreiling v. Peugeot Motors of America, Inc., 850 F.2d 1373, (10th Cir. 988); *see also* Rule 56(f) Fed.R.Civ.P.

The Defendant's bare recitation of the prosecution file history and statements made by the examiner and the Board cannot raise a genuine issue of material fact to overcome the Plaintiff's Motion. Here, other than references to the publications, Defendant's' only facts in opposition to Plaintiff's Motion consist of rote recitations of the examination file history. Yet, the application file history is unquestionably an "undisputed public record. It is axiomatic that a recitation of an "undisputed public record" cannot establish a genuine dispute of material fact. Accordingly, Defendant's attempt to point to the file history fails, as a matter of law, to establish a genuine issue of material fact.

Since the Defendant presents no evidence concerning, and expresses no need for further discovery relating to the examiner's rejection or facts presented by the Plaintiffs, the file history provides Defendant with no support to its Opposition.

Accordingly, the Defendant has failed to come forward with any facts that raise a genuine issue of material fact as to any of Defendant's defenses. Therefore, the Plaintiff's Motion should be granted and summary judgment awarded in favor of the Plaintiffs and against the Defendant on each of Defendant's defenses.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court to enter an order granting their motion for summary judgment and denying the defendant's cross-motion for summary judgment.

Respectfully submitted,


/s/Thomas S. Keaty
Thomas S. Keaty, *pro hac vice*
Attorney for Plaintiff
Keaty Professional Law Corporation
2140 World Trade Center
No. 2 Canal Street
New Orleans, LA 70130
(504) 524-2100
(504) 524-2105 (fax)