## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INNOVATIT SEAFOOD SYSTEMS, LLC., *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| DIRECTOR, UNITED STATES PATENT AND TRADEMARK OFFICE, | ) ) ) ) |
| Defendant. | ) ) ) |

Civil Action No. 06-0822 (JR)

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Bioscience, Inc. v. Thompson*, 269 F.3d 1077 (D.C. Cir. 2001) . . . . . . . . . . 4

*American Wildlands v. Kempthorne*, 478 F. Supp. 2d 92 (D.D.C. 2007) . . . . . . . . . . . . 4

*Ansonia Brass & Copper Co. v. Elec. Supply Co.,* 144 U.S. 11 (1892) . . . . . . . . . . . . . 1

*Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . 6

*Atofina v. Great Lakes Chemical Corp.*, 441 F.3d 991 (Fed. Cir. 2006) . . . . . . . . . 6, 7, 8

*Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197
    (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966) . . . . . . . . . . . . . . 3, 4

*In re Dance*, 160 F.3d 1339 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Donohue*, 766 F.2d 531 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Fregeau v. Mossinghoff*, 776 F.2d 1034 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . 1,2

*Gen. Elec. Co. v. Jewel Incandescent Lamp Co.*, 326 U.S. 242 (1945) . . . . . . . . . . . . 11

*In re Gosteli*, 872 F.2d 1008 (Fed. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Graham v. John Deere*, 383 U.S. 1 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Helene Curtis Industrial v. Sales Affiliates*, 121 F. Supp. 490 (S.D. N.Y.
    1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Highlands Hospital Corp., Inc. v. NLRB*, 508 F.3d 28 (D.C. Cir. 2007) . . . . . . . . . . . . 3

*Hyatt v. Dudas,* 2005 WL 5569663 (D.D.C. Sept. 30, 2005) . . . . . . . . . . . . . . . . . . 2, 3, 4

*Interative Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323 (Fed. Cir.
    2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Jolley*, 308 F.3d 1317 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Kotzab*, 217 F.3d 1365 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Mazzari v. Rogan,* 323 F.3d 1000 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Morall v. Drug Enforcement Admin.*, 412 F.3d 165 (D.C. Cir. 2005) . . . . . . . . . . . . . . 3

*Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368 (Fed. Cir. 2005) . . . . . . . . . . . . . . 6

*Schering Corp. v. Geneva Pharma., Inc.*, 339 F.3d 1373 (Fed. Cir. 2003) . . . . . . . . . 15

*In re Slayter*, 276 F.2d 408 (CCPA 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Titanium Metals Corp. v. Banner*, 778 F.2d 775 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . 8

*In re Travenol Laboratories*, 952 F.2d 388 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . 9

*Upsher-Smith Laboratories, Inc. v. Pamlab, L.L.C.*, 412 F.3d 1319 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 721 F.2d 1540 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Woodruff*, 919 F.2d 1575 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## FEDERAL STATUTES

5 U.S.C. § 706(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

35 U.S.C. § 102(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

35 U.S.C. § 145 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    Plaintiffs Misperceive the Applicable Standard of Review. . . . . . . . . . . . . . . 1

    B.    JP '156 Expressly or Inherently Teaches All the Limitations of Claims 6 and 27, Including the Pressurization Conditions, Use of Ambient Temperature, and Elimination of Bacteria Limitations.
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        1.    JP '156 Expressly Teaches the Claimed Pressurization Conditions.
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        2.    JP '156 Teaches the Use of Ambient Temperature.
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        3.    JP '156 Inherently Teaches the Elimination of Pathogenic Bacteria.
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    C.    The USPTO is Not Raising a New Anticipation Rejection Based on P '156 for the First Time Before this Court . . . . . . . . . . . . . . . . . . . . . . . . . 12

    D.    Plaintiffs' Declaration Evidence that Persons of Skill in the Art Think the Claimed Process is Patentable Is Irrelevant. . . . . . . . . . . . . . . . . . . . . . . . . . 13

    E.    JP '156 Enables the Claimed Pressurization Process and Neither Inventor Voisin's Test Data nor the Four Cookie - Cutter Declarations of Messrs. Chauvin, Michael Voisin, Nelson, and Sunseri Show Otherwise . . . . . . . . 14

    F.    The Board Performed a Correct Obviousness Analysis Considering All of the Additional Limitations Found in Claims 3, 4, and 7 . . . . . . . . . . . . . . . . . . . . 16

    G.    Plaintiffs' Secondary Considerations Argument Lacks Merit Because It Is Unsupported by any Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## INTRODUCTION

Defendant, Director, U.S. Patent and Trademark Office ("USPTO"), respectfully submits this reply in support of its Motion for Summary Judgment, *see* Dkt. No. 25.  The subject matter of Plaintiffs' invention is a process of pressurizing shellfish at ambient temperature that kills pathogenic bacteria without cooking the shellfish.  Substantial evidence supports the determination of the Board of Patent Appeals and Interferences ("Board") that claims 6 and 27 are anticipated by JP '156 and that claims 3, 4, and 7 would have been obvious in view of JP '156 and Tesvich '064.  Additionally, the Board's decision is in accordance with the law and is not arbitrary, capricious, or an abuse of discretion.  Accordingly, this Court should grant summary judgment in favor of the USPTO.

## ARGUMENT[1]

### A.    Plaintiffs Misperceive the Applicable Standard of Review.

Plaintiffs begin their Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Opp. Br."), *see* Dkt. No. 30, by stating that the USPTO "has not satisfied its heavy burden to demonstrate entitlement to judgment as a matter of law by clear and convincing evidence."  Opp. Br. at 2.  Plaintiffs, however, misunderstand the standard of review that governs this case.  *Plaintiffs* bear the ultimate burden of showing that the Board committed reversible error; Defendant does not carry the burden of showing that the Board's decision is correct.  *See Fregeau v. Mossinghoff*, 776 F.2d 1034, 1038 (Fed. Cir. 1985) (in an action under 35 U.S.C. § 145, "the applicant has the laboring oar to establish error by the board").  As explained below,

---

[1]    The background concerning the prior art and Board decision are set forth in detail in Defendant's Motion for Summary Judgment and in its Opposition to Plaintiffs' Cross-Motion for Summary Judgment.  *See* Dkt. Nos. 25 & 30.  The USPTO incorporates that discussion by reference herein.

for Defendant to prevail in its summary judgment motion, it need only show that the Board's findings of fact are supported by substantial evidence and its conclusions of law are correct.

In a section 145 action, the parties may, under some circumstances, submit new evidence to be considered by the Court in addition to the administrative record before the examiner and Board. *See Fregeau,* 776 F.2d at 1037. If the parties do so, then the Court takes on the role of fact-finder and may need to make factual findings. *See Hyatt v. Dudas*, 2005 WL 5569663, *3 (D.D.C. Sept. 30, 2005). In that limited circumstance, it may also review the Board's fact-finding *de novo* to the extent that the new evidence challenges particular Board findings. *See id.* But here, Plaintiffs have not submitted any new evidence to this Court. Instead, Plaintiffs rely *exclusively* upon the record before the Board. Thus, this Court's review is confined to the administrative record developed before the Board.

Because the USPTO is an agency of the U.S. government, the appeal of the Board's decision proceeds in accordance with the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *See Mazzari v. Rogan*, 323 F.3d 1000, 1004 (Fed. Cir. 2003) (holding that the USPTO is an agency subject to the APA, and therefore "a reviewing court must apply the APA's court/agency review standards"). Applying the APA's deferential standard of review, this Court may set aside the Board's factual findings only when they are "unsupported by substantial evidence," and may set aside legal conclusions of the Board that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)*; Mazzari*, 323 F.3d at 1004-5. There is no *de novo* review in this case because the evidence before the Court is limited to the administrative record. *See Hyatt*, 2005 WL 5569663, at *7 ("Because Hyatt offers no other additional evidence aside from his declaration [which the court excluded], the court

2

reviews all of the Board's fact-findings using the more deferential 'substantial evidence' standard.").

Substantial evidence "is something less than the weight of the evidence but more than a mere scintilla of evidence," *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000), and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Instead, courts may reverse for lack of substantial evidence "only when the record is so compelling that no reasonable factfinder could find to the contrary." *Highlands Hosp. Corp., Inc. v. NLRB*, 508 F.3d 28 (D.C. Cir. 2007). Accordingly, "[i]f the evidence in record will support several reasonable but contradictory conclusions," this Court must "not find the Board's decision unsupported by substantial evidence simply because the Board chose one conclusion over another plausible alternative." *In re Jolley*, 308 F.3d 1317, 1320 (Fed. Cir. 2002); *accord Morall v. Drug Enforcement Admin.*, 412 F.3d 165, (D.C. Cir. 2005) ("An agency decision may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view.").

Finally, Plaintiffs correctly point out that summary judgment is appropriate only when there are no genuine issues of any material fact. Opp. Br. at 3. But this does not give Plaintiffs license to ignore the substantial-evidence standard of review, contrary to what Plaintiffs' Opposition seems to suggest. *See* Opp. Br. at 11, 12, 16, & 17 (requesting that purported factual disputes already decided by the Board be brought to trial, thereby reviewing *de novo* the findings

of the Board).  Rather, because Plaintiffs chose not to submit new evidence, Defendant's motion

for summary judgment is to be decided on the administrative record before the Board under the

deferential substantial evidence standard.  *See Hyatt*, 2005 WL 5569663 at *7-*10 (granting

USPTO's motion for summary judgment because plaintiff was unable to show, based on

administrative record, that the Board's findings were unsupported by substantial evidence).  In

cases reviewed under that deferential standard, the district court sits as an appellate tribunal to

determine, as a matter of law, whether the administrative record contains evidence that supports

the agency's underlying findings of fact and whether the agency erroneously applied the law.

*See American Wildlands v. Kempthorne*, 478 F. Supp. 2d 92, 96 (D.D.C. 2007);  *American

Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).  Thus where, as here, a

section 145 case is evaluated based solely on the administrative record, Plaintiffs can defeat

Defendant's summary judgment motion only by showing that substantial evidence does not

support a material finding of the Board.  As discussed below and in Defendant's Memorandum

of Points and Authorities in Support of Defendant's Motion for Summary Judgment, *see* Dkt.

No. 25, the Board's findings of fact are supported by substantial evidence and its legal

conclusions are correct.  Thus, Defendant's motion for summary judgment should be granted.

**B.    JP '156 Expressly or Inherently Teaches All the Limitations of Claims 6 and
27, Including the Pressurization Conditions, Use of Ambient Temperature,
and Elimination of Bacteria Limitations**.

In their opposition to the USPTO's motion for summary judgment, Plaintiffs essentially

repeat their arguments as to why claims 6 and 27 are not anticipated by JP '156.  They likewise

rely upon the same evidence presented to the Board, fail to address the problems with that

evidence, and thus do not successfully demonstrate that the Board's decision is unsupported by

substantial evidence or is in error.

> Independent Claim 27 is representative and provides:
>
> A process of treating raw molluscan shellfish, comprising the steps of:
>
> depositing the raw molluscan shellfish into a pressure vessel and pressurizing the pressure vessel to between 20,000 p.s.i. and 80,000 p.s.i. for 1 - 15 minutes without application of heat at ambient temperature, without causing thermal and mechanical damage to the raw molluscan shellfish, while eliminating pathogenic naturally-occurring marine bacteria in said raw molluscan shellfish, and while retaining sensory characteristics of said raw molluscan shellfish.

R1595. Independent claim 6 is similar to claim 27, but is specifically directed to the treatment of oysters and to the elimination of *Vibrio* bacteria, a specific kind of bacteria. R1594.

Independent claim 3 is similar to claim 27, and adds the process step of retaining the processed shellfish at a temperature below ambient temperature – *e.g.*, under refrigeration conditions. *Id.* Claim 4 depends from claim 3 and is further limited to a pressurization process sufficient to eliminate *Vibrio* bacteria. *Id.*

Claim 7 depends from independent Claim 6, and adds the process step of "banding" the oysters and enclosing them in liquid-impermeable bags prior to pressurization. *Id.*

### 1. JP '156 Expressly Teaches the Claimed Pressurization Conditions.

Claims 6 and 27 require pressurization between 20,000 p.s.i. and 80,000 p.s.i. for 1 to 15 minutes. Plaintiffs argue that JP '156 does not disclose the claimed pressure and time parameters, but instead merely teaches overlapping ranges that are "not sufficient for the finding of anticipation." Opp. Br. at 8; *see also id.* at 9. To support that argument, Plaintiffs rely on *Atofina v. Great Lakes Chemical Corp.*, 441 F.3d 991 (Fed. Cir. 2006). Plaintiffs' argument is incorrect and their reliance on *Atofina* is misplaced.

There is no dispute that JP '156 discloses pressurizing oysters to between approximately

14,200 p.s.i. to 56,800 p.s.i. for 0.5 minutes to 10 minutes.[2]  R1147.  JP '156 also discloses a series of more specific pressure and time ranges: (i) 2000 normal atmospheres (28,440 p.s.i.) for 3 to 10 minutes; (ii) 3000 normal atmospheres (42,660 p.s.i.) for 0.5 to 5 minutes; and (iii) 4000 normal atmospheres (56,880 p.s.i.) for 0.5 to 3 minutes.  *Id.*  These pressure and time ranges either fall within or substantially overlap the claimed pressure and time ranges.

The case law is clear; overlapping ranges, such as those disclosed in JP '156, are sufficient to anticipate claimed ranges.  *See Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1345 (Fed. Cir. 1999) (holding of anticipation where claim recited six different ranges for the contents of a claimed composition and prior art disclosed overlapping ranges for each range limitation); *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1377 (Fed. Cir. 2005) (holding of anticipation where claim required 0.025% to 5% by weight and the prior art disclosed broader range of 0.01% to 20% by weight); *Helene Curtis Indus. v. Sales Affiliates*, 121 F. Supp. 490, 500-1 (S.D. N.Y. 1954) (finding anticipation where claims recited pH range of 7 to 10 or 7 to 9.5 and prior art disclosed overlapping pH range of 8 to 11).  Plaintiffs fail to acknowledge these cases, but instead focus on *Atofina*.  That case, however, is readily distinguishable.

In *Atofina*, the claimed invention was a process to make difluoromethane and required the use of a specific oxygen to methylene chloride ratio.  The Federal Circuit found that a slightly overlapping prior art oxygen to methylene chloride ratio range did not anticipate because it was not "sufficiently specific" for the claimed ratio range.  *Atofina*, 441 F.3d at 999.  Here, the same cannot be said for the prior art temperature and time ranges; they are sufficiently specific to

---

[2]    Plaintiffs contend that JP '156 discloses slightly different pressures, namely, 14,615 to 58,460 p.s.i.  Opp. Br. at 8.  The slight difference, which likely arose from Plaintiffs' use of different factors for converting atmospheres to p.s.i., is not material to the present dispute.

anticipate.  Indeed, as noted earlier, the disclosed pressure and time ranges either fall within or

substantially overlap the claimed pressure and time ranges.  Hence, the substantially overlapping

ranges of JP '156 anticipate the claimed pressure and time ranges.

Even if they do not, JP '156 discloses a specific embodiment, Embodiment 1, that teaches

pressure treating oysters in a bag of sea water at 3000 normal atmospheres, or approximately

42,660 p.s.i., for three minutes.  R1149.  In advancing their erroneous "overlapping ranges

cannot anticipate" argument, Plaintiffs fail to make any mention of Embodiment 1.  However,

the pressure and time parameters in Embodiment 1 fall squarely within the claimed pressure and

time ranges, as shown in the figure below.  They are what is called in patent parlance a "species"

of the broader claimed pressure and time genus.



**Figure 1.**  The shaded rectangle depicts the pressure/duration envelope of Innovatit's claims.  The area enclosed by the bold line depicts the pressure/duration envelope disclosed in JP '156.

The ___ Federal Circuit and its predecesso ___ r court, the Court of

Custom and Patent Appeals, have repeatedly held that the disclosure of a species in the prior art

is sufficient to anticipate a later-claimed genus. *Atofina*, 441 F.3d at 999 ("*Titanium Metals* stands for the proposition that an earlier species reference anticipates a later genus claim, not that an earlier genus anticipates a narrower species."); *In re Gosteli*, 872 F.2d 1008, 1010 (Fed. Cir. 1989); *Titanium Metals Corp. v. Banner*, 778 F.2d 775, 781-2 (Fed. Cir. 1985); *In re Slayter*, 276 F.2d 408, 411 (CCPA 1960). Given this well-settled precedent regarding a species disclosure, there can be no doubt that Embodiment 1 of JP '156 anticipates the claimed pressure and temperature ranges.

In sum, substantial evidence supports the Board's finding that the pressure and time ranges of claims 6 and 27 are anticipated by JP '156 in light of (i) the overlapping ranges taught in JP '156 or (ii) the species pressure and temperature disclosure in Embodiment 1.

## 2.    JP '156 Teaches the Use of Ambient Temperature.

Claims 6 and 27 require that the pressurization process be carried out at "ambient temperature." This is what is called a "negative limitation." A "negative limitation" excludes a step, here, the application of heat, rather than includes a step, for example, the application of pressure for a particular duration.

Plaintiffs argue that JP '156 does not disclose that the process is carried out at ambient temperature, but instead "is silent on the temperature factor." Opp. Br. at 8; *see also id.* at 9. Plaintiffs are correct that JP '156 simply discloses the pressurization process without any mention of heat, thereby teaching that no heat should be used:

> [A]fter raw shellfish with a shell and sea water have been accommodated into a plastic container and after said plastic container with said raw shellfish and said sea water has been sealed, said sealed plastic container is placed into a high pressure processing device (for example, an MCT-150 model produced by Mitsubishi Heavy Industries

8

Corporation) so as to apply a predetermined high pressure.

R1148.  Thus, it is this "silence" that teaches a person of ordinary skill in the art not to apply heat during the pressurization process.

The Federal Circuit has held that a prior art reference need *not* contain an express teaching of a negative limitation in order for the reference to anticipate that limitation.  *See Upsher-Smith Labs., Inc. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1322 (Fed. Cir. 2005) (holding that a prior art reference that optionally *includes* antioxidants in vitamin formulation anticipated claimed formulation that excluded antioxidants).  Thus, that JP '156 discloses ambient temperature, by not teaching the use of heat, does not mean that it cannot anticipate this limitation.

Moreover, a person of ordinary skill in the art would understand from JP '156 that the method disclosed therein is to be carried out at ambient temperature, *i.e.*, without the application of heat.  *See In re Travenol Labs*, 952 F.2d 388, 390 (Fed. Cir. 1991) (holding that prior art reference anticipated limitation that primary bag be plasticized with DEHP, even though reference did not expressly disclose plasticization with DEHP, because "one skilled in the art would reasonably understand or infer from [the reference that it disclosed that] a primary bag was plasticized with DEHP").  Indeed, Inventor Voisin explained that the process taught in JP '156 *is* to be carried out at ambient temperature:

> I, Ernest A. Voisin, . . . declare and say: . . . That I conducted an exhaustive series of tests at the facilities of Motivatit Seafoods, Inc. in Houma, Louisiana following the steps outlined in Japanese application No. 4-356156 [JP '156]; . . . That the tests started with oysters (the subject of the Japanese reference [JP '156]) being taken from a cooler where they were kept at 38 degrees Fahrenheit and then allow to rest to come to the ambient temperature of about

9

> 50 degrees Fahrenheit; That *in accordance with the*
> *teachings of the cited reference*, oysters in shells were
> placed in a pressure chamber with water; That the pressure
> chamber was then pressurized to 1000 ATM *at ambient*
> *temperature of about 50 degrees Fahrenheit* . . .

R1433 (emphases added); *see also* R1581; Opp. Br. at 10 (noting that Inventor Voisin duplicated

the process of JP '156 using ambient temperature).

Finally, Plaintiff Innovatit appears to have conceded before the Board that the JP '156

process is carried out at ambient temperature.  Plaintiff Innovatit characterized JP '156 as

follows: "[JP '156] teaches a process of opening shells of raw oysters by subjecting the raw

oysters to hydrostatic pressure of 1,000 ATM - 4,000 ATM (14,223 - 56,892 p.s.i.) for 0.5 - 10

minutes *at ambient temperature*."  R1581 (emphasis added).  Based on Plaintiff Innovatit's

admission that the JP '156 process is to be carried out at ambient temperature, as well as the lack

of any teaching in JP '156 to apply heat, the Board's finding that JP '156 anticipates the ambient

temperature limitation of claims 6 and 27 is supported by substantial evidence.

### 3. JP '156 Inherently Teaches the Elimination of Pathogenic Bacteria.

Plaintiffs argue that JP '156 does not inherently disclose the elimination of pathogenic

bacteria, in particular, *Vibrio vulnificus*.  Opp. Br. at 10.  Plaintiffs' argument lacks merit.  "It is

a general rule that merely discovering and claiming a new benefit of an old process cannot

render the process again patentable."  *In re Woodruff*, 919 F.2d 1575, 1578 (Fed. Cir. 1990).

That is exactly what the claimed process does; it claims a new benefit of the old JP '156 process.

As explained earlier, JP '156 discloses the same process as claimed in claims 6 and 27.

Claims 6 and 27 recite that such process results in the elimination of pathogenic bacteria,

including *Vibrio vulnificus*.  If the process of JP '156 mirrors the claimed process, it logically

follows that two processes will achieve the same result – elimination of pathogenic bacteria.  To

use the Board's words: "[S]ince the claimed method steps are the same as taught by JP '156, the

claimed characteristic of eliminating pathogenic *Vibriones* bacteria is an inherent property and

result of the reference method, absent any clear and convincing evidence to the contrary. . . ."

R1668.  That the inventors named on JP '156 did not recognize this result does not render the

claimed process patentable.  *See W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1548

(Fed. Cir. 1983) (observing that " it is therefore irrelevant that those using the invention may not

have appreciated the results . . . . Were that alone enough to prevent anticipation, it would be

possible to obtain a patent for an old and unchanged process.") (applying *Gen. Elec. Co. v. Jewel

Incandescent Lamp Co.*, 326 U.S. 242, 248 (1945) & *Ansonia Brass & Copper Co. v. Elec.

Supply Co.*, 144 U.S. 11, 18 (1892)).

Plaintiffs contend that testing performed by Inventor Voisin raises an issue of fact as to

"whether the elimination of harmful bacteria in shellfish inevitably flows from following the

teachings of JP '156."  Opp. Br. at 10-11.  Nothing could be further from the truth.  Plaintiffs

have provided no test data indicating that the JP '156 process does not successfully destroy

harmful pathogenic bacteria.  Plaintiffs' data purporting to show that the JP '156 process is not

always successful in shucking oysters is not relevant to the question of whether JP '156

inherently teaches elimination of pathogenic bacteria.  Accordingly, Plaintiffs are unable to show

that the Board's finding of inherency is unsupported by substantial evidence.

11

### C.    The USPTO is Not Raising a New Anticipation Rejection Based on JP '156 for the First Time Before this Court.

Plaintiffs incorrectly argue that the USPTO raises a new issue for the first time before the Court, "asserting that Claims 6 and 27 of the application-in-suit are anticipated only by JP '156" without reference to Cheftel.  Opp. Br. at 5.  Neither the examiner nor the Board ever rejected claims 6 and 27 based upon JP '156 in combination with Cheftel.  Both consistently rejected claims 6 and 27 based solely upon JP '156.  Thus, the USPTO correctly discussed claims 6 and 27 as anticipated by JP '156 alone.

The examiner merely cited to Cheftel as evidence that it was well known in the art that high pressure treatment of seafood destroyed pathogenic microorganisms such as *Vibrio* bacteria.  R1636.  In fact, the examiner explained his citation of that reference to Plaintiff Innovatit during prosecution:

> [T]he Cheftel reference was merely used as an evidentiary reference to show that high pressure preservation of seafood, via destruction of  bacteria such as *Vibrio*, was commonly known.  It does not add to the teachings of JP ['156], such as in a 103 rejection, but rather merely  provides evidence of the teaching of the JP ['156] patent.

R1638-39.

Similarly, the Board cited to Cheftel as evidence of what was known in the art regarding the effect of pressure on seafood.  To that end, the Board stated:  "Claims 6 and 27 stand rejected under section 102(b) as anticipated by JP '156, *as evidenced by* Cheftel."  R1667 (emphasis added).  In using the words "as evidenced by Cheftel," the Board did not reject claims 6 and 27 as anticipated by JP '156 *and* Cheftel.  Furthermore, it was entirely proper for the Board to cite to Cheftel for that which was well-known in the art.  *See In re Donohue*, 766 F.2d 531, 534 (Fed.

12

Cir. 1985) (stating that a second reference may be cited to show what is known in the art in an

anticipation rejection).  Therefore, the USPTO's discussion of the anticipation rejection of

claims 6 and 27 before this Court is consistent with the Board's rejection.

>    **D.    Plaintiffs' Declaration Evidence that Persons of Skill in the Art Think the Claimed Process is Patentable Is Irrelevant.**

Plaintiffs argue that persons of skill in the art of marine biology and seafood processing

think that JP '156 does not inherently teach the elimination of pathogenic bacteria limitation and

that the claimed process is thus "novel, nonobvious and a true breakthrough."  Opp. Br. at 13-16

(citing letters from Dr. Marilyn Kilgen; Mr. Robert L. Collette; and Dr. Michael W. Moody).

The examiner and Board correctly discounted Plaintiffs' self-serving letters because opinion

testimony, even from persons of skill in the art, is not part of the anticipation inquiry.  Whether a

reference anticipates a claimed invention is a question to be answered based solely upon the

four-corners of the reference.  Section 102(b) says nothing about opinion testimony on the

novelty of a claimed invention.  *See* 35 U.S.C. § 102(b).

Even assuming, *arguendo*, that opinion testimony factors into the anticipation inquiry,

the letters from Dr. Kilgen, Mr. Collette, and Dr. Moody shed no meaningful light on whether

claims 6 and 27 are anticipated by JP '156.  Rather, those skilled artisans each wrote about the

value of the claimed process to the scientific community; they did not parse out the various

limitations of claims 6 and 27 and opine on whether those limitations were taught in JP '156.

Dr. Kilgen evaluated the use of high pressure as a technique to accomplish pasteurization:

"Overall, the novel use of hydrostatic high pressure processing for the pasteurization of live

shellstock oysters to eliminate or reduce to non-detectable levels, the naturally-occurring marine

13

organism *Vibrio vulnificus*, and other *vibrio* species, and for mechanical shucking of shell stock oysters, will result in significant benefit to the global economy of the oyster and other molluscan shellfish industries." R1237.  Similarly, Mr. Collate opined that Inventor Voisin's high pressure processing "is truly impressive when you consider the amount of time and money spent by universities and scientists worldwide to solve this concern." R1240.  Mr. Moody simply commented that he "was not aware of anyone suggesting that [high pressure treatment for the elimination of *Vibrio vulnificus*] be used . . . prior to Mr. Voisin." R1241.  Thus, the letters from Dr. Kilgen, Mr. Collate, and Dr. Moody are irrelevant in the anticipation analysis.

> **E.     JP '156 Enables the Claimed Pressurization Process and Neither Inventor Voisin's Test Data nor the Four Cookie - Cutter Declarations of Messrs. Chauvin, Michael Voisin, Nelson, and Sunseri Show Otherwise.**

Plaintiffs assert that test data from Inventor Voisin shows that JP '156 does not provide an enabling disclosure.  Opp. Br. at 10.  In particular, Plaintiffs contend that Inventor Voisin's "tests, conducted at ambient temperature of 50° F . . . using the examples listed in the Japanese publication, proved that the method of oyster shucking as described in JP '156 was unreliable and in some cases could not be performed without the application of heat." *Id.*  Plaintiffs' enablement argument is misdirected.  "An anticipatory reference need only enable subject matter that falls within the scope of the claims at issue, nothing more." *Schering Corp. v. Geneva Pharma., Inc.*, 339 F.3d 1373, 1381 (Fed. Cir. 2003).

Here, claims 6 and 27 do not require oysters to be shucked; they simply set forth a basic pressurization process, the result of which is elimination of *Vibrio* bacteria.  *See* R1670.  Consequently, JP '156 must teach only the pressurization process itself to be sufficiently enabled.  Certainly, JP '156 does so, as evidenced by the fact that Inventor Hoisin carried out the

process taught in JP '156 in his testing.  R1433 (performing tests "following the steps outlined in [JP '156]").  Thus, Inventor Voisin's test data –even if it demonstrates that the process taught in JP '156 does not reliably shuck all oysters all of the time–fails to show that it is not enabled for claims 6 and 27.

Plaintiffs further allege that four skilled artisans–Messrs. Chauvin, Michael Hoisin, Nelson, and Sunseri – have attested in declarations that JP '156 does not enable a method for bacteria elimination "based upon their extensive knowledge and experience in the field." Opp. Br. at 15.  At the outset, the evidentiary value of the Chauvin, Michael Voisin, Nelson, and Sunseri declarations is suspect because the four declarations are identical, except for the introductory language setting forth each declarant's specific background information. *Cf.* R1413-414 (Chauvin), R1416-417 (Micheal Voisin), R1418-419 (Sunseri), & R1420-421 (Nelson).  Moreover, the four cookie-cutter declarations substantively contain nothing more than generic statements about JP '156 and why they disagree with the examiner that a person of skill in the art would have understood JP '156 to teach a pressurization process that inherently results in the elimination of pathogenic bacteria.  For example, each declaration contains the following affirmation, unsupported by any test data:

> [I]t would not have occurred to me to read the Japanese application or Cheftel's page, singularly or in combination, as a guiding manual or even a suggestion for elimination of *Vibrio Vulnificus* in molluscan shellfish.  I submit that it is not inherent in the Japanese reference and is not recognized inherent by me, based upon my experience and knowledge of seafood processing, that the method steps of the Japanese application would result in elimination of bacteria in molluscan shellfish.  I have reached the same conclusion after considering the Cheftel's page.  I also disagree with the examiner's statement that a person of ordinary skill in the art would have expected the same result (Vibrio elimination) after having read the Japanese reference.

15

R1413 (Chauvin), R1416 (Micheal Hoisin), R1419 (Sunseri), & R1421 (Nelson).  Given these

kinds of conclusory statements, it is clear that Plaintiffs proffered the four declarations to wage

essentially a "he said-she said" battle with the examiner over the import of the JP '156.  They did

not attempt to advance the enablement issue by demonstrating via evidence from testing that the

process of JP '156 would not result in elimination of bacteria.  Consequently, the examiner and

Board correctly found the four declarations to be unpersuasive.  *See* R1671-672.  Thus, the

Chauvin, Michael Voisin, Nelson, and Sunseri declarations do not undermine JP '156 as an

enabled prior art reference that anticipates claims 6 and 27.

> ### F.    The Board Performed a Correct Obviousness Analysis Considering All of the Additional Limitations Found in Claims 3, 4, and 7.

Plaintiff argues that the Board, in performing its obviousness analysis, failed to consider

all of the additional limitations found in claims 3 and 4, such as the process steps of loading

pressure transmitting fluid into the pressure vessel after the shellfish were deposited in a

specially-provided pressure vessel.[3]  Opp. Br. at 12.  Plaintiffs assert that the Board instead

issued "a wholesale rejection . . . simply because Claim 3 recites similar pressure and time

values as recited in Claims 6 and 27."  *Id.* at 12-13.  Plaintiffs' argument is flawed.

At the outset, it is important to note that Plaintiff Innovatit did not challenge the

examiner's obviousness findings before the Board.  Plaintiffs raise this challenge for the first

---

[3]    The examiner and Board rejected claims 3, 4, and 7 as obvious in view of JP '156 and Tesvich '064.  In their opposition brief, Plaintiffs did not mention claim 7; they only discussed claims 3 and 4.  *See* Opp. Br. at 12-13.  Additionally, as between those two claims, Plaintiffs appear to treat claim 3 as representative.  The USPTO shall follow suit and focus its response to Plaintiffs' obviousness argument on claim 3.  *See In re Dance*, 160 F.3d 1339, 1340 n. 2 (Fed. Cir. 1998) (observing that claims stand or fall together unless argued separately).

16

time before this Court.[4]  Before the Board, Plaintiff Innovatit only reiterated its inherency and

enablement arguments, which have nothing to do with an obviousness analysis.  *See* R1581-93.

Because Plaintiff Innovatit did not put the examiner's obviousness findings at issue, the Board

did not expound on them, but simply adopted them in total.  *See* R1672.

    Turning to the examiner's findings, he did not dismiss the additional limitations of claims

3 and 4.  Instead, the examiner observed that JP '156 expressly or inherently discloses all of the

process steps of claims 3, 4, and 7, except for the refrigeration and banding steps.  R1636.  As

such, the examiner focused on whether the two limitations missing from JP '156 would have

been obvious based upon the combination of JP '156 and Tesvich '064.  The examiner did not

state that the process steps of claim 3 were identical, or even virtually identical, to the process

steps of claims 6 and 27.  Instead, the examiner stated: "[JP '156] teaches the above mentioned

concepts."  *Id.*  By "abovementioned concepts," the examiner referred to his earlier finding that

JP '156 "teach[es] a method of treating shellfish comprising exposing raw oysters (paragraph

0005) contained in plastic bags filled with sea-water (paragraph 0010) to hydrostatic pressures of

14,223-56,892 psi for 0.5-10 minutes at ambient temperatures without heating, thermal damage,

or mechanical damage (paragraph 0006)."  R1635-36.

    The examiner was correct in his finding that JP '156 discloses the process steps of claim

3.  That claim recites the steps of: (i) "providing a pressure vessel;" (ii) "depositing said shellfish

---

[4]      In their cross-motion for summary judgment, Plaintiffs asserted that the Board
failed to make the requisite fact findings pursuant to *Graham v. John Deere*, 383 U.S. 1 (1966).
*See* Dkt. No. 26 at 24-28.  Now, in response to the USPTO's motion for summary judgment,
Plaintiffs have raised a different challenge, asserting that the Board failed to consider the
additional process steps of claim 3.  Plaintiffs' obviousness arguments thus appear to be an ever-
moving target.

into said pressure vessel;" (iii) "loading a pressure transmitting fluid into said pressure vessel;" and (iv) "pressurizing said pressure vessel . . . ."  R1594.  Embodiment 1 of JP '156 teaches:

> Two oysters with shells and *sea water* at an amount equivalent to that of said oysters are accommodated into a plastic bag; after said plastic bag with oysters and sea water accommodated has been sealed, said sealed plastic bag is placed into a *high pressure processing device, the MCT-150 model* produced by Mitsubishi Heavy Industries Corporation; a high pressure at 3000 normal atmosphere is applied for 3 minutes so as to manufacture processed oysters of the present invention.

R1149 (emphases added).  The MCT-150 high pressure processing device and sea water taught in JP '156 satisfy the "pressure vessel" and "transmitting fluid" limitations, respectively, of claim 3.  Plaintiffs cannot argue to the contrary since neither claim 3 nor the specification recites any further requirements for the pressure vessel or transmitting fluid limitations that would preclude the MCT-50 and sea water of Embodiment 1 from satisfying these limitations.  Moreover, there is nothing in claim 3 that requires the oysters to be placed into the pressure vessel before loading the pressure-transmitting fluid.  *See Interative Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1342 (Fed. Cir. 2001) ("Unless the steps of a method actually recite an order, the steps are ordinarily not construed to require one.").  Furthermore, Plaintiffs are incorrect that "JP '156 does not teach that a pressure-transmitting fluid should be deposited directly into the pressure vessel, which contains the shellfish."  Opp. Br. at 13.  JP '156 teaches processing the oysters following the same chronological steps as claim 3, as shown in the following table:

18

|  | **Claim 3** | **Embodiment 1 of JP '156** |
|---|---|---|
| **Step 1** | "providing a pressure vessel;" | Embodiment 1 teaches using a MCT-50 model high pressure processing device, R1148-49 |
| **Step 2** | "depositing said shellfish into the pressure vessel;" | "Two oysters with shells and sea water at an amount equivalent to that of said oysters are accommodated into a plastic bag," R1149 |
| **Step 3** | "loading a pressure transmitting fluid into said pressure vessel;" | "[S]aid sealed plastic bag" with the oysters and sea water sealed inside "is placed into a high pressure processing device, the MCT-150 model," *Id.* |
| **Step 4** | "pressurizing said pressure vessel . . . ." | "a high pressure at 3000 normal atmosphere is applied," *Id.* |

Therefore, JP '156 discloses the additional process steps of claim 3 that Plaintiffs contend are not recited anywhere in the reference.  Accordingly, substantial evidence supports the Board's finding that claims 3, 4, and 7 would have been obvious in view of JP '156 together with Tesvich '064.

> **G.    Plaintiffs' Secondary Considerations Argument Lacks Merit Because It Is Unsupported by any Evidence.**

Plaintiffs argue that they rebutted the Board's *prima facie* obviousness rejection with evidence of long-felt need and praise by others/industry recognition.  Opp. Br. at 16-17.  There are two problems with Plaintiffs' argument.

First, Plaintiffs did not make any secondary consideration argument, nor offer any evidence of long-felt need or praise by others/industry recognition, before the Board.  *See* R1581-93.  Thus, there is no way that the Board could have considered whether Plaintiffs' evidence successfully rebutted the examiner's *prima facie* obviousness rejection.

Second, Plaintiffs contend that they received numerous awards, such as the "Seafood Processor of the Year," and industry praise for the claimed process.  *See* Opp. Br. at 16-17.

However, the record is devoid of any evidence of any awards or praise, and Plaintiffs point to none in their opposition brief.  *See id.*  Absent such evidence, Plaintiffs' contention is mere attorney argument, proving nothing.  Consequently, Plaintiffs' secondary considerations argument lacks merit.

## <u>CONCLUSION</u>

Because the Board's decision is not arbitrary, capricious, an abuse of discretion, or contrary to law and is supported by substantial evidence, Defendant respectfully requests that this Court enter an order granting its motion for summary judgment and denying Plaintiffs' cross-motion for summary judgment.

January 4, 2008                                     Respectfully submitted,

                                           /s/ by DVH                  
                                       JEFFREY A. TAYLOR, D.C. Bar # 498610
                                       United States Attorney

                                          /s/                         
                                       RUDOLPH  CONTRERAS, D.C. Bar # 434122
                                       Assistant United States Attorney

                                          /s/ Robin M. Meriweather      
                                       ROBIN M. MERIWEATHER, D.C. Bar # 490114
                                       Assistant United States Attorney
                                       Civil Division
                                       555 Fourth Street, N.W.
                                       Washington, D.C.  20530
                                       202/307-1249; 202/514-8780 (facsimile)

Of Counsel:
STEPHEN WALSH
Acting Solicitor

BENJAMIN D. M. WOOD
JANET GONGOLA
Associate Solicitors
United States Patent and Trademark Office

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INNOVATIT SEAFOOD SYSTEMS, LLC., *et al.*, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| DIRECTOR, UNITED STATES PATENT AND TRADEMARK OFFICE, | ) ) ) ) |
| Defendant. | ) ) ) |

Civil Action No. 06-0822 (JR)

## <u>DEFENDANT'S REPLY TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE</u>

Plaintiffs disagree with various paragraphs of Defendant's Statement of Material Facts In

Support of Defendant's Motion for Summary Judgment (hereinafter "USPTO's Statement of

Material Facts"), *see* Dkt. No. 25.[5]  *See* Opp. Br. at 6-7 (objecting only to paragraphs 20-22, 24,

---

[5]    For the Court's convenience, the USPTO provides the following table correlating the USPTO's Statement of Material Facts with Plaintiffs' objections thereto.

| USPTO's Statement of Material Facts (Dkt. No. 25) | Plaintiffs' Response (Dkt. No. 31) |
|---|---|
| 20 | a |
| 21 | b |
| 22 | c |
| 24 | d |
| 27 | e |
| 31 and 34 | f |
| 35 | g |

27, 31, 34, and 35 of the USPTO's Statement of Material Facts).[6]  When Plaintiffs' arguments

are carefully dissected, however, it is clear that they do not actually disagree with the USPTO's

Statement of Material Facts.  Rather, they merely quibble with the USPTO's word choices, as

explained in detail below.  Additionally, Plaintiffs argue irrelevant details or make general

denials, neither of which establish that substantial evidence fails to support a material finding of

the Board.  There are, consequently, no genuine issues of material fact in this case.  This Court

thus is poised to resolve this case on summary judgment, employing the substantial evidence

standard of review, as explained earlier.  *See* Reply Memorandum at 2-5.

      a.      Plaintiffs purport to disagree with the USPTO's statement in paragraph 20 that

"oysters treated in accordance with the process disclosed in Embodiment 1 of JP '156 remain

raw, *i.e.*, retain sensory characteristics of raw shellfish."  Opp. Br. at 6.  However, Plaintiffs

quote a paragraph from JP '156 that actually supports the USPTO's statement of fact.

Specifically, Plaintiffs point to Note 2 of JP '156, which states: "[W]hen the shells of processed

oysters of the present invention are opened, *the condition does not substantially differ from that*

*of raw oysters*."  R1150 (emphasis added).  The language "does not substantially differ from that

of raw oysters" means the same thing as "remain raw."  Accordingly, substantial evidence

---

      [6]      Because Plaintiffs do not disagree and/or object to the remaining paragraphs 1-19,
23, 25-26, 28-30, and 32-33 of the USPTO's Statement of Material Facts, the USPTO presumes
that Plaintiffs agree with those statements.  *See* Fed. R. Civ. P. 56 (e)(2) (setting forth an
opposing party's obligation to respond and stating that "[i]f the opposing party does not so
respond, summary judgment should, if appropriate, be entered against that party."); Local Rule
7(h) ("In determining a motion for summary judgment, the court may assume that facts identified
by the moving party in its statement of material facts are admitted, unless such a fact is
controverted in the statement of genuine issues filed in opposition to the motion.").

supports the Board's finding that the retention-of-sensory-characteristics limitation of claims 6 and 27 is taught in JP '156.

**b-c.**    Plaintiffs object to the USPTO's statements in paragraphs 21 and 22 that elimination of pathogenic marine bacteria is inherently taught in JP '156 as unsupported by any empirical data.  Opp. Br. at 6-7.  Plaintiffs cannot avoid summary judgment merely by denying facts.  Mere denials are insufficient to create a genuine issue of material fact.  *See* Fed. R. Civ. P. 56(e)(2) (providing that an adverse party, in opposing a motion for summary judgment, "may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial"); *see also Burke v. Gould*, 286 F.3d 513, 517-20 (D.C. Cir. 2002); *Barmag Barmer Maschinefabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984).  Furthermore, it is not necessary for the Board to support its finding of inherency with empirical data.  The fact that the process of JP '156 is substantially the same as the claimed process in terms of pressure, duration, and lack of heat is substantial evidence supporting Board's inherency finding.  *See MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d 1362, 1366 (Fed. Cir. 1999) (holding that since the prior art parameters substantially coincide with those disclosed in the patent, the prior art method achieves the same result as the patented method).  Finally, Plaintiffs could have submitted, but did not, empirical evidence to rebut the Board's finding that JP '156 inherently teaches elimination of pathogenic bacteria.  The fact that they did not speaks volumes.  Thus, for these reasons, the Board's finding that the process of JP '156 inherently kills harmful bacteria is supported by substantial evidence.

3

**d.**    Plaintiffs purport to disagree with the USPTO's statement in paragraph 24 that "Tesvich ['064] discloses a method of destroying *Vibrio vulnificus* bacteria" and that the method uses "rapid cool-down."  Opp. Br. at 7.  Whether Tesvich '064 discloses a method that eliminates harmful bacteria or merely reduces it to lower levels is *not material* to this case.  The examiner and Board relied on Tesvich '064 only for its teaching of banding and post-treatment refrigeration of oysters, not for its teaching that mild heat-treatment successfully eliminates harmful bacteria without cooking the oysters.  R1673 ("The examiner applies Tesvich ['064] to show these well known features [referring to banding and post-treatment refrigeration]."); R1637 ("It would have been obvious to one of ordinary skill in the art to incorporate the refrigerated storage of Tesvich ['064] . . . It would have been obvious to one of ordinary skill in the art to incorporate the bands of Tesvich ['064] . . . .").  Similarly, while the USPTO's characterization of the cool-down portion of the Tesvich '064 process as "rapid" may be subject to debate, that dispute also is *not material* in any way to the present case.  Again, the examiner and Board relied on Tesvich '064 just for its teaching of banding and post-treatment refrigeration, not that the cool-down process is "rapid."  *Id.*  Hence, the Board's finding that claims 3, 4, and 7 would have been obvious in view of JP '156 and Tesvich '064 is supported by substantial evidence.

**e.**    Plaintiffs object to the USPTO's statement in paragraph 27 that a person of skill in the art would have been motivated to refrigerate raw shellfish, as taught in Tesvich '064, following the pressurization treatment of JP '156, as stating a legal conclusion and not a contested fact.  Opp. Br. at 7.  It is well-settled that whether a person of skill in the art would have been motivated to combine the prior art to arrive at the claimed invention *is* a question of

4

fact. *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000) ("The presence or absence of a

motivation to combine references in an obviousness determination is a pure question of fact.").

      **f.**      Plaintiffs complain that the USPTO's assertions in paragraphs 31 and 34 imply

that Inventor Voisin only tested oysters at 3000 ATMs for 0.5 to 5 minutes with an 80% success

rate. Opp. Br. at 7. In paragraphs 31 and 34, the USPTO did not state that the aforementioned

conditions were the only ones used by Inventor Voisin in his testing. The USPTO does not

dispute that Inventor Voisin tested oysters at other conditions, including at pressures of 1000

ATM, 2000 ATM, 3000 ATM, and 4000 ATM, with and without the application of heat. *See*

R1596-97. Nevertheless, contrary to Plaintiffs' statement of fact, the USPTO contends that

Inventor Voisin's testing is irrelevant because it does not establish that JP '156 is not enabled.

In fact, that Inventor Voisin replicated the method of JP '156 shows that the reference *is* enabled.

*See* R1433. Thus, in objecting to paragraphs 31 and 34 of the USPTO's Statement of Material

Facts, Plaintiffs are attempting to create issues of fact where none exist.

      **g.**      Plaintiffs object to the USPTO's statement that Plaintiff Innovatit failed to

provide any evidence, other than conclusory declarations from Messrs. Chauvin, Michael Voisin,

Nelson, and Sunseri, to rebut the examiner's *prima facie* case that the process of JP '156

inherently results in elimination of pathogenic bacteria. Opp. at 7-8. Plaintiffs assert that the

record contains "opinions of persons skilled in the art about the technical breakthrough that

inventor Voisin achieved in his solution to the long-existing problem." *Id.* Plaintiffs'

characterization of its evidence as "opinions of persons skilled in the art" alone defeats its claim

of a genuine issue of fact. Opinions are not enough to raise a genuine issue of fact. *See* Fed. R.

Civ. P. 56(e)(2). Moreover, as explained earlier, Plaintiffs offered no empirical evidence, for

example, concrete test data, showing that JP '156 did not result in elimination of pathogenic

bacteria. Therefore, as set forth earlier, substantial evidence supports the Board's finding that

JP '156 inherently results in elimination of bacteria.

Respectfully submitted,

_____/s/_____

JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_____/s/_____

RUDOLPH  CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/ Robin M. Meriweather_____

ROBIN M. MERIWEATHER, D.C. Bar # 490114
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514-7198; 202/514-8780 (facsimile)

Of Counsel:

STEPHEN WALSH
Acting Solicitor

BENJAMIN D. M. WOOD
JANET GONGOLA
Associate Solicitors
United States Patent and Trademark Office

January 4, 2008

6