UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INNOVATIT SEAFOOD SYSTEMS, LLC, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No. 06-0822 (JR) |
| : | |
| COMMISSIONER FOR PATENTS, : | |
| : | |
| Defendant. : | |
| _____ : | |
| INNOVATIT SEAFOOD SYSTEMS, LLC, : | |
| *et al.*, : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | Civil Action No. 06-0825 (JR) |
| : | |
| COMMISSIONER FOR PATENTS, : | |
| : | |
| Defendant. : | |

### MEMORANDUM

Inventor Earnest A. Voisin of Innovatit Seafood discovered that subjecting shellfish to high pressure can rid them of harmful pathogens without cooking them. Voisin applied for a patent on his pressure-pasteurization process (the '725 application), as well as for the product that this process produced (the '704 application). The patent examiner rejected both applications. It seems that, although the pasteurization achieved by Voisin's method of applying pressure to shellfish is novel, the idea of applying pressure to shellfish, and a process for producing a pasteurized, shucked oyster, are not. A Japanese patent to Yasushi (JP '156) teaches mollusk pressurization as a means of relaxing the adductor muscle and shucking the shellfish,

and a U.S. patent issued to Tesvich (the '064 patent) produces an oyster that is pasteurized and shucked.  The first question presented in this case is whether the application of the old process to the new purpose, without any meaningful change in the procedure, is patentable over the Japanese reference.  The second question is whether a product is patentable if disclosed by an earlier reference to a different process.  The answer to both questions is No.

## Standard of Review

These cases arise under 35 U.S.C. § 145, which authorizes a patent applicant to sue for a patent in this district when "dissatisfied" with the final decision of the Board of Patent Appeals and Interferences.[1]  In such a suit, the PTO is treated as an administrative agency and its decisions are afforded the deference that other agencies receive when adjudicating facts within their zone of competence.  See Mazzari v. Rogan, 323 F.3d 1000, 1004-05 (Fed. Cir. 2003).  Findings of fact are subject to the "substantial evidence" standard.  Id. at 1005.  Under the Federal Circuit's somewhat elusive precedents, anticipation is regarded as a question of fact, see In re Schreiber, 128 F.3d 1473, 1477 (Fed. Cir. 1997), while obviousness is regarded as "a question of law based on underlying

---

[1] The more common practice is to appeal directly to the Federal Circuit under 35 U.S.C. § 141.

findings of fact." In re Gartside, 203 F.3d 1305, 1316 (Fed. Cir. 2000).  In short, the presumption is that the technical expertise of the PTO and the Board is entitled to substantial deference – its finding of anticipation will be upheld if there is substantial evidence in the record to support it, and its finding of obviousness will be affirmed if appropriate based on its own findings of fact regarding the state of the art.

**No. 06-0822 – The '725 Process Patent Claim**

**1) Anticipation as to Claims 6 and 27**

The applicable standard of review drives the answers to many of the preliminary arguments that Innovatit raises in attempting to refute the PTO's finding that Claims 6 and 27 of its patent application are anticipated by the Japanese reference. A finding of anticipation under 35 U.S.C. § 102 "requires that all of the elements and limitations of the claimed subject matter must be expressly or inherently described in a single prior art reference." Elan Pharm. Inc., v. Mayo Found., 304 F.3d 1221, 1227 (Fed. Cir. 2002).  Innovatit claims that its patent contains two limitations different from JP '156: (1) it discloses a different range of times and pressures for the prescribed mollusk pressurization, and (2) it teaches doing the process at ambient temperature, whereas JP '156 is silent as to temperature.  There is substantial evidence in the record to support the Board's

conclusion that these limitations do not distinguish the '725 application from the Japanese reference.

First, the time-pressure envelope disclosed by JP '156 is covered almost entirely by the range taught in Innovatit's application. See [25] at 15, fig. 1, for a helpful visual display. While the Federal Circuit has declined to find anticipation in cases of very slight overlap, see Atofina v. Great Lakes Chem. Corp., 441 F.3d 991, 1000 (Fed. Cir. 2006), it has routinely found anticipation where a claimed range substantially overlaps with ranges disclosed in the prior art. See, e.g., Perricone v. Medicis Pharm. Corp., 432 F.3d 1368, 1377 (Fed. Cir. 2005); Atlas Powder Co. v. Ireco, Inc., 190 F.3d 1342, 1345 (Fed. Cir. 1999); Titanium Metals Corp. v. Banner, 778 F.2d 775, 781 (Fed. Cir. 1985). Moreover, the holding in Atofina was expressly predicated on the fact that the prior art reference did not disclose any point in particular that would be encompassed by the range claimed in the application. See 441 F.3d at 1000 ("The disclosure is only that of a range, not a specific temperature in that range."). Here, it is beyond dispute that the range claimed by Innovatit's application encompasses not only the vast majority of the range claimed in JP '156, but also the particular pressure-time value taught in its specific embodiment. Deference is due to the PTO's conclusion that the range claimed by Innovatit is anticipated in light of its overlap with the range

in the prior art, and that conclusion is supported by more than substantial evidence.

Innovatit also argues that it limits its process by requiring that it be conducted "without application of heat," a claim limitation absent from JP '156.  But such a "negative limitation," – an instruction in the patent <u>not</u> to do something – has only limited power to bring novelty to an otherwise anticipated patent.  <u>See</u> <u>Upsher-Smith Labs., Inc. v. Pamlab</u>, 412 F.3d 1319, 1322 (Fed. Cir. 2005) (a patent that optionally includes a step can anticipate a patent that specifically <u>excludes</u> it).  Novelty is not created by a negative limitation where one skilled in the art would have read the prior art reference to exclude the relevant step.  <u>Cf.</u> <u>In re Baxter Travenol Labs.</u>, 952 F.2d 388, 390-91 (Fed. Cir. 1991).  Here, there is no indication that JP '156 contemplates the addition of heat, and indeed, when the inventor of the Innovatit process himself tried to recreate the results of the process taught in the Japanese reference, he performed his trial at ambient temperature.  The Board thus concluded that one skilled in the art would have understood the process in JP '156 to have been carried out at ambient temperature, and there is substantial evidence to support that factual finding.  The negative, ambient-temperature limitation of the Innovatit application thus cannot create patentable novelty.

This brings us to Innovatit's main line of argument – that its process is distinguished by the fact that it is used, not to shuck the shellfish, but to pasteurize them. The question presented by this purposive argument is interesting, but ultimately simple. The clearest indication that the '725 application is not patentable over JP '156 is that it is plain that the practice of the specific embodiment in the prior reference would infringe the claims of the '725 application if the '725 application were granted, and it is a very old maxim of patent law that "that which infringes if later anticipates if earlier." E.g., Brown v. 3M, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (citing Peters v. Active Mfg. Co., 129 U.S. 530, 537 (1889)).

Claim 6 of the '725 application is representative and comprises:

> exposing raw oysters to hydrostatic pressure of between 20,000 p.s.i. and 80,000 p.s.i. for 1-15 minutes at ambient temperature, without causing thermal or mechanical damage to the raw oysters, thereby eliminating pathogenic Vibriones bacteria in said raw oysters, preventing deterioration of said raw oysters, while retaining sensory characteristics of said raw oysters.

The specific embodiment of JP '156 teaches placing oysters and seawater into a pressure processing device, whereupon "a high pressure at 3000 normal atmospheres [44087.85 p.s.i.] is applied for 3 minutes." All the process steps of Claim 6 are thus met by

- 6 -

the embodiment in JP '156: the oysters are "exposed" to pressure "between 20,000 p.s.i. and 80,000 p.s.i." for a period of "1-15 minutes."  The claim limitation of "eliminating pathogenic Vibriones bacteria" is not a process step; it is an outcome which "thereby" results when the specified pressure is applied for the specified period of time.  As the PTO points out, the '725 application would not be enabling if elimination of the bacteria did not inevitably result from pressurization within the ranges taught, because the application teaches no other method for completing the claimed step of "eliminating pathogenic Vibriones bacteria."  Thus, a person practicing the embodiment taught in JP '156 would infringe the '725 application if it were granted, and so the Japanese patent, being earlier in time, anticipates the Innovatit invention.

This is exactly what is at stake in the parties' disagreement over "inherency."  The PTO argues that the '725 application is not distinguished from JP '156 because the added claim limitation – elimination of pathogenic bacteria – was an inherent element of the already patented process.  <u>See</u> [25] at 16-17 (<u>citing</u> <u>In re Cruciferous Sprout Litig.</u>, 301 F.3d 1343, 1349 (Fed. Cir. 2002)).  Innovatit responds that in order to show inherency, the PTO must "make clear that the missing descriptive matter [elimination of bacteria] is necessarily present in the thing described in the reference, <u>and that it would be so</u>

recognized by persons of ordinary skill" in the art.  See Cont'l Can Co. v. Monsanto, 948 F.2d 1264, 1268 (Fed. Cir. 1991) (emphasis added).  It further argues that there is evidence in the form of affidavits from various artisans that they would not have recognized pasteurization as an inherent property of the process taught in JP '156 prior to Innovatit's discovery.

That may be so, but Innovatit's argument confuses two different notions of inherency.  If a step in a process or a feature of a product is absent from (but assertedly inherent in) a prior art reference, the proper question is indeed whether a skilled artisan would have know that including that step or feature would be to be an inherent part of the doing the process or making the product.  But if the putatively novel limitation is the result of a claimed process, the question is not whether a skilled artisan would have known the result, but whether, as a purely objective matter, that already patented process necessarily yields that result.  Innovatit's own application teaches – or, perhaps, the right word is concedes – that pasteurization results from practicing the process in JP '156.  Thus, even if great deference were not due to the PTO's factual finding of inherency – and it is – there could be no material dispute that pasteurization inherently results from the process in JP '156.  And where what is claimed as novel is not an instruction of the patent to do something, but is instead a

characteristic or result of the product or process to be patented, "it matters not that those of ordinary skill heretofore may not have recognized these inherent characteristics." In re Cruciferous Sprout Litig., 301 F.3d at 1350; see also Abbott Labs. v. Baxter Pharm. Prods., Inc., 471 F.3d 1363, 1367 (Fed. Cir. 2006) ("Our cases have consistently held that a reference may anticipate even when the relevant properties of the thing disclosed were not appreciated at the time."); Titanium Metals Corp. v. Banner, 778 F.2d 775 (Fed. Cir. 1985) ("Congress has not seen fit to permit the patenting of an old alloy, known to others through a printed publication, by one who has discovered its corrosion resistance or other useful properties, or has found out to what extent one can modify the composition of the alloy without losing such properties.").

In short, however useful Voisin's discovery of the pasteurization effect of the pressurization process in JP '156 may be, an added benefit from a known process is not patentable over the existing reference. See, e.g., Ansonia Brass & Copper Co. v. Elec. Supply Co., 144 U.S. 11, 18 (1892) ("[T]he application of an old process or machine to a similar or analogous subject, with no change in the manner of application and no result substantially distinct in its nature, will not sustain a patent even if the new form of result had not before been contemplated."); In re Benner, 174 F.2d 938, 942 (C.C.P.A.

- 9 -

1949) ("[N]o provision has been made in the patent statutes for granting a patent upon an old product based solely upon discovery of a new use for such product."). There is more than substantial evidence that every limitation in Claims 6 and 27 of the '725 application is express or inherent in the '156 patent. The Board's finding of anticipation must therefore be affirmed.[2]

**2) Obviousness as to Claims 3, 4, and 7**

An ancillary issue is the obviousness of Claims 3, 4, and 7, which differ modestly from Claims 6 and 27. The major differences are that Claims 3, 4, and 7 add the steps of either placing rubber bands around the oysters to prevent them from opening, refrigerating them to prevent them from spoiling, or both. Because these steps are absent from the Japanese reference, Claims 3, 4, and 7 must be evaluated under the obviousness rubric of 35 U.S.C. § 103 rather than 35 U.S.C. § 102. As the PTO concluded, U.S. Patent No. 5,773,064 to

---

[2] Innovatit's argument regarding enablement misses the boat entirely. Innovatit argues that the '156 patent does not anticipate because it does not enable the pressure-shucking that it claims. See, e.g., Elan Pharm. Inc., v. Mayo Found., 346 F.3d 1051, 1054 (Fed. Cir. 2003) (en banc). The PTO concluded that the evidence showed that shucking was enabled by the '156 patent, and there is substantial evidence to that effect. But more importantly, the PTO recognized that the question is not whether the '156 patent enables shucking, but whether its process results in pasteurization – the result the '725 application is attempting to claim. And the fact that pasteurization results at, for example, the pressure-time ratio listed in the specific embodiment of the '156 patent, is a fact that Innovatit simply must concede because its own application is predicated on pasteurization being successful at that very pressure-time ratio.

Tesvich (the '064 patent) teaches both the banding and refrigeration steps in the specific art of oyster treatment and preservation.  These are commonsense solutions to ordinary problems, and so there would have been more than adequate motivation to use these ideas in combination with the JP '156 process.  The PTO properly concluded that Claims 3, 4, and 7 are obvious in light of the JP '156 combined with the '064 patent.

Innovatit does not meaningfully argue otherwise.  Instead, it now argues that these claims contain process steps not taught in either prior art reference.  It notes, for example, that Claim 3 recites the following process steps: (1) "providing a pressure vessel"; (2) "depositing the shellfish into the pressure vessel"; (3) "loading a pressure transmitting fluid into the pressure vessel"; and then (4) "pressurizing the pressure vessel".  It is true that these exact steps may not be precisely recited in the two prior art references cited, but this argument must still be rejected for three reasons.  First, it does not appear to have been raised before the agency, and so is likely waived.  Second, the '156 patent describes a process that is quite similar,[3] giving grounds to affirm the Board's obviousness

---

[3]  Embodiment 1 of the '156 patent reads: "two oysters with shells and sea water [step 3, a pressure transmitting fluid] are accommodated into a plastic bag . . . . placed into a high pressure processing device, the MCT-150 model produced by Mitsubishi [steps 1 and 2, providing a pressure vessel and putting the oysters in it]; a high pressure . . . is applied [step 4, pressurizing the vessel].

finding even if it did not specifically address this argument. And finally, it seems that such a basic pressurization process would be obvious in light of the prior art.  Even if this argument were not waived, then, a remand to address it would be a waste of agency resources.

### No. 06-0825 – The '704 Product-By-Process Patent Claim

The product claimed in the '704 application is a "pressure-shucked" and "pressure-pasteurized" oyster.  Tesvich's product is pasteurized by heating it in an immersion circulator to a temperature high enough to kill bacteria but low enough to avoid cooking the oyster.  It is shucked manually, in the "raw-bar style" – that is, with a bird's-beak knife, screwdriver, or other implement.  The result is an oyster that is both pasteurized and shucked.

Prior art anticipates a claimed product if the prior art reference discloses it, even if the product is made by a process different than that claimed.  See In re Thorpe, 777 F.2d 695 (Fed. Cir. 1985) (patent claim rejected for composition used in carbonless copy paper systems that were known in prior art but made by different process).  The process may be patentable if it is truly new, but, as discussed supra, the PTO's conclusion that Voisin's high-pressure process is not novel has been upheld.  See also, SmithKline Beecham, 439 F.3d at 1315 ("once a product is fully disclosed in the art, future claims to that same product

are precluded, even if that product is claimed as made by a new process"). Raw, shucked shellfish free from pathogenic bacteria is not a new product but was disclosed in the Tesvich '064 patent, as found by the Board. Accordingly, Tesvich '064 anticipates the pending claims.

      An appropriate order accompanies this memorandum.


                                JAMES ROBERTSON
                        United States District Judge